IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

———————————————————        :

Allison Brown                                    :        Complaint for a Civil Case *(Amended?)*
6405 Chew Road                              :
Upper Marlboro, MD 20772            :
Prince George's County, MD            : .      Case Number: _8:24-cv-03198-TDC_
                                        PLAINTIFF,  :
                                                         :        JURY TRIAL DEMANDED
v.                                                    :
                                                         :                    **HD**
Washington University School of Law   :
1 Brookings Drive                          :        Rcv'd by: _em_____
St. Louis, MO 63130                       :
                                                         :
                                                         :
Elizabeth Walsh                           :
Anheuser-Busch Hall Room 213E   :
1 Brookings Drive                         :
St. Louis, MO 63130                      :
                                                        :
Adrienne Davis                            :
Anheuser-Busch Hall Room 548   :
1 Brookings Drive                         :
St. Louis, MO 63130                      :
                                                        :
Carrie Burns                               :
Anheuser-Busch Room 210D         :
1 Brookings Drive                         :
St. Louis, MO 63130                      :
                                                        :
Russell Osgood                           :
1 Brookings Drive                         :
St. Louis, MO 63130                      :
                                                        :
Robert Wild                                :
MSC 1167-226-200                      :
Washington University in St. Louis  :
1 Brookings Drive                        :
St. Louis, MO 63130                     :
                                                       :
Darrell Hudson                           :
1415 Washington Heights              :

USDC- GREENBELT
'24 NOV 13 AM 11:12

1

Ann Arbor, MI 48109                        :
                                           :
Deanna Wendler-Modde                       :
1 Brookings Drive                          :
St. Louis, MO 63130                        :
                                           :
Nicole Gore                                :
1 Brookings Drive                          :
St. Louis, Mo 63130                        :
                                           :
Peggie Smith                               :
Anheuser-Busch Hall Room 548               :
1 Brookings Drive                          :
St. Louis, MO 63130                        :
                                           :
Mark Kamimura-Jiménez                      :
MSC 1083-226-330                           :
Washington University in St. Louis         :
1 Brookings Drive                          :
St. Louis, MO 63130                        :
                                           :
Elizabeth Katz                             :
Anheuser-Busch Hall Room 548               :
1 Brookings Drive                          :
St. Louis, MO 63130                        :
                                           :
Angela Smith                               :
Room 325D-2                                :
1 Brookings Drive                          :
St. Louis, MO 63130                        :
                                           :
INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITY;
                                           :
                    DEFENDANTS.            :
_____     :

## **COMPLAINT**

## I.    **INTRODUCTION**

Plaintiff, Allison S. Brown ("Plaintiff") brings claims against her former law school and

employer, Washington University in St. Louis School of Law ("Defendant.") Defendant

discriminated against Plaintiff, including but not limited to by treating her worse than her white counterparts and classmates, subjecting her to a hostile work environment because of her race (Black), and further discriminated and retaliated against her by suspending her with no pretextual reason or probable cause after she engaged in protected activity by complaining about racial and sex discrimination.

Defendant now is initiating garnishment proceedings and the collections process against Plaintiff after Defendant wrongfully suspended Plaintiff for 6 months. On May 2nd, 2023, the SCB (SCB) at Defendant Law School found Plaintiff not guilty on all alleged violations of the Student Conduct Code. On August 2nd, 2023, Plaintiff paid $17,455.02 cash for the 2023-2024 tuition, and took out $30,000 in FAFSA loans - all of which were paid to Defendant Law School. On August 15th, 2023, Defendant unilaterally revoked Plaintiff's $37,000 annual scholarship via e-mail after Plaintiff was forced, due to the racial and sexual discrimination by Defendant, to relocate for her third and final year of law school to Georgetown University Law Center. Plaintiff has made numerous requests to Defendant's counsel to resolve this matter outside of litigation with no success. On October 14th, 2024, Lisa M. Wood, Deputy General Counsel of Wash U sent an email to Plaintiff: "While the University will waive any late fees that may have been charged to your account, it is otherwise unwilling to enter into negotiations. If you have questions with respect to the collection process, please contact Student Billing at (314) 935-5274."

Plaintiff brings claims pursuant to Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000d, et seq. ("Title VI"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq. ("Title VII"),  the Civil Rights Act of 1866, as amended, 42 U.S.C. §1981 ("Section 1981"),  42 U.S.C.A. § 1985 ("Section 1985"), the 14th Amendment (U.S. Const. amend. XIV, § 2), and 18 U.S.C. Section 241 (Conspiracy Against Rights statute.) Plaintiff also

brings claims of racial and sex discrimination and retaliation, malicious abuse of process, disparate treatment, hostile work environment, conspiracy to commit discrimination, defamation, breach of contract, bad-faith negotiation, fraud, forgery, negligence, tortious interference, and intentional infliction of emotional distress. Plaintiff also seeks a refund for tuition paid during her 6 month suspension for no reason, where Defendants substantially (and wrongfully) interfered with Plaintiff's law school education when she had not been found guilty of any violation of any University code or law, Student Conduct, Honor Code, or otherwise. Plaintiff seeks all damages allowable by law, including but not limited to injunctive relief regarding garnishee processes and collections actions in response to the racially discriminatory and retaliatory billing practices of Defendant. Plaintiff also seeks all other damages, including but not limited to economic loss, compensatory, liquidated, special and punitive damages, costs and attorney's fees and all other relief that this Court deems appropriate.

## II.  PARTIES

### A. The Plaintiff

1. Plaintiff, Allison Brown ("Plaintiff"), is an individual and a citizen of the State of Maryland (Upper Marlboro, MD) with intent to remain indefinitely.

2. Plaintiff is female and Black/African-American.

3. Plaintiff has resided permanently in Maryland since her erroneous suspension from law school in Fall 2022, and the entirety of the third year of law school while enrolled as a visiting student at Georgetown University Law Center for her safety.

### B. The Defendants

4.  Defendant, Washington University in St. Louis School of Law, is a Missouri institution of higher education with a principal place of business at 1 Brookings Drive St. Louis,

4

Missouri 63130. Defendant continuously recruits students to attend their undergraduate and graduate programs from the state of Maryland.

5.  At all times material hereto, Defendant was acting as an institution of higher education that receives federal funding and within the meaning of the statutes (including 42 U.S.C. §2000d-1) which form the basis of this matter.  At all times material hereto, Defendant employed fifty (50) or more employees. At all times material hereto, Defendants were employers within the meaning of the statutes (including 42 U.S.C. § 2000e) which forms the basis of this matter. At all times material hereto, Defendants acted by and through authorized agents, servants, workmen, and/or employees acting within the course and scope of employment with Defendants and in furtherance of their business.

6.  At all times material hereto, Defendants at times acted in concert with each other and authorized agents, servants, workmen, and/or employees acting within the course and scope of employment with Defendants and in furtherance of a conspiracy to commit discrimination under 42 U.S. Code § 1985.

7.  Elizabeth Walsh is the Associate Dean of Student Life at Defendant Law School.

8.  Russell Osgood is the former Dean of Defendant Law School.

9.  Adrienne Davis is a Professor in the School of Law and Professor of Organizational Behavior in Olin Business School at Defendant Law School. Defendants Adrienne Davis and Peggie Smith are friends, and former Yale Law School classmates.

10. Carrie Burns is the Vice President of Financial Aid at Defendant Law School. Defendants Elizabeth Walsh and Carrie Burns are close friends - not just colleagues.

11. Robert Wild is the Associate Vice Chancellor, and Dean of Students at Defendant.

12. Darrell Hudson is the Chair of the University SCB at Defendant.

13. Deanna Wendler-Modde is the Assistant Vice Chancellor and Associate General Counsel at Defendant.

14. Nicole Gore is the Associate Dean in the Office of Student Conduct and Community Standards at Defendant.

15. Peggie Smith is the Vice Dean at Defendant Law School, and a fellow classmate of Defendant Adrienne Davis at Yale Law School. Mark Kamimura-Jiménez is the Associate Vice Chancellor for Student Affairs at Defendant.

16. Elizabeth Katz was a Professor of Law at Defendant Law School, and is now a Professor of Law at the University of Florida Levin School of Law.

III.    **JURISDICTION AND VENUE**

17. The causes of action which form the basis of this matter arise under federal law: the Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000d, et seq. ("Title VI"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq. ("Title VII"),  the Civil Rights Act of 1866, as amended, 42 U.S.C. §1981 ("Section 1981"), 42 U.S.C.A. § 1985 ("Section 1985"), and U.S. Const.amend. XIV,§ 2 ("14th Amendment.")

18. This District Court has jurisdiction over Count I (Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000d, et seq. "Title VI,") Count II (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq. "Title VII"), Count III (the Civil Rights Act of 1866, as amended, 42 U.S.C. §1981 "Section 1981"), and Count IV (42 U.S.C.A. § 1985 ("Section 1985"), and the 14th Amendment (U.S. Const. amend. XIV, § 2 ) pursuant to 28 U.S.C. §1331.

19. The District Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as there exists complete diversity of citizenship between the Plaintiff and Defendants and the amount in controversy exceeds $75,000.00.

20. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to these claims occurred within this District.

21. The District Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 regarding the following state common law claims: abuse of process, defamation, libel, slander, breach of contract, bad-faith negotiation, fraud, fraudulent misrepresentation, negligence, tortious interference, and intentional infliction of emotional distress.

22. Defendants are engaged in an industry affecting interstate commerce and regularly do business in the state of Maryland. At all times material hereto, Defendant were employers within the meaning of the statutes which form the basis of this matter. Plaintiff was an employee of Defendant within the meaning of the statutes which form the basis of this matter.

23. Defendant committed a substantial part of the discriminatory acts against Plaintiff within this District. Defendant also sent billing documents to Plaintiff's address in Maryland. Plaintiff experienced a significant amount of adverse and discriminatory actions by Defendant and through Defendant's agents while residing in the state of Maryland.

24. Plaintiff reported Defendants Walsh and Davis to the Office of Chief Disciplinary Counsel of the Supreme Court of Missouri in February 2024; Staff Counsel, Cecilia E. Young sent Plaintiff a letter on April 17th, 2024, stating "Based upon the information provided in your letter, it would not be appropriate for this office to take action. The

matter you raise in your correspondence involves legal issues which are within the

jurisdiction of the courts to resolve. This office has no jurisdiction."

25. Plaintiff has fully exhausted her administrative remedies, and complied with all

administrative prerequisites for the commencement of this action.

IV.        **FACTUAL ALLEGATIONS**

**February 2021**

26.  On February 24, 2021, Plaintiff applied for admission to Defendant Law School.

27. Plaintiff disclosed her race to Defendant: Black/African-American, and her birthday,

December 14th.

28. Plaintiff's application to Defendant Law School explained that she was an "Angell

Scholar" at the University of Michigan's Ford School of Public Policy, an award given to

students receiving straight A's for more than 2 semesters. Plaintiff stated in her

application to Defendant Law School that "I hope to be a part of a coalition that changes

the legal system for the better . . . With my light skin privilege, and talented-tenth family,

I understand that I have a responsibility to dismantle white supremacy."

29. Plaintiff's diversity statement stated: "I hope that at [Defendant Law School], I will be

able to investigate the root of anti-Black racism. . . [Defendant Law School] is home to a

faculty devoted to teaching and researching topics with the purpose of creating valuable

scholarship and viable solutions. I just hope I have the opportunity to learn from them."

**March 2021**

30. Plaintiff was accepted to Defendant Law School via e-mail from applylaw@wustl.edu on

Monday, March 22, 2021 at 3:33pm EST. On June 15, 2021 at 11:00AM EST, Defendant

accepted Plaintiff for admission to Defendant Law School with a scholarship of

8

$37,000/year ($18,500 per semester) for each year with the only condition as follows: "Your award is based on full-time student status."

31. As of October 21st, 2024 at 11:17PM EST, Defendant Law School's website states "At WashULaw, all of our JD scholarships are guaranteed for three years. Not only is this unusual but many schools make scholarship awards conditional on maintaining a certain GPA or class rank. By contrast, WashULaw scholarships are given with no strings attached as long as you remain a student at the law school." This is available here: https://law.washu.edu/consumer-information-aba-required-disclosures/

32. There is no university policy pursuant to Plaintiff's scholarship letter that states that Plaintiff or any other student would have their scholarship revoked **if Plaintiff were forced to visit another institution, studying abroad or visiting at another institution.**

33. As an American Bar Association (ABA) accredited law school, Defendant Law School is subject to the ABA Standards for Approval of Law Schools. The ABA Standards that Defendant is required to abide by may be found at americanbar.org and here: https://law.washu.edu/consumer-information-aba-required-disclosures/.

34. As of the date of filing of this complaint, Defendant has not complied with the requirements of the ABA Standards. Accordingly, a private investigation has been initiated by the ABA's 12-member council under Rule 42 of the ABA Standards. Under Rule 43 of the ABA Standards, this is the final disposition of Plaintiff's complaint with the ABA. This District court is Plaintiff's last resort for redress and remedy of Defendant's invidious discrimination, fraud, and failure to comply with the ABA Standards. There is no other condition of scholarship aside from "maintain full time student status" on any scholarship letter sent to Plaintiff from Defendant Law School.

35. Plaintiff's status, according to her transcript, never wavered from "full time student status" but Defendant chose to unilaterally revoke her scholarship anyways because Plaintiff is Black and complained of racial and sex discrimination in connection with her employment at Defendant Law School and prior. Further, Plaintiff's scholarship, initially issued in June 2021, was unilaterally revoked by Defendant in retaliation for winning the SCB hearing against Defendant Walsh and her agents.

36. Defendant's decisions have cause irreparable harm to Plaintiff, and stem from: 1) Plaintiff's success against Defendant Walsh's accusations in the September 2022 through May 2023 SCB Hearing, 2) Plaintiff's race, and including but not limited to 3) Plaintiff's complaints of racial and sex discrimination both prior, and in connection with her employment at Defendant and in perpetuity.

37. Defendant's decision in 2024 to unilaterally revoke Plaintiff's scholarship was discriminatory and retaliatory, rooted in Defendant Elizabeth Walsh's hatred of Plaintiff because of her race and sex, and Plaintiff complaints of racial and sex discrimination.

**August 2021 - May 2022; Title IX Violations and Exposure to Sexual Predators**

38. In or around August 2021, Richard O sends Plaintiff a rape contract before they had ever met one another in person. Richard O calls Plaintiff, and explains that he generally sends contracts "to ensure that his needs are met in his female friendships" that allows him to rape Plaintiff and rituals involving semen and blood. Plaintiff is taken aback because she had never met Richard in person before; she could have smelled like onions - yet Richard O still wanted to be sure that he could have sex with her at his will.

39. On May 9th, 2022, Plaintiff gave Defendant's Title IX Office a large binder detailing all of the harm that Richard O had perpetrated against her for the past year. Defendant does not investigate Plaintiff's claim and deems it "insufficient evidence" on its face. Plaintiff is not given an investigation while Richard O's investigation occupied Plaintiff's entire first semester of law school; Plaintiff was found not responsible for any alleged violation.

**September 2021**

40. Plaintiff enters Defendant Law School and joins the Black Law Student Association.

41. On Monday, September 27th, 2021 at 12:00pm, Plaintiff met with Defendant Walsh about Plaintiff's concerns and complaint regarding Alexis T, one of Richard's friends. Plaintiff told Defendant Walsh that Alexis T enjoyed touting that they carry guns around campus and to school events. During the meeting, despite Plaintiff providing screenshots and evidence, Defendant Walsh told Plaintiff "too bad, so sad" with regards to Alexis T and there was nothing that she could do despite carrying guns being against school policy. Defendant Walsh said that she was uninterested in explaining the "culture of St. Louis" to Plaintiff. Defendant Walsh suggested that Plaintiff "get over it" and "make other friends." Plaintiff's complaints regarding issues like gun violence on campus, racial and sex discrimination are ignored by Defendants.

**January 2022**

42. In January 2022, during Plaintiff's second semester of law school, Plaintiff was automatically enrolled into Defendant Katz's Criminal Law section.

43. Defendant Katz had a documented history of students of color complaining and reporting her discriminatory practices and was mentioned during a Women in Color Law Society event as being a "problematic professor to look out for."

44. Previous students had reported Defendant Katz, but Defendant Law School did not investigate because most of the complaints were from women of color.

**February 2022**

45. In early February 2022, Professor Katz began to show videos of Black children (e.g. Latasha Harlin and Tamir Rice) being murdered.

46. On Tuesday, February 1st, 2022, Plaintiff and a coalition of other students unionized and collaborated to file a report against Defendant Katz. Plaintiff, along with four classmates, drafted a letter to the administration objecting to Katz's sensationalization of Black children's gruesome murders. Plaintiff (despite not being the only student who objected and/or complained regarding Defendant Katz's racist class practices) is the only student reprimanded for objecting to Professor Katz's display of videos depicting the gruesome murders of Black children.

47. Plaintiff is called into the Dean's Office five times, substantially interfering with her studies, over the course of her second semester in law school regarding her "tone" and professionalism. No other similarly situated student in Plaintiff's section is subjected to these retaliatory actions by Defendant Law School.

48. Defendant Katz states in an email on Saturday, February 26, 2022 that perhaps "Peggy Smith would be able to speak to Plaintiff's frame of mind" because they are both Black.

Further, Defendants Angela Smith and Peggy Smith (Black administrators) are selected to harm Plaintiff so Defendant's actions did not appear racist.

49. In an email thread dated Feb 25, 2022, Defendant Peggie Smith conspires with and gives Professor Katz advice on how to discriminate against Plaintiff.

50. The "investigation" by Defendant that Peggy Smith was referring to in this email thread, was actually a plot by Defendant Walsh and her friends to try to get Plaintiff expelled for engaging in protected activity, and complaining about racial and/or sexual discrimination in her Criminal Law course and on Defendant's campus. Defendants' real concern was not that Plaintiff was being disruptive. Instead, Plaintiff was observing Defendants act racist towards her and other students, and then complaining about it. Defendants resolved to punish Plaintiff instead of rectifying the racial discrimination.

51. Yehoshua W, who is Jewish and white, in Plaintiff's section, is regularly seen on the course recordings derailing class time for over 30 minutes (around $\frac{1}{3}$ of the class period) to ask hypotheticals unrelated to the course material. Shane G, another white classmate in Plaintiff's criminal law course states that the First Nations folks' genocide is irrelevant to a case about a First Nations' couple hesitant to take their child to the doctor because of the US's legacy of murdering indigenous children. Shane G said it is "unreasonable" for any family to not want to take their child to the doctor, and that it constitutes child abuse.

52. Plaintiff raises her hand, was called on, and stated that a Native American family may be wary of going to a Western/allopathic doctor in fear of their child being placed in a "re-education" school, and/or killed.

53. Around the same time, in March 2022, an anonymous 80-person survey was distributed by Professor Katz to Plaintiff's criminal law section because other students began to make complaints to the administration regarding Katz's class. None of the students named Plaintiff as the cause of Professor Katz's poor classroom management.

54. Defendant Katz sends an email to Walsh and Peggy Smith concerned that Plaintiff "may see her as a racist or naïve white woman." Defendant Katz shared the results of her survey with Defendant Walsh, along with her assertions that the comments regarding the toxic classroom environment should be attributed to Plaintiff. These comments from students could have easily been attributed to Yehoshua W, Shane G or Graeme H. Yet, Defendant Katz assigned these comments to Plaintiff. On February 25th, 2022, Defendant Walsh and Professor Katz make racialized comments, tone police, and complain about Plaintiff's "tone" and "professionalism" in the law school environment in a zoom call with Plaintiff because Plaintiff is Black.

55. After the call, the same day, on February 25th, 2022 at 4:47PM CST, Plaintiff sends a follow-up message with scholarly articles and research papers from Harvard, Stanford, and Cambridge about why the discussion they just had was inappropriate, and why what Defendant Walsh and Professor Katz said to Plaintiff was racist.

**March 2022 - April 2022**

56. Defendant Katz asks Defendant Peggy Smith (a Black professor) via e-mail if she would be able to "speak to Plaintiff's frame of mind" because they are both Black.

57. Defendants Peggy Smith and Angela Smith are requested by administration to meet with Plaintiff because they are all Black and could better speak to Plaintiff's "frame of mind."

58. Plaintiff arrives at Defendant Peggy Smith's office on Thursday, April 7th, 2022 with two of her white friends for moral support. Defendant Peggy Smith sternly tells them to leave. Plaintiff goes into Defendant Peggy Smith's office alone.

59. Defendant Peggy Smith has no disciplinary authority of students as part of her role and attests to this in the SCB Hearing in or around March 2023. Yet, Defendant Smith tells Plaintiff that "if [Plaintiff] were to say that a policy or law were "racist" in her classroom, [Plaintiff] would be suspended." Plaintiff asks Defendant Peggy Smith if this meeting is a disciplinary warning. Defendant Peggy Smith says "No, it is not a warning," and "is just giving advice that may make life and law school easier."

60. Defendant Peggy Smith discriminated against Plaintiff by telling her, a victim of racial and sex discrimination at Defendant Law School, and to refrain from calling any law, policy, or opinion "racist" or describing systemic or pattern of discrimination as "racism."

61. Plaintiff asked Defendant Peggy Smith if she had met with Shane G or Graeme H, two white male students who espoused their opinions in class about how the First Nations people genocide was inconsequential in a case about First Nations people, how Plaintiff doesn't belong in the field of law but instead belongs in a discipline like sociology, or how BLM protestors should be shot/killed in defense of property. Defendant Peggy Smith says did not meet with Shane G or Graeme H as "it was not her concern."

62. In or around March 2022, Defendant Katz sent an email, excited, to Defendants Peggy Smith, Angela Smith, and Walsh stating that Plaintiff had stopped participating in class.

63. On Monday, March 28th, 2022, Professor Katz made a racist comment to Plaintiff in the middle of class. Plaintiff wrote an email to Defendants Walsh and Smith describing the incident. Defendant Angela Smith tells Plaintiff "Thanks" and continues to ignore her.

64. Defendant Law School, along with Defendant's agents, fail to investigate Professor Katz's racist actions towards Plaintiff.

65. Through participating in the Diverse Attorney Pipeline Program, Plaintiff is offered a summer associate position with Norton Rose Fulbright in New York in March of 2022.

66. Plaintiff notified Hilary Von Rohr, a Lecturer in Law at the Law School that she had been offered a Summer Associate position with Norton Rose Fulbright in New York. Hilary Von Rohr told Plaintiff that her summer employment was logged in Defendant Law School's database regarding law students matriculating into BigLaw firms. This database is how Defendant Walsh knew how to interfere with Plaintiff's employment.

**May 2022 - August 2022**

67.  Plaintiff tries to transfer to other schools because she is afraid of further racial and sexual discrimination and harassment at Defendant Law School. Katz is given an award.

68. In or around June 2022, Plaintiff applied to around 10 other law schools in the summer after her 1st year, explaining that she feared returning to Defendant Law School for her safety due to sexual harassment and racial discrimination. In early June 2022, Plaintiff requests for Dean Walsh to send a letter of good standing to transfer to schools in late May and early June. Dean Walsh refuses to send a letter of good standing in a timely manner to Plaintiff's transfer schools until the deadline in late July. Georgetown and Columbia contact Plaintiff telling her that they have not received a letter of good standing from Defendant Law School. Only after Plaintiff's mother personally asked Walsh to send the letters did Walsh send the letter of good standing to Georgetown and Columbia.

69. Plaintiff receives glowing reviews at Norton Rose Fulbright, is told by the Director of HR that she is "one of the most professional Summer associates that he has ever seen" and is offered a return position for Summer 2023.

**August 2022**

70. Plaintiff returns to Defendant Law School after her transfer applications are denied.

71. Plaintiff was awarded her full $38,000 scholarship for her 2nd year of law school, elected as Vice President of the Black Graduate Students Association, and as Advocacy Chair for the Black Law Students Association.

72. Plaintiff takes 2 classes from Defendant Adrienne D. Davis, Trusts and Estates, and Race in American Law during the Fall 2022 semester.

73. Plaintiff makes a post on social media in the beginning of August that she does not feel safe returning to Defendant Law School because of the sexual harassment and racial violence that she faced at the hands of the administration her first year of law school.

74. Defendant Angela Smith contacts Plaintiff about the instagram post that Plaintiff made regarding not feeling safe at Defendant Law School. Plaintiff reiterates that she already told her in a meeting prior that year about being sexually harassed by a classmate. Plaintiff said she had been continually retraumatized by telling different administrators at Defendant Law School the details regarding Defendants' sexual and racial discrimination, and subsequently ignored. Defendant Smith then ignores Plaintiff.

75. Defendants Walsh and Smith conspire to remove Plaintiff from the law school for her comments about being afraid to return to Defendant Law School because of the racial and sexual violence there. Defendants recruit Defendant Adrienne Davis in furtherance of a conspiracy to commit discrimination and harm Plaintiff.

**September 2022 - October 2022**

76.  Defendant Davis sends an invitation to law school students to be her research assistant in September 2022. Plaintiff applies to Davis's email advertisement, and apologizes for her lower than average grades, explaining that she was sexually harassed by a classmate during her 1L year. Plaintiff was hired by Davis, a purported scholar of racism and history, to perform research on racism and history in the 1L Curriculum.

77. Plaintiff was given access to Workday, an Employee Self Service platform in connection with her employment by Defendant Davis. Plaintiff was also awarded a $1000 CREE2 Grant from the Center for Race, Ethnicity, and Equity to perform research for Defendant Davis on racism and history in the 1L Curriculum.

78. Defendant Davis writes Plaintiff an email, stating that she "liked" (both physically and metaphorically, as Defendant Davis specified in her email) Plaintiff's instagram page.

79. Defendant Davis acts oddly, sending Plaintiff messages outside of business hours and asking her to meet in her office regarding unrelated and inappropriate discussions. During a one-on-one meeting after one of Defendant Davis's classes, Defendant Davis tells Plaintiff in her office that she is forbidden from using the words "coon" or "Uncle Tom."

80. Shortly after this meeting, Defendant Davis sends another email to Plaintiff fraudulently memorializing her discussion that Plaintiff must raise her hand before talking in class. The issue of Plaintiff raising her hand before talking in class was not discussed at the meeting; Defendant Davis fraudulently recollects the conversation.

81. Plaintiff does not speak in either her Trusts and Estates or her Race in the Law class for the next two weeks. During this period, Defendant Davis tries to entice Plaintiff to speak by gesticulating "Counselor Brown would say" and musings regarding Plaintiff's praxis,

but Plaintiff would not speak. Defendant Davis sends Plaintiff an email asking if she

raised her hand (she didn't) in a class of 90 people. Plaintiff only spoke after being

solicited by a classmate and fellow coworker under Defendant Davis of Plaintiff's, when

Defendant Davis called on Plaintiff on November 2, 2022.

**November 2, 2022**

82. On November 2, 2022, Plaintiff attended "Race in the Law" with Defendant Davis.

83. Professor Davis started the classroom recording at approximately 10:30AM CST on

November 2, 2022. This recording would never be uploaded to Canvas, but every single

other class of Defendant Davis's, was uploaded to Canvas. The tape of Defendant Davis's

November 2nd class was requested to be shown during the SCB to exonerate and support

that Plaintiff had neither harassed or threatened anyone on campus, and the fact that

Defendant Davis staged an emotional bowel movement performance to get Plaintiff

expelled. Defendants have declined to view or produce the tape for any reason.

84. On November 2, 2022, Davis disseminated an article about Rishi Sunak to the class.

Defendant Davis said students will have a classroom discussion on Rishi Sunak, on

whether or not he is a "diversity success story" or a "diversity failure" as today's activity.

Davis assigned the students into groups. Plaintiff spoke to her group members, but never

to Davis. Defendant Davis called on different students, and lambasted each person for

saying that "Rishi Sunak sucks" because it is "unprofessional."

85. Defendant Davis calls on a fellow research assistant, and coworker of Plaintiff's, who

was in Plaintiff's small group discussion from earlier. This co-worker objects to

Defendant Davis's assertion that to say something "sucks" is not professional; instead he

says that "policing language is utilizing the same white supremacy that we are supposed

to be trying to dismantle." Coworker gestures with his hands "Counselor Brown articulated this much more eloquently than me." Defendant Davis calls on Plaintiff. Plaintiff states, "the classroom is the safest place for us to talk about linguistic racism."

86. Defendant Davis has an emotional meltdown. She feigns that Plaintiff called her "Bull Connor" and a white supremacist, and storms out of the classroom. Davis yells on the tape "I am a white supremacist. I am Bull Connor. I am the KKK." Plaintiff replies, "Professor, I do not mean to disparage you as I greatly admire you as my professor." Plaintiff sends a follow up email to Davis, apologizing if she said anything wrong.

87. Defendant Davis says "I am going to go to the Dean's Office to get you the Professor that you deserve." Davis runs out of the room for about a minute. Davis comes back into the room in tears, and dramatically throws her microphone down on the podium, causing a ricochet of microphone feedback across the room. Professor Davis then cancels classes for the next week, and assigns a youtube video for the class to watch.

88. Plaintiff attends office hours with Professor Hollander-Blumoff, her Civil Procedure, Federal Courts, and Negotiation professor, and tells her about Professor Davis's meltdown. Professor Hollander-Blumoff says it is bizarre, but not to worry as "sometimes Professors have things going on in their personal life separate from students."

**November 4th, 2022**

89. On November 4th 2022, Dean Robert Wild called Plaintiff to inform her that she was banned from campus indefinitely effective immediately. Defendant Wild gave Plaintiff 40 minutes to grab her possessions from her locker in the law school.

90. Plaintiff was temporarily suspended on November 4th, 2022, after Defendant Davis's

performance on November 2nd, 2022 because Plaintiff is Black and complained of racial

discrimination at Defendant Law School.

91.  On November 9th, 2022, Defendant Walsh and Wild meet with Plaintiff at 4pm CST via

zoom and tell her that she is "temporarily suspended" and "in huge trouble" and that she

is "not to step foot on campus" and if she does, "[Plaintiff] will be arrested." Defendant

Robert Wild's letter to Plaintiff sent on November 4th, 2022, stated that she did not pose

a "physical threat" to campus. Yet, Defendant Wild maintained that Plaintiff was engaged

in a pattern of "threatening" and "harassing" other professors and students in violation of

Sections 2 and 4 of the Student Conduct Code.

92. **Not one professor that Plaintiff had testified against Plaintiff at the hearing.**

93. Defendant Wild told Plaintiff she would be arrested if she were caught on campus. Wild

stated that Plaintiff could only come on campus to seek mental health services.

94. Plaintiff, elected as Vice President of the Black Graduate Students Association, is

forbidden from seeing "Black Panther" at a local movie theater off campus or attending

any other campus events. Dean Wild and Dean Walsh tell her if she attends the viewing

(which is off campus at a local AMC theater in St. Louis), Plaintiff would be in violation

of the temporary suspension and subject to more sanctions.

95. Dean Walsh and Nicole Gore show Plaintiff the evidence against her, and include several

Professors and students on the potential witness list. Among the evidence against Plaintiff

are copies of Plaintiff's social media postings about Cardi B and Drake, Black musicians

that Plaintiff enjoys. Defendant submitted this evidence in support of their argument that

Plaintiff was unfit to continue attending Defendant Law School.

96. As early as November 28, 2022, in emails Defendant Gore expresses that Defendant Law School does not want Plaintiff to return to campus ever. Plaintiff never does.

**December 2022**

97. Plaintiff pays $15,000 to retain Lento Law Firm in connection with legal representation in this hearing. Plaintiff's case is assigned to Stacy T. Forchetti (hereafter, Forchetti) whose title is "Senior Litigation Counsel." Oddly, Forchetti started at the firm at the same time as Plaintiff's hearing.

98. Plaintiff objected to Defendants' selection of Nicholas Armstrong, who held Plaintiff's BLSA position of advocacy chair directly before Plaintiff, and Breia Maddox, a friend of Richard O's who had fed him her social media content since Plaintiff blocked him, two members of the SCB. Further, both individuals were close friends with two of Defendant Walsh's witnesses. Defendant Hudson removed Breia Maddox from the SCB but not Nicholas Armstrong, breaching Plaintiff's rights to a fair hearing with neutral arbiters.

99. Plaintiff's mother emails a handwritten letter to Dean Walsh and Dean Wild telling them that Professor Davis feigned her objection to Plaintiff's innocuous comment to harm her. Plaintiff's mother attaches Professor Davis' bizarre emails to her letter, and urges Defendant to stop discriminating against Plaintiff. Defendants would have never ignored the pleas from a white student and her mother, Harvard Law School '92.

100.    Plaintiff's mother sends a second email to Dean Walsh and Dean Wild explaining that Professor Davis' behavior is setting Plaintiff up is typical of a "coon" or "Uncle Tom" - a black person who acts to harm other Blacks for personal benefit. Plaintiff's mother says that Plaintiff is being uniquely targeted because she is Black and unafraid to complain of racial discrimination at Defendant Law School.

101.    Plaintiff's mother sends a third email containing the statements of the students in the Race and American Law class, showing that statements of the students support the conclusion that Professor Davis feigned objection to Plaintiff's innocuous statement to get her suspended. Professor Davis did this to Plaintiff because Plaintiff is Black and engaged in protected activity at Defendant Law School and prior.

102.    In preparation for the SCB Proceeding, Defendant Hudson rules that no videos of any class are allowed to be entered into evidence, even though Plaintiff's behavior at several classes (specifically, November 2, 2022) is contested and argued as a violation of the Student Conduct Code. No statements regarding Professor Davis's conduct are allowed, and nothing regarding the Title IX proceedings between Richard O and Plaintiff are allowed to be admitted. Defendants did not admit any of this evidence in the SCB because it showed Plaintiff was discriminated against based on her race and sex.

103.    An exorbitant number of discriminatory, bogus and kangaroo-court-like restrictions in violation of Plaintiff's 5th and 14th amendment rights. Plaintiff complains. Defendant ignores Plaintiff and does not acknowledge the same.

104.    On December 9th, 2022, Defendant Gore informed Plaintiff that Defendants Davis and Katz were dropped from being called as witnesses at the hearing. The only folks left to testify in the SCB are 5 students who disliked Plaintiff after the Title IX fall-out involving Richard O, and two administrators that **Plaintiff has never had a class with.**

105.    Defendant Walsh argued in the suspension letter that Plaintiff was a "threat" and "harassing" students because Plaintiff is Black. Defendant Walsh argued in bad faith in the SCB. Walsh knowingly, willfully, and intentionally abused the SCB hearing process by arguing Plaintiff was a "threat" and "harassing" students when she had no evidence.

106.    Accordingly, Walsh did not meet her burden in the SCB hearing, and lost. Defendant Walsh defamed Plaintiff by accusing Plaintiff of lying. Walsh lashed out on Plaintiff through retaliatory billing practices and the unilateral revocation of her scholarship that started on or around August/September 2023, when Plaintiff relocated for her safety to Georgetown University Law Center.

**February 2023 - May 2023 - The Actual SCB Hearing Proceedings**

107.    Defendant Walsh substantially interfered with the rights of Plaintiff. Walsh misplaced or lost over 30% of the tapes of class recordings from Plaintiff's classes during her erroneous suspension (including Plaintiff's 1st Amendment classes regarding free speech in public and private schools) prohibited Plaintiff from communicating with professors, restricted Plaintiff from campus, all on-campus activities and classroom discussion.

108.    On Wednesday, February 8th, 2023, Professor Leila Sadat sent Plaintiff an email, accusing her of being negligent with her course performance and attendance during her temporary suspension, when it was really Defendant Walsh's negligence that forbade Plaintiff from participating in class like her white classmates. Additionally, Defendant Walsh, in an email to Plaintiff's "Workplace Discrimination" professor, instructed the professor to "lock" Canvas discussion board so Plaintiff would not be able to communicate with her classmates.

109.    Defendant Walsh forced Plaintiff to withdraw from the War Crimes Tribunal seminar with Professor Sadat over a month after classes started. Defendant Walsh's discriminatory actions towards Plaintiff caused Plaintiff to struggle with coursework. As a result, the worst grades on Plaintiff's transcript are during this semester in law school.

110.    Only one of the students that testified against Plaintiff during the SCB hearing
testified that Plaintiff may have exhibited harassing behavior towards her.

111.    This student, Cara H, testified against Plaintiff and said that Plaintiff was harassing
her. Plaintiff asked "Did you ever report our mutual classmate for peeing on you and
making you uncomfortable? I never did that to you." Cara H published this information
to Plaintiff and other witnesses (one of whom was forbidden from testifying) on the roof
in the hot tub of one of their mutual classmates' apartment complexes.

112.    When Plaintiff asked Cara about another classmate peeing on her and her subsequent
discomfort, Cara began to cry in the SCB Hearing and said "See, this is why I didn't even
want to do this." Defendants allowed Cara, but not Plaintiff, to testify about Defendant
Davis's November 2nd class. Neither Defendants, nor Forchetti, raised or rectified these
evidentiary/14th amendment issues. Plaintiff also objected to testimony being introduced
regarding Defendant Davis's November 2nd, 2022 class. Defendant Wendler-Modde,
Defendant Darrell Hudson, nor Forchetti attempted to cure this defamatory testimony.

113.    Dinora testified that Plaintiff never harassed or threatened her. Dinora O (hereafter,
Dinora) testified that Plaintiff's critiques of Defendant Katz were valid; and that
Defendant Katz's class was "trash." Dinora testified that she felt harassed and threatened
by her white classmates ("The white kids come up to me and ask if I think like Allie
because we are both women of color.")

114.    Defendant Walsh unfairly blamed Plaintiff for issues outside of her control
throughout her questioning of her witnesses; Plaintiff could not control white students'
comfort in the classroom yet was suspended (per the letter from Wild) for this reason.

115.    Another white student, Graeme H, who testified on Defendant Walsh's behalf, also espoused that conversations regarding race made him "generally uncomfortable." Graeme H's explicitly testified that Plaintiff never threatened or harassed him during the SCB hearing. Defendant Walsh still attributed Graeme H's discomfort to Plaintiff because Plaintiff is Black and complained of racial and sex discrimination.

116.    Forchetti never produced any work product for the entirety of the SCB hearing despite receiving $15,000 in exchange for legal representation of Plaintiff. Forchetti repeatedly tells Plaintiff that she has not suffered any discrimination, racism, or injuries from Defendant Law School, despite Defendant Law School harming Plaintiff because she is Black and complained of racial and sex discrimination.

117.    Forchetti, knowing that Plaintiff was employed by Defendant Law School and Defendant Davis, did not inform Plaintiff of her need to file with the EEOC or any other administrative adjudicative body. Forchetti does not file with the EEOC like any civil rights Plaintiff lawyer exercising an ordinary level of care in the profession would.

118.    Forchetti ignored Plaintiff's emails and pleas for assistance to delay the SCB process and missing SCB Motion and Answer deadlines from Defendant Hudson to conspire and facilitate the unjust enrichment, harm, racial, and sex discrimination against Plaintiff.

119.    Forchetti advocates for Plaintiff to sign identical agreements (including a release) that Plaintiff, earlier upon retaining Lento Law Firm, refused to sign. Forchetti repeatedly reiterated throughout the hearing that "no harm to Plaintiff had occurred" despite being aware of Defendant Law School's myriad of SCB hearing decisions regarding the admission of Plaintiff's evidence that were arbitrary, capricious, unrelated to a legitimate school concern, and violating Plaintiff's 5th and 14th amendment rights to a fair hearing

before deprivation of her rights. Forchetti also failed to inform Plaintiff of her rights under civil rights statutes because she was conspiring with Defendant Law School.

120.    Defendant Law School is a predominantly white institution. Yet, the participants in the SCB proceeding were disproportionately black. Defendants Angela Smith and Peggy Smith, the only two administrators testifying against Plaintiff in the SCB were black. Defendant Nicole Gore, who is black, replaced Defendant Rob Wild, a white man, as the primary supporter of Walsh to provide a veneer of non-racist sentiment and legitimacy.

121.    Defendant Hudson and Defendant Wendler-Modde omitted the facts regarding several witness's testimony from the SCB hearing determination letter. Additionally, Defendant Hudson and Walsh did not allow for four of witnesses to testify on Plaintiff's behalf: (names redacted for privacy, but available at the court's request) a PhD student in Microbiology at Defendant, a Medical student at Defendant, one PhD student in Sociology at Defendant, and another PhD student in Sociology at Defendant. Every single one of Plaintiff's witnesses barred from participation in the SCB Hearing, was Black. The only witness allowed to testify on behalf of Plaintiff was one white person.

122.    The one white person that testified on behalf of Plaintiff testified that Plaintiff would not have been suspended if she were white. Defendant Darrell Hudson interrupted this witness, Plaintiff's only witness, and forbade her from reading her full witness statement regarding November 2, 2022, the singular class that precipitated Plaintiff's suspension from Defendant Law School. Defendant Hudson is not a lawyer and has never gone to law school but was selected to preside over this proceeding because he 1) is Black and 2) his Blackness provided a veneer of non-racist intent and sentiment from Defendant.

123.    **Defendant Walsh asked Plaintiff only one question after being temporarily suspended for 6 months: how was posting on social media to 'clear [her] name?'**

124.    Plaintiff replied that her white Jewish classmate, Yoshua W, could go on for 45 minutes to an hour on a tangent in the middle of class, badgering the professor with off-topic and unrelated questions to the day's lesson plan. Plaintiff testified because she is a Black student, if she would ask even one question related to the course material regarding the racialized policy implications of the law, she would be labeled "disruptive" and subjected to racism vis a vis meritless claims of unprofessionalism and tone-policing.

125.    All of the aforementioned exchanges between Plaintiff and Walsh's witnesses were omitted from the SCB's determination letter.

**May 2023 - February 2024**

126.    Plaintiff was found not guilty on all charges by the SCB in May 2023. Plaintiff was temporarily suspended for 6 months, from November 2022 until May 2023 for no cause.

127.    Plaintiff demanded adequate assurances that the racially discriminatory practices of Defendants would not occur again if Plaintiff were to come back to Defendant Law School campus. Defendant Law School, and Defendant Gore refused to give adequate assurances that the wrongful suspension would not occur again if Plaintiff returned to Defendant Law School. Defendant Law School told Plaintiff that they would prefer if Plaintiff finished her law degree elsewhere during settlement negotiations, and Plaintiff held a reasonable belief that she would continue to be threatened with arrest, harmed or possibly killed if she were to return to Defendant Law School.

128.    On Thursday, April 20th, 2023, Plaintiff sent a spoliation letter to Defendant Gore and Defendant Wendler-Modde stating that Plaintiff requests for all evidence regarding

the hearing and her tenure at Defendant Law School to be preserved for future litigation. Defendants do not reply so that they can deny that they received such a letter later.

129.     Plaintiff started her "Summer Associate" role with Norton Rose Fulbright in New York less than 2 weeks after the conclusion of the SCB hearing, and Defendant was made aware of the same. Plaintiff disclosed during a routine exit-interview with HR that she was transferring to Georgetown University Law Center because of the racial and sexual discrimination at Defendant, and that her transcript would reflect those changes. Norton Rose Fulbright told Plaintiff that they would "look out for the transcript change when [Plaintiff] started next Fall."

130.     As a result of Defendant's wrongful suspension of plaintiff, and Defendant's discriminatory and tortious conduct, Plaintiff is not offered a return offer (where the incoming associate salary is $235,000) from Norton Rose Fulbright. Defendant's material interference with Plaintiff's rights adversely affected her career trajectory.

**February 2024 - October 2024**

131.     Defendant and her agents continue, to this day, to ignore Plaintiff and her claims of racial and sex discrimination. Defendant continues to subject Plaintiff to racial discrimination, and has failed to remedy or prevent the race and sex discrimination to which Plaintiff has been subjected.

132.     The conduct of Defendants, as set forth above, was severe and/or pervasive enough to make a reasonable person believe that the conditions of employment and schooling were altered as the environment was hostile and abusive. Defendants' conduct, as set forth above, was outrageous under the circumstances, was done by and with the knowledge of administration and warrants the imposition of punitive damages against Defendants.

29

133.    Plaintiff's race and sex was the motivating and/or determinative factor in connection

with Defendants' discriminatory treatment of Plaintiff, including without limitation, in

harming Plaintiff and in the creation of the hostile work environment and wrongful

suspension to which Plaintiff was subjected.

134.    The conduct of Defendants, as set forth above, was willful and intentional.

### COUNT I - TITLE VII

135.    Plaintiff incorporates by reference the above paragraphs as if set forth herein in their

entirety. By their actions set forth above, Defendants committed race and sex

discrimination upon Plaintiff in violation of Title VII.

136.    Plaintiff has evidence, both direct and circumstantial, that prove Defendant's

discriminatory intent. Plaintiff has also demonstrated Defendant's discriminatory purpose

through their decision making processes and ignoring Plaintiff's complaints regarding

racial discrimination at Defendant Law School. Plaintiff's race and subsequent

complaints of racial and sex discrimination was a clear motivating factor in Defendant's

"clear pattern unexplainable on grounds other than" discriminatory ones. Plaintiff through

the incorporated paragraphs and foregoing exhibits has shown evidence of a "consistent

pattern" of actions of decision-makers constituting invidious discrimination.

137.    Defendant applied different procedural processes or substantive standards to requests

of minorities and non-minorities, and preferred the white and not-complaining of racial

classmates of Plaintiff over Plaintiff, a Black student who complained of racial

discrimination at Defendant Law School. Defendant's race and sex discrimination and

retaliatory conduct and comments have caused Plaintiff significant emotional distress.

138.    Plaintiff's race and sex was a motivating and/or determinative factor in the above discriminatory and retaliatory acts. The retaliatory actions taken against Plaintiff after she complained of discriminatory conduct would have discouraged a reasonable employee or student from complaining of discrimination.  As a direct and proximate result of Defendant's discriminatory conduct and retaliatory conduct, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, reputational harm, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

## COUNT II—TITLE VI

139.    Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety. By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated Title VI.

140.    Plaintiff's former attorney, Forchetti of the Lento Law Firm failed to advise Plaintiff of the need to file with the EEOC in a timely manner so that Plaintiff's workplace racial discrimination claims would not be heard in a timely manner.

141.    Defendant acted intentionally, and with malice and/or reckless indifference to Plaintiff's rights, and its conduct warrants the imposition of punitive damages.

142.    As a direct and proximate result of Defendant's violation of Title VI, Plaintiff has suffered the losses set forth herein and has incurred attorneys' fees and costs.

143.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

## COUNT III - SECTION 1981

144.    Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety. By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant violated Section 1981.

145.    As a direct and proximate result of Defendant's discrimination, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

146.    Plaintiff suffered and continues to suffer from irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

147.    Said violations by Defendant Law School and above listed Defendants were done and/or carried out with malice and/or reckless indifference to Plaintiff's protected rights, and warrant the imposition of punitive damages. As a direct and proximate result of Defendant's violation of Section 1981, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs (including the $15,000 paid to Lento Law Firm.)

148.    Plaintiff requests relief of attorney fees paid to Lento Law Firm in connection with the Kangaroo-court-sham SCB orchestrated by Defendants. Plaintiff suffered irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

149.    No previous application has been made for the relief requested herein.

## COUNT IV - FRAUD AND UNJUST ENRICHMENT

150.    Plaintiff incorporates and realleges the above paragraphs as if set forth herein in their entirety. By their actions set forth in this complaint, Defendants committed fraud upon Plaintiff.

151.    Plaintiff reasonably relied, to her detriment, on the material misrepresentations and omissions of fact made by Defendants. No previous application has been made for the relief requested herein.

152.    Defendant defrauded Plaintiff by requiring Plaintiff to pay tuition for classes that were either 1) "lost" (according to Defendant Walsh) 2) "unavailable" or 3) not recorded at all (in the case of Professor Sadat's class.) Defendants engaged in fraud by editing and doctoring their emails about the "investigation" (as stated by Defendant Peggy Smith in emails to Defendant Russell Osgood and Defendant Walsh) into Plaintiff in order to make Plaintiff look culpable in their "investigation" plot to get Plaintiff expelled from law school.

153.    Defendants never addressed, confirmed, or denied Plaintiff's allegations of fraud, which were detailed in one of Plaintiff's emails to Defendant Nicole Gore, Lora Clark, and Forchetti. One particular email from Plaintiff addressing Defendant's alleged fraud was dated Wednesday, February 22, 2023, addressing the concerns regarding the font sizes, the omissions of certain e-mails in their entirety, and the different contents of e-mails. Further, Defendants engaged in fraud by conspiring with the Lento Law Firm to retain Forchetti as Plaintiff's attorney. Forchetti was allegedly often sick with COVID, or having other obligations (e.g. doctors appointments) that substantially interfered with Plaintiff's hearing strategy; Plaintiff litigated the entirety of the SCB hearing herself.

154.    Defendant has been unjustly enriched by an amount equal to all the monies collected

from Plaintiff between November 2022 and May 2023 while Plaintiff was erroneously

suspended, and through the unilateral revocation of Plaintiff's scholarship for the

2023-2024 school year from August 2023 to present. Defendant only took these actions

against Plaintiff because she is Black and complained of racial and/or sex discrimination.

155.    Fundamental fairness requires Defendant to return all of Plaintiff's tuition during her

suspension and 3rd year of law school including any financial aid paid to Defendant by a

third party on Plaintiff's behalf. As a result of Defendant's unjust enrichment, Plaintiff is

entitled to recover monetary damages equal to the amount of tuition during her

suspension, plus prejudgment interest, and costs as may be recoverable at law.

156.    Forchetti told Plaintiff "[Walsh] just doesn't like you and that's why she won't

negotiate with you." Forchetti repeatedly said that Plaintiff had not been subject to any

racially discriminatory treatment. Forchetti also counseled Plaintiff, after Plaintiff paid

her firm $15,000, to accept a plea agreement that would have left Plaintiff in a materially

worse condition, but Defendant in a better position, than when Plaintiff retained Lento

Law Firm. Forchetti engaged in a fraud conspiracy with Defendants by practicing an

unfamiliar area of law to aid and abet Defendant Law School's discrimination.

157.    Defendant made unambiguous promises to Plaintiff, both before and during her

tenure at Defendant Law School, that any student would not have their scholarship

revoked if not found guilty of violating any other university code or policy. Defendant

Wild made unambiguous promises to Plaintiff, both before and during her temporary

suspension, that if she were accused of a violation of the Student Conduct Code, she

would not be sanctioned without a fair disciplinary procedure, an impartial investigation

and equitable resolution. Plaintiff's contractual and 14th amendment rights were violated through Defendant's failure to adhere to Plaintiff's terms of her suspension and subjected to retaliatory billing practices.

158.   Plaintiff relied on Defendant's promises when she decided to enroll, and continued to enroll for six semesters, at Defendant Law School. Plaintiff maintained "full time student status," the sole condition of her scholarship letter, at all times from matriculation at Defendant Law School to completion of the graduation requirements.

159.   Plaintiff's reliance on "full time student status" being the sole condition of the scholarship because it was the only term listed on the scholarship letter was expected and foreseeable by Defendant, especially since the ABA Standard 509 requires all ABA approved law schools to fully disclose the conditions of any conditional offer or scholarship. Defendant knew Plaintiff was attempting to graduate from law school. Plaintiff relied on Defendant's promises to her detriment as Defendant wrongfully suspended Plaintiff, failed to provide her with a fair and equitable process that satisfied due process, and prevented Plaintiff from securing post-graduation employment.

160.   As a direct and proximate result of Plaintiff's reasonable reliance on Defendants' misrepresentations and omissions of fact, which Defendants knew to be false, Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' unlawful acts unless and until granted the relief requested herein.

## COUNT V - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

161.   Plaintiff incorporates by reference the above and below paragraphs as if set forth herein in their entirety. By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has committed the intentional tort of intentional infliction of

emotional distress. Defendants prolonged the SCB hearing with unreasonable delay and for no reason other than stall for time. Defendants refused to admit the videos of Plaintiff's classes, despite Walsh arguing that Plaintiff was disruptive in class. Additionally, Defendant Gore and her assistant, Lora Clark's willful and intentional actions of botching, misconstruing, and mislabeling Plaintiff's exhibits caused Plaintiff to be suspended for over 6 months. This caused severe mental and emotional distress to Plaintiff and her mother, a Harvard trained attorney who asked for Defendants to stop torturing Plaintiff.

162.    For three of Plaintiff's consecutive birthdays, Defendant intentionally and repeatedly traumatized Plaintiff through fraud and exposing Plaintiff to sexual predators, prolonging hearings, tampering with evidence and doctoring e-mails. For her 25th birthday, Defendants also caused Plaintiff to be involved and actively testifying in a sham Title IX proceeding with a known sexual predator that Defendant failed to protect her from. On her 26th birthday, Defendants erroneously suspended Plaintiff because she is Black and complained of racial discrimination in connection with her employment. On her 27th birthday, Defendants stole her FAFSA refund in retaliation for winning the SCB hearing against Defendant Walsh leaving her destitute, financially crippled and broke.

163.    Defendant engaged in a pattern of malicious and intentional conduct to harm Plaintiff.

**COUNT VI - NEGLIGENCE**

164.    Plaintiff incorporates and realleges the above paragraphs as if set forth herein in their entirety. Defendant's actions were a grievous and foreseeable breach of their duty and

exposed Plaintiff to an unreasonable risk of harm.

165.    Defendants had a duty to protect Plaintiff from sexual predators and racial

discrimination. Defendant failed to exercise a reasonable standard of care in recruiting

non-dangerous individuals to their campus. Defendant's breach of duty caused the

Plaintiff's injury. Plaintiff suffered damages as a result of Defendant's breach.

## COUNT VII - BREACH OF CONTRACT

166.    Plaintiff incorporates by reference and realleges the above paragraphs as if set forth

herein in their entirety. Defendant and Plaintiff had a legally enforceable

obligation/agreement through the scholarship award letter that specified and required one

term of performance by Plaintiff: "maintain full time student status."

167.    Defendant breached this obligation by suspending Plaintiff erroneously for 6 months,

requiring Plaintiff to hire a lawyer, spending $15,000 to ensure that Plaintiff's rights

would not be violated during the SCB Hearing, and then revoking her scholarship.

168.    Plaintiff had to receive food supplemental assistance in the State of Maryland as a

result of Defendant's breach of contract. Plaintiff also had to work 3 jobs at one time after

Defendant revoked her scholarship, and breached the scholarship contract. Defendant's

actions forced Plaintiff to resign from the DC Office of Human Rights. As a result, one

Bar organization asked Plaintiff if she had "attendance issues" relating to her job at the

DC Office of Human Rights, when in actuality, she had to resign because of Defendant's

fraud and breach of contract. Defendant Walsh's actions caused the bar to be doubtful of

Plaintiff's character and fitness for admission to the bar.

169.    Defendant's breach of contract continues to materially harm Plaintiff.

## COUNT VIII - DEFAMATION

170.    Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety. Plaintiff restates and realleges the allegations contained both above and below as contained therein.

171.    From November 2022 to the date of this complaint, Defendant has engaged in a pattern of spreading false and defamatory statements concerning Plaintiff through unprivileged publications to third parties including but not limited to the Bar Associations of various jurisdictions, resulting in fault amounting at least to Defendant's negligence.

172.    Defendants defamed Plaintiff within every single document that Defendant produced regarding Plaintiff; Defendant has furnished defamatory messages to the American Bar Association, to federal investigators at the US Department of Education and FAFSA's Ombudsman Office as late as November 2024 this year. Defendants also transmitted and publicized harmful and untrue statements about Plaintiff to various third parties including the Bar Association to which she has applied.

173.    Defendants continue to transmit harmful and untrue messages about Plaintiff to prospective employers and other entities in the legal profession. Plaintiff's harm will continue until this Court acts to impose damages on Defendant.

**COUNT IX - 18 USC SECTION 241 - CONSPIRACY AGAINST RIGHTS**

174.    Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety. Plaintiff restates and realleges the allegations contained both above and below as contained therein.

175.    By committing the foregoing act of a conspiracy against rights, Defendants injured, oppressed, threatened, and intimidated Plaintiff from exercising her civil rights in violation of 18 U.S.C. Section 241.

## COUNT X - ABUSE OF PROCESS

176.    Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety. Plaintiff restates and realleges the allegations contained both above and below as contained therein.

177.    Defendant Law School and her agents had a duty to ensure that Defendant Walsh would not pursue malicious abuse of process against Plaintiff. Defendant Law School breached this duty when they allowed Defendant Walsh to utilize their bureaucratic instrumentalities to get Plaintiff expelled from law school. Defendants caused irreparable harm to Plaintiff's reputation, mental health, and job prospects through this malicious abuse of process. Plaintiff requests all damages allowable by law.

## COUNT XI - AMENDMENT XIV OF THE US CONSTITUTION

178.    Plaintiff incorporates by reference the above paragraphs as if set forth herein in their entirety.  Plaintiff restates and realleges the allegations contained both above and below as contained therein.

179.    As private actors that receive federal funding, Defendant Law School and their agents are subject to the 14th Amendment. By committing the foregoing acts of discrimination and retaliation against Plaintiff based on her race, sex and complaints of racial and sex discrimination, Plaintiff has been deprived of her rights under Amendment XIV.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant:

(a) declaring the acts and practices complained of herein to be a violation of Title VI;

(b) declaring the acts and practices complained of herein to be in violation of Title VII;

(c) declaring the acts and practices complained of herein to be in violation of Section 1981;

(d) declaring the acts and practices complained of herein to be in violation of Section 1985;

(e) declaring the acts and practices complained of herein to be in violation of the common law of the State of Maryland in addition to Plaintiff's breach of contract and tort claims;

(f) entering judgment against Defendant and in favor of Plaintiff in an amount to be determined; enjoining and restraining Defendant's collections actions and the violations alleged herein; awarding compensatory damages to Plaintiff for past and future emotional upset, mental anguish, humiliation, loss of life's pleasures, and pain and suffering; to make Plaintiff whole for all past and future lost earnings, benefits, and earning capacity, which Plaintiff has suffered and will continue to suffer as a result of Defendants' discriminatory, retaliatory, and unlawful misconduct; awarding Plaintiff costs of this action, together with reasonable attorney's fees; awarding liquidated and punitive damages to Plaintiff;  awarding Plaintiff such other damages as are appropriate under the Title VI, Section 1981, Section 1985; and granting such other and further relief as this Court deems appropriate.

Respectfully submitted,

Allison Brown, Plaintiff

6405 Chew Road
Upper Marlboro, MD
301-875-2658

40