**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ALLISON BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 8:24-cv-03198-TDC |
| | ) | |
| WASHINGTON UNIVERSITY | ) | |
| SCHOOL OF LAW, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, FAILURE TO STATE A CLAIM

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

ARGUMENT ...................................................................................................... 4

I.  MARYLAND DOES NOT HAVE PERSONAL JURISDICTION OVER ANY DEFENDANT ................................................................ 4

    a.  Standard of Review ............................................................ 4

    b.  Due Process ....................................................................... 5

        1.  General Personal Jurisdiction ................................... 5

        2.  Specific Personal Jurisdiction ................................... 6

            1.  Prong 1: Purposeful Availment .................................. 7

            2.  Prong 2: Arise out of Activities Directed at the State .. 11

            3.  Prong 3: Constitutionally Reasonable ......................... 13

    c.  Maryland's Long-arm Statute ............................................. 14

II.  PLAINTIFF FAILS TO STATE A CLAIM AGAINST ANY DEFENDANT ............................................................................... 15

    a.  Standard of Review ............................................................ 15

    b.  Missouri Law Governs Plaintiff's Claims .......................... 16

    c.  Count I – "Title VII" ........................................................ 16

    d.  Count II – "Title VI" ........................................................ 17

    e.  Count III – "Section 1981" ................................................ 18

    f.  Count IV – "Fraud and Unjust Enrichment" ....................... 19

    g.  Count V – "Intentional Infliction of Emotional Distress" ... 21

    h.  Count VI – "Negligence" .................................................. 22

    i.  Count VII – "Breach of Contract" ..................................... 23

    j.  Count VIII – "Defamation" ............................................... 25

    k.  Count IX – "18 U.S.C. 241 – Conspiracy Against Rights" ... 25

**l.**  **Count X – "Abuse of Process"**.................................................................**26**

**m.**  **Count XI – "Amendment XIV of the US Constitution"** ....................**26**

**CONCLUSION**............................................................................................................**28**

**INTRODUCTION**

On November 4, 2024, Plaintiff Allison Brown ("Plaintiff") filed a shotgun-style, 721-paragraph complaint against Defendant Washington University School of Law[1] ("WashU") and twelve of WashU's faculty and staff: Law Professors Adrienne Davis, Russell Osgood, Peggie Smith, and Elizabeth Katz; the Law School's Associate Dean for Student Life and Academic Services Elizabeth Walsh; the Law School's Director of Financial Aid and Student Life Carrie Burns; the Law School's Assistant Dean of Diversity, Equity & Inclusion Angela Smith; WashU's Dean of Students Rob Wild; WashU's faculty member and Chair of the Student Conduct Board Darrell Hudson; WashU's Associate Dean for Student Conduct and Community Standards Nicole Gore; WashU's Associate Vice Chancellor for Student Affairs Mark Kamimura-Jiménez; and WashU's Associate General Counsel Deanna Wendler-Modde (the "Individual Defendants") (together, "Defendants"). (Compl. ¶¶ 4, 11-20, ECF No. 1.)

Two days later, this Court struck Plaintiff's Complaint for failure to comply with Local Rule 103.1(d), which states that "[p]leadings should be no longer than necessary and, except in removals of a state action, shall not exceed forty (40) pages in length." (Order, ECF No. 5.) At 138 pages, Plaintiff's initial complaint far exceeded the page limit. This Court gave Plaintiff seven days to file an Amended Complaint, which Plaintiff did on November 13, 2024. (Am. Compl., ECF No. 6.) The 40-page Amended Complaint has been pared down to 179 paragraphs. (*Id.*)

In the Amended Complaint, Plaintiff, a citizen of Maryland, purports to assert eleven counts against Defendants. (*Id.* ¶ 1 (alleging Plaintiff's Maryland citizenship); *id.* at 30-39 (setting out the eleven counts).) Defendant WashU is located in St. Louis, Missouri; Missouri is both its state of incorporation and principal place of business. (*Id.* ¶ 4; *see also* <u>Exhibit 5</u>, Declaration of

---

[1] The Washington University School of Law is not an independent legal entity.

D. Wendler-Modde at ¶ 7.)  The Individual Defendants were employed by WashU and worked at its campus in St. Louis.  (Am. Compl., ¶¶ 7-16.)  Since the events alleged in this lawsuit, Defendants Hudson and Katz have moved to Michigan and Florida, respectively.  (Exhibit 4, Declaration of D. Hudson at ¶ 4; Exhibit 6, Declaration of E. Katz at ¶ 5.)

In the Amended Complaint, Plaintiff alleges numerous, at times difficult to decipher, wrongs that she claims Defendants committed during her time as a student at WashU's School of Law, including failing to investigate complaints she made regarding gun violence (*id.* ¶ 41), race discrimination (*id.* ¶¶ 35-37, 41, 50, 60, 74, 90, 100, 115-16, 131, 135-37, 139, 154, 162, 179), and sex discrimination (*id.* ¶¶ 35-37, 41, 60, 115-16, 131, 135-37, 154, 179).  The crux of the Amended Complaint, however, appears to be that WashU temporarily suspended her from campus for six months while investigating whether she violated the Student Code of Conduct by "engag[ing] in a pattern of disruptive and harassing behavior targeted at law school community members, including faculty and students."  (Am. Compl. Ex. D, at 2, ECF No. 6-5 ("Effective immediately, you are no longer permitted on campus.  You will be permitted to complete your classes remotely, as noted below.").)  Plaintiff claims that this investigation was actually pursued "because [she] is Black and complained of racial discrimination."  (Am. Compl. ¶ 90.)  She alleges that in May 2023, the end of her second year of law school, the Student Conduct Board found her "not guilty" of the charges made against her under the Student Code of Conduct.  (*Id.* ¶ 126.)

Plaintiff further alleges she paid WashU $17,455.02 in cash and $30,000 in federal student loans for the 2023-2024 academic year.  (*Id.* at 3.)  Because, however, WashU allegedly revoked her $37,000 annual scholarship, Plaintiff still owed approximately $40,000.  (*Id.*; *see also* Am. Compl. Ex. H, ECF No. 6-9.)  Plaintiff alleges WashU wrongfully revoked her scholarship and

2

wrongfully initiated garnishment proceedings to collect her outstanding, unpaid tuition balance and late fees.  (Am. Compl. at 3; *see also* Am. Compl. Ex. H, ECF No. 6-9.)

The Amended Complaint describes various classroom interactions, meetings with faculty and staff, and disciplinary proceedings—all of which took place in Missouri.  Plaintiff alleges that she relocated to Maryland after being suspended from campus and remained in Maryland when she enrolled at Georgetown University Law Center for her third year of law school.  (Am. Compl. ¶ 3.)  The Amended Complaint's only allegations connecting Defendants to Maryland are that WashU "continuously recruits students to attend their undergraduate and graduate programs from the state of Maryland" (*id.* ¶ 4), that (unspecified) "Defendants" sent billing documents to Plaintiff's Maryland address (*id.* ¶ 23), that Plaintiff experienced "adverse and discriminatory actions" while residing in Maryland (*id.*), and that (also unspecified) "Defendants" made allegedly defamatory statements to third parties that affected Plaintiff in Maryland (*id.* ¶¶ 171-73).  Because these allegations are insufficient to give rise to specific or general personal jurisdiction, Defendants respectfully request that this Court dismiss this case pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.  Additionally, and in the alternative, Defendants respectfully request that this Court dismiss this case pursuant to Rule 12(b)(6), as each of Plaintiff's eleven claims in the Amended Complaint fail to state a claim upon which relief may be granted.

On January 6, 2025, Defendants filed a Notice of Intent to File a Motion in accordance with the Court's Case Management Order.  On January 22, 2025, the Court held a telephonic status conference and authorized the filing of a motion to dismiss for lack of personal jurisdiction or, in the alternative, for failure to state a claim.  (ECF No. 28.)  Defendants now so move.

**ARGUMENT**

I.    **MARYLAND DOES NOT HAVE PERSONAL JURISDICTION OVER ANY DEFENDANT.**

a.    **Standard of Review.**

Under Federal Rule of Civil Procedure 12(b)(2), it is the plaintiff's burden to establish personal jurisdiction. *See Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993). When a court decides a Rule 12(b)(2) motion without an evidentiary hearing, the plaintiff must make a *prima facie* showing that a defendant is properly subject to the court's jurisdiction. *Id.*; *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). In evaluating the plaintiff's showing, a court must accept the plaintiff's allegations as true, and it must draw all reasonable inferences and resolve any factual conflicts in the plaintiff's favor. *Mylan Labs., Inc.*, 2 F.3d at 59-60. The Court may consider declarations and other submitted evidence in resolving a Rule 12(b)(2) motion. *See Costar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757, 763-64 (D. Md. 2009).

Under Rule 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). A district court's exercise of personal jurisdiction over a nonresident defendant must satisfy both the long-arm statute of the state in which the court sits and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.* The Maryland long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103 (West 2020), authorizes the exercise of personal jurisdiction to the limits permitted by the Due Process Clause of the Fourteenth Amendment. *See ALS Scan, Inc. v. Digit. Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002); *Beyond Sys. Inc. v. Realtime Gaming Holding Co.*, 878 A.2d 567, 576 (Md. 2005). There may be cases, however, in which personal jurisdiction comports with federal due process but which present factual scenarios outside the scope of the long-arm statute. *Krashes v. White*, 341 A.2d

798, 804 (Md. 1975). Thus, the jurisdictional analysis under the long-arm statute does not simply collapse into the due process analysis. *See Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 493 n.6 (Md. 2006).

### b.    Due Process.

The United States Supreme Court has recognized two distinct types of personal jurisdiction: general and specific. *See J. McIntyre Mach., Ltd. v. NiCastro*, 564 U.S. 873, 881 (2011). Neither exists here.

### 1.    General Personal Jurisdiction.

General personal jurisdiction exists only if a defendant is so closely connected to a forum state as to be "at home" there—the paradigmatic examples being a natural person's state of domicile (*i.e.*, where a person resides and intends to remain indefinitely) and a corporation's state of incorporation or location of its principal place of business. *See Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 924 (2011); *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 132 (4th Cir. 2020) ("[T]he paradigm forums where corporations are fairly regarded as at home are the forums where it is incorporated and where it has its principal place of business.").

This Court does not have general personal jurisdiction over any Defendant. WashU's place of incorporation and principal place of business is St. Louis, Missouri (Am. Compl., ECF No. 6 at ¶ 4; *see also* Exhibit 5, Declaration of D. Wendler-Modde at ¶ 7), and no Individual Defendant is domiciled in Maryland. Instead, Defendants Davis, A. Smith, Burns, Wendler-Modde, Walsh, Kamimura-Jimenez, Gore, P. Smith, Osgood, and Wild reside and intend to remain indefinitely in Missouri. (Exhibit 1, Declaration of A. Davis at ¶ 3; Exhibit 2, Declaration of A. Smith at ¶ 3; Exhibit 3, Declaration of C. Burns at ¶ 3; Exhibit 5, Declaration of D. Wendler-Modde at ¶ 3; Exhibit 7, Declaration of E. Walsh at ¶ 3; Exhibit 8, Declaration of M. Kamimura-Jimenez at ¶ 3; Exhibit 9, Declaration of N. Gore at ¶ 3; Exhibit 10, Declaration of P. Smith at ¶ 3; Exhibit 11,

5

Declaration of R. Osgood at ¶ 3; Exhibit 12, Declaration of R. Wild at ¶ 3.)  Defendant Hudson resides and intends to remain indefinitely in Michigan.  (Exhibit 4, Declaration of D. Hudson at ¶ 4.)  And Defendant Katz resides and intends to remain indefinitely in Florida.  (Exhibit 6, Declaration of E. Katz at ¶ 5.)  In fact, Plaintiff herself implicitly admits that the Court does not have general personal jurisdiction over any Defendant because no Defendant is a citizen of Maryland.  (Am. Compl. ¶¶ 4, 7-16; *id.* ¶ 19 (alleging that the Court "has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as there exists complete diversity of citizenship between the Plaintiff and Defendants . . . .").)  Accordingly, the Court may not exercise general personal jurisdiction over any defendant.

### 2.    Specific Personal Jurisdiction.

Specific personal jurisdiction arises when "the relationship among the defendant, the forum, and the litigation" involves "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (first quoting *Keaton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984), then quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  This "relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State," and the Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State."  *Id.* (quoting *Burger King Corp. v Rudzewicz*, 471 U.S. 462, 475 (1985)); *see also id.* at 285 ("[T]he plaintiff cannot be the only link between the defendant and the forum.").

The Fourth Circuit has formulated a three-part test for use in determining whether there is specific jurisdiction over a defendant. The three prongs are: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of

6

personal jurisdiction would be constitutionally reasonable." *Jones v. Mutual of Omaha Ins. Co.*, 639 F. Supp. 3d 537, 549 (D. Md. 2022) (quoting *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009)). It is necessary to evaluate the second and third prongs of the test for specific personal jurisdiction "[i]f, and only if" the first prong is satisfied." *Consulting Eng'rs Corp.*, 561 F.3d at 278.

### 1.    Prong 1: Purposeful Availment

The Fourth Circuit has likewise identified a list of non-exhaustive factors to be considered in the purposeful availment inquiry:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

*UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020) (quoting *Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 198-99 (4th Cir. 2018)). The focus should be on "the defendant's contacts with the forum State itself not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285. In assessing purposeful availment, courts consider "the *quality* and *nature* of the defendant's connections" to the forum state, "not merely the number of contacts between the defendant and the forum state." *UMG Recordings, Inc.*, 963 F.3d at 352.

Here, the quality and nature of Defendants' contacts with Maryland do not establish purposeful availment. As to the first four factors, Plaintiff does not allege that Defendants maintain any offices, agents, or property in the state of Maryland, and the declarations of the Individual

Defendants confirm that they do not own property or pay taxes in Maryland. (Exhibit 1, Declaration of A. Davis at ¶ 5; Exhibit 2, Declaration of A. Smith at ¶ 5; Exhibit 3, Declaration of C. Burns at ¶ 5; Exhibit 4, Declaration of D. Hudson at ¶ 6; Exhibit 5, Declaration of D. Wendler-Modde at ¶ 5; Exhibit 6, Declaration of E. Katz at ¶ 7; Exhibit 7, Declaration of E. Walsh at ¶ 5; Exhibit 8, Declaration of M. Kamimura-Jimenez at ¶ 5; Exhibit 9, Declaration of N. Gore at ¶ 5; Exhibit 10, Declaration of P. Smith at ¶ 5; Exhibit 11, Declaration of R. Osgood at ¶ 5; Exhibit 12, Declaration of R. Wild at ¶ 5.) Plaintiff also does not allege that any of the Individual Defendants have or seek to solicit or initiate any business in the state or engage in significant or long-term business activities in Maryland, and the declarations of the Individual Defendants confirm that they do not. (Exhibit 1, Declaration of A. Davis at ¶ 4; Exhibit 2, Declaration of A. Smith at ¶ 4; Exhibit 3, Declaration of C. Burns at ¶ 4; Exhibit 4, Declaration of D. Hudson at ¶ 5; Exhibit 5, Declaration of D. Wendler-Modde at ¶ 4; Exhibit 6, Declaration of E. Katz at ¶ 6; Exhibit 7, Declaration of E. Walsh at ¶ 4; Exhibit 8, Declaration of M. Kamimura-Jimenez at ¶ 4; Exhibit 9, Declaration of N. Gore at ¶ 4; Exhibit 10, Declaration of P. Smith at ¶ 4; Exhibit 11, Declaration of R. Osgood at ¶ 4; Exhibit 12, Declaration of R. Wild at ¶ 4.)

Plaintiff does allege that WashU "continuously recruits students to attend their undergraduate and graduate programs from the state of Maryland." (Am. Compl. ¶ 4.) But she does not specifically allege that *she* was recruited to attend WashU while residing in Maryland. And, even if she did, such an allegation would still be insufficient to establish personal jurisdiction. *See, e.g.*, *Hardnett v. Duquesne Univ.*, 897 F. Supp. 920, 924 (D. Md. 1995) ("Whatever argument might be made in favor of personal jurisdiction over nonforum commercial establishments that advertise for Maryland customers, the same cannot be said of a nonforum university."); *Isaacs v. Arizona Bd. of Regents*, 608 F. App'x 70, 76 (3d Cir. 2015); *Fields v. Sickle Cell Disease Ass'n of*

8

*Am., Inc.*, 376 F. Supp. 3d 647, 652-54 (E.D.N.C. 2018) (granting motion to dismiss where plaintiff telecommuted, no meetings were held in forum, no employees traveled to forum to work with plaintiff, and plaintiff initiated contact with defendant and noting that plaintiff's choice to complete her work in the forum state was a unilateral decision that cannot be fairly attributed to the defendant). Further, to the extent that WashU's recruitment of other students from Maryland constitutes "long-term business" in the state, Plaintiff has pleaded no facts suggesting that her claims arise out of or relate to it.

As to the fifth, sixth, and seventh factors, Plaintiff does not allege that there is a Maryland choice-of-law provision in any contract applicable to this case, or that there was a contract requiring the performance of any activities in Maryland. In fact, to the extent that WashU "sold" Plaintiff an education, the "teaching occurred in Missouri regardless of whether Plaintiff heard it in Missouri or in [Maryland]." *Lefebvre v. Washington Univ.*, No. 20C4928, 2021 WL 197388, at *2 (N.D. Ill. Jan. 20, 2021) (dismissing claims against WashU for lack of personal jurisdiction). Plaintiff does not allege that WashU or its agents made any in-person contact with Plaintiff in Maryland. Plaintiff also does not allege any contract or business relationship with any of the Individual Defendants in this case.

The eighth factor concerns the parties' communications. In a vague attempt to plead the existence of personal jurisdiction, Plaintiff alleges in conclusory fashion that "Defendant[2] committed a substantial part of the discriminatory acts against Plaintiff within this District," causing her to "experienc[e] a significant amount of adverse and discriminatory actions . . . while residing in the state of Maryland." (Am. Compl. ¶ 23.) Yet the only specific factual allegation Plaintiff makes is that WashU "sent billing documents to Plaintiff's address in Maryland." (*Id.*)

---

[2] Apparently referring to WashU, though Plaintiff does not specify.

The Fourth Circuit has rejected assertions of personal jurisdiction on the basis of communications alone.[3]  *See Consulting Eng'rs*, 561 F.3d at 279-81 (finding that the exercise of personal jurisdiction would not comport with due process where "the contacts that support . . . jurisdiction consist of approximately four telephone conversations and twenty-four emails"); *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 137 (4th Cir. 1996) (concluding that "electronic connection . . . does not establish [a party's] 'presence' in that jurisdiction").

As shown, the purposeful-availment factors weigh in favor of dismissing this case for lack of personal jurisdiction.  Personal jurisdiction cannot arise from a student's choice to participate in remote learning from Maryland.  When WashU suspended Plaintiff from its campus, it permitted her to complete courses remotely as an accommodation—not as an engagement with Maryland.  Plaintiff's unilateral decision to move to Maryland after her suspension cannot cause Defendants to be subject to the jurisdiction of Maryland's courts.  *Walden*, 571 U.S. at 284 ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State."); *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[T]he unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."). Because the first prong is not satisfied, the Court should conclude that specific personal jurisdiction does not exist and end the inquiry here.  *Consulting Eng'rs Corp.*, 561 F.3d at 278.

---

[3] There are certain exceptions to this rule that are not relevant here, such as in a case alleging a violation of the Telephone Consumer Protection Act (TCPA).  *See Bradley v. DentalPlans.com*, 617 F. Supp. 3d 326, 338 (D. Md. 2022).

### 2.    *Prong 2: Arise out of Activities Directed at the State*

The second specific personal jurisdiction prong asks "whether the plaintiffs' claims arise out of those activities directed at the State." *Jones*, 639 F. Supp. 3d at 549.  Under this prong, the Court can *only* exercise specific personal jurisdiction over a defendant where the claims against that defendant arise out of or relate to the defendant's contacts with the forum. *Ford v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) ("The plaintiff's claims, we have often stated, 'must arise out of or relate to the defendant's contacts' with the forum.").  In other words, the activity in the forum state must form "the genesis of [the] dispute." *CFA Institute v. Institute of Chartered Fin. Analysts of India*, 551 F.3d 285, 295 (4th Cir. 2009).

Here, the Amended Complaint demonstrates the absence of relevant contacts with Maryland: none of Plaintiff's eleven claims arise out of or relate to any activities directed at Maryland.  The allegations in the Amended Complaint concern WashU's investigation of alleged misconduct, implementation of disciplinary proceedings, and decisions regarding Plaintiff's scholarship—all of which occurred in Missouri.  Plaintiff's claims of discrimination, harassment, and defamation stem from classroom interactions, meetings, and administrative proceedings that took place entirely on WashU's St. Louis campus. That Plaintiff alleges to have experienced the effects of these Missouri-based actions while residing in Maryland does not establish the required connection between Defendants' (nonexistent) forum contacts and her claims.  *Walden*, 571 U.S. at 290 (holding that with respect to specific jurisdiction, the question "is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.").

The mere fact that WashU sent billing documents to Plaintiff's Maryland address or that she attended classes remotely from Maryland does not transform this fundamentally Missouri-

centered dispute into one arising from Maryland contacts. *See id.* Indeed, Plaintiff's own allegations demonstrate that her claims arise from conduct that occurred *before* she relocated to Maryland. She alleges that she moved to Maryland only after being suspended from campus, and the suspension itself resulted from events that transpired entirely in Missouri. The subsequent mailing of bills to her Maryland address and her remote attendance at classes were merely incidental to the Missouri-based conduct that forms the basis of her claims.

Moreover, Plaintiff does not allege that any of the Individual Defendants engaged in conduct specifically directed at Maryland that gives rise to her claims. The Individual Defendants' various roles in the disciplinary proceedings, scholarship decisions, and alleged discriminatory conduct all concerned their work as WashU employees in Missouri. That Plaintiff unilaterally chose to relocate to Maryland after these events cannot create the necessary connection between her claims and any defendant's forum contacts. *See Stover*, 84 F.3d at 137. Although Plaintiff alleges that WashU "continuously recruits students to attend their undergraduate and graduate programs from the state of Maryland," this contact cannot support specific jurisdiction because her claims do not arise from or relate to such alleged recruitment activities. The Supreme Court has made clear that specific jurisdiction requires a substantive causal link between a defendant's forum contacts and a plaintiff's claims. *See Ford*, 592 U.S. at 360. WashU's general recruitment of students from Maryland has no causal relationship to Plaintiff's claims of discrimination, retaliation, and wrongful discipline arising from her time as a student in Missouri. *See Lefebvre*, 2021 WL 197388, at *2.

Even under the most generous reading of the Amended Complaint, none of Plaintiff's alleged injuries arose from or related to WashU's Maryland recruitment activities. Thus, this

12

factor weighs heavily against finding personal jurisdiction over Defendants. *See Ford*, 592 U.S. at 359.

### 3.    *Prong 3: Constitutionally Reasonable*

Finally, the Court's exercise of personal jurisdiction over Defendants would not be constitutionally reasonable. *See Christian Sci. Bd. of Dirs. of First Church of Christ, Sci. v. Nolan*, 259 F.3d 209, 217 (4th Cir. 2001). "In determining whether jurisdiction is constitutionally reasonable, [courts] may evaluate 'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in further fundamental substantive social policies.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477-78 (1985)). The Court must keep in mind "the inequity of being haled into a foreign forum," especially when the defendants could not reasonably foresee that they could be subject to suit there. *CFA Inst.*, 551 F.3d at 296.

Applying these principles, requiring Defendants to litigate this case in Maryland would impose a substantial and unreasonable burden. Each Individual Defendant resides in either Missouri, Michigan, or Florida, and WashU is a citizen of Missouri. Defending this action in Maryland would require Defendants to travel across the country, away from their places of employment and residence, to litigate claims that arose entirely from conduct occurring in Missouri. *See id.* The burden is particularly acute given that virtually all relevant witnesses and evidence are located in Missouri, where Plaintiff's legal education, as well as the alleged discriminatory acts and disciplinary proceedings, took place.

Maryland's interest in adjudicating this dispute is minimal. While Plaintiff currently resides in Maryland, the controversy centers on events that occurred entirely within Missouri at a

13

Missouri institution. Although Plaintiff claims to have experienced effects of the alleged conduct while in Maryland, these effects stem solely from her unilateral decision to relocate there after her suspension. The interstate judicial system's interest in efficient resolution of controversies strongly favors litigating these claims in Missouri, where the vast majority of witnesses and evidence are located. Moreover, Missouri has a far greater interest than Maryland in regulating the conduct of its educational institutions and adjudicating disputes arising from educational services provided within its borders. Requiring Defendants to defend against claims in Maryland based solely on a student's choice to participate in remote learning from that forum would offend traditional notions of fair play and substantial justice. In sum, all of the relevant factors reveal that personal jurisdiction is lacking under the Due Process Clause. Plaintiff's Amended Complaint should be dismissed under Rule 12(b)(2).

### c.    Maryland's Long-arm Statute.

As relevant here, Maryland's long-arm statute authorizes jurisdiction over a party which, directly or by an agent, "(1) [t]ransacts any business or performs any character of work or service in the State; [or] . . . (3) [c]auses tortious injury in the State by an act or omission in the State; (4) [c]auses tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, services, or manufactured products used or consumed in the State." Md. Code Ann., Cts. & Jud. Proc. § 6-103(1), (3)-(4). To exercise personal jurisdiction under the long-arm statute, the Court must determine that at least one of these bases has been satisfied. *See id.* § 6-103(a).

First, Defendants have not transacted relevant business or performed any relevant work or service in Maryland within the meaning of § 6-103(1). Although WashU allegedly recruits students from Maryland, Plaintiff's claims do not arise from any recruitment activities in

14

Maryland. The mere fact that Plaintiff unilaterally chose to attend classes remotely from Maryland after her suspension, or that WashU sent bills to her Maryland address, does not constitute transacting business in the state. Moreover, none of the Individual Defendants conducted any business or performed any work in Maryland—their interactions with Plaintiff occurred entirely in Missouri as part of their employment.

Second, Plaintiff's allegations fail to satisfy either § 6-103(3) or § 6-103(4). Section 6-103(3) does not apply because Defendants did not commit any relevant acts or omissions in Maryland; rather, all alleged discriminatory conduct and disciplinary proceedings occurred in Missouri. Section 6-103(4) is likewise inapplicable because Defendants do not regularly conduct business in Maryland, maintain any persistent course of conduct there, or derive substantial revenue from services in Maryland. WashU's alleged general recruitment of Maryland citizens does not establish the type of regular, persistent conduct contemplated by the statute, particularly where Plaintiff's claims bear no relationship to such alleged recruitment. The Individual Defendants have even less connection to Maryland, as they neither conduct business nor derive any revenue from the state. In short, Maryland's long-arm statute does not reach Defendants. Nor does the Due Process Clause permit the exercise of personal jurisdiction. For both of these reasons, Plaintiff's Amended Complaint should be dismissed for lack of personal jurisdiction.

## II.    PLAINTIFF FAILS TO STATE A CLAIM AGAINST ANY DEFENDANT.

### a.    Standard of Review.

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). While pro se filings "should not be scrutinized with such technical nicety that a meritorious claim should be defeated . . . the complaint must still contain more than

15

legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Ellie v. Sprint*, No. 8:15-cv-00881-TDC, 2015 WL 5923364, at *2 (D. Md. Oct. 7, 2015).

### b. Missouri Law Governs Plaintiff's Claims.

"[A] federal court sitting in diversity applies the choice-of-law rules of the state in which it sits." *Williams v. Gyrus ACMI, Inc.*, 790 F. Supp. 2d 410, 414 (D. Md. 2011) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 494 (1941)). In tort actions, Maryland adheres to the *lex loci delicti* rule. *Id.* (citing *Philip Morris Inc. v. Angeletti*, 752 A.2d 200, 230 (Md. Ct. App. 2000)). Under this rule, "the substantive tort law of the state where the wrong occurs governs." *Id.* (citation omitted). Here, as described above, the alleged wrongs all occurred in Missouri. As such, Missouri law applies to Plaintiff's common law claims.

### c. Count I – "Title VII"

In Count I, Plaintiff alleges Defendants engaged in race and sex discrimination in violation of Title VII, a federal law that prohibits employment discrimination based on certain protected classes. 42 U.S.C. § 2000e–2(a). Thus, "there must be some connection with an employment relationship for Title VII protections to apply." *Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 189 (4th Cir. 1998) (citation omitted). In an attempt to plead the existence of an employment relationship, Plaintiff alleges she was "hired by" Defendant Davis to perform research and received a $1,000 grant in connection with this work. (Am. Compl. ¶ 77.) Even if this allegation sufficed to establish an employment relationship for purposes of Title VII, Plaintiff admits that she did not file a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), a fact which is by itself fatal to her claim. (*Id.* ¶ 140.)

"[A] plaintiff must file a charge of discrimination with the EEOC and exhaust her administrative remedies before filing a Title VII lawsuit." *Plunkett v. Potter*, 751 F. Supp. 2d 807,

810 (D. Md. 2010). The failure to exhaust administrative remedies "deprives the federal courts of subject matter jurisdiction over the claim," *id.*, and requires dismissal of the claim. *See, e.g., Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir. 1999) ("It is axiomatic that a claimant under Title VII must exhaust his administrative remedies by raising his claim before the EEOC. . . . [Because] Sloop failed to exhaust her administrative remedies before the EEOC, [we] dismiss her Title VII retaliation claim.").

Further, "the Fourth Circuit has held that Title VII creates a cause of action against employers, not individual supervisors. Individuals are thus immune from suit unless they themselves qualify as an 'employer' under the statute." *Woodbury v. Victory Van Lines*, 286 F. Supp. 3d 685, 693 (D. Md. 2017) (citations omitted). The term "employer" is defined by Title VII as "a person engaged in an industry affecting commerce who has fifteen or more employees . . ." 42 U.S.C. § 2000e(b). No Individual Defendant meets that requirement. Thus, the Individual Defendants should be dismissed for this separate, additional reason.

### d.      Count II – "Title VI"

"[T]o allege a claim of intentional discrimination under Title VI, a plaintiff must plead sufficient facts supporting that (1) the defendant is a recipient of federal financial assistance; and (2) the defendant ***intentionally*** discriminated against plaintiff on the basis of race, color, or national origin." *Prince v. Wiedefeld*, 2024 WL 3234003, at *7 (D. Md. June 28, 2024) (internal citations omitted) (emphasis added). "In order to survive a motion to dismiss under Title VI, a plaintiff must allege some ***facts*** to support that the defendant's alleged misconduct was ***motivated by race***." *Id.* (emphasis added). Plaintiff alleges no such facts (other than her own speculation and surmise) to support her allegation that WashU's investigation was motivated by her race rather than the "pattern of disruptive and harassing behavior targeted at law school community members,

including faculty and students," as stated in the letter informing Plaintiff of her suspension.  (Am. Compl., Ex. D.)

Further, "Title VI permits a cause of action only as to entities, not individuals." *Awah v. Mansfield Kaseman Health Clinic*, 2021 WL 6197415, at *5 (D. Md. Dec. 30, 2021).  Each individual defendant should be dismissed from this claim for this separate, additional reason.

### e.       Count III – "Section 1981"

This Section of the United States Code states that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981(a).  To state a claim under Section 1981, a plaintiff must establish "purposeful, racially discriminatory actions that affect at least one of the contractual aspects listed in § 1981(b)." *Abraham v. Trident Vantage Sys., LLC*, 2024 WL 4607967, at *6 (D. Md. Oct. 28, 2024).  Thus, Plaintiff must allege that Defendants intentionally discriminated against her on the basis of her race and that such discrimination affected a contractual relationship (*e.g.*, an employment relationship).[4]  *Id.*   There are no allegations in the Complaint that would support such a finding.  While Plaintiff alleges she was employed by the school as a research assistant for Defendant Davis (Am. Compl. ¶ 77), she does not allege that this purported employment relationship was affected by any alleged discriminatory conduct, let alone that Defendants intentionally discriminated against her.  As such, her Section 1981 claim fails.  *See, e.g.*, *Smith v. Epiq Glob. Bus. Transformation Sols., LLC*, 2024 WL 3682223, at *3 (W.D.N.C. Aug. 6, 2024) ("Plaintiff does not plead any *facts* suggesting her

---

[4] A "student-school relationship" does not suffice under Section 1981. *Savoy v. Charles Cnty. Pub. Sch.*, 2010 WL 481345, at *3 (D. Md. Feb. 5, 2010).

treatment or subsequent termination was driven by race, aside from the conclusory allegation 'Defendant's discrimination against Plaintiff and termination of her employment was motivated by her race (Black).' . . . As Plaintiff's Section 1981 claim does not plausibly allege but-for causation between Plaintiff's race and Defendant's decision to terminate her, Plaintiff fails to state a claim upon which relief can be granted[.]") (emphasis added); *Luy v. Baltimore Police Dep't*, 326 F. Supp. 2d 682, 689 (D. Md. 2004), aff'd, 120 F. App'x 465 (4th Cir. 2005) ("Luy's conclusory allegations of race discrimination, devoid of any reference to actual events during his employment, are not sufficient to state a claim under . . . § 1981 for race discrimination.").

### f.      Count IV – "Fraud and Unjust Enrichment"

Plaintiff appears to base this claim on the following allegations: (1) the education she received while she was suspended was inadequate (because certain lectures were not recorded or the recording was lost or otherwise unavailable); (2) Defendants "edit[ed] and doctor[ed] their emails about the [Student Conduct Board] investigation;" and (3) Defendants "conspire[ed] with the Lento Law Firm to retain [Stacy] Forchetti" to represent Plaintiff at the Student Conduct Board hearing.[5]  (Am. Compl. ¶¶ 152–53.)

Under Missouri law, the educational malpractice doctrine bars claims that "raise[] questions concerning the reasonableness of the educator's conduct in providing educational services" or that "require[] an analysis of the quality of education received." *Soueidan v. St. Louis Univ.*, 926 F.3d 1029, 1034 (8th Cir. 2019) (quoting *Dallas Airmotive, Inc. v. FlightSafety Int'l, Inc.*, 277 S.W.3d 696, 700 (Mo. Ct. App. 2008)).  Count IV is based solely on Defendants' conduct in the provision of educational services to Plaintiff, and is thus barred by the educational

---

[5] Plaintiff was, apparently, not pleased with Ms. Forchetti's legal representation during the hearing.  (*See* Am. Compl. ¶¶ 97, 112, 116–119, 153.)

19

malpractice doctrine. *Id.*; *see also Lucero v. Curators of Univ. of Mo.*, 400 S.W.3d 1, 8 (Mo. Ct. App. 2013) ("Generally, courts have refrained from recognizing educational malpractice claims, either in tort or contract, on the premise that universities must be allowed the flexibility to manage themselves and correct their own mistakes.") (internal quotations and alternations omitted); *Dallas Airmotive, Inc.*, 277 S.W.3d at 700 ("[C]ourts have refused to become the overseers of both the day-to-day operation of [the] educational process as well as the formulation of its governing policies.") (internal quotations and alternations omitted).

Plaintiff's fraud and unjust enrichment claim also fails because her vague and conclusory allegations simply do not meet any of the required elements of either claim. *See Dean v. Noble*, 477 S.W.3d 197, 204 (Mo. Ct. App. 2015) ("The nine essential elements of fraud are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury."); *Graves v. Berkowitz*, 15 S.W.3d 59, 61 (Mo. Ct. App. 2000) ("The essential elements of a *quasi contract* action of unjust enrichment are: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance and retention of the benefit under such circumstances that it would be inequitable for defendant to retain the benefit without paying the value thereof."). Plaintiff does not allege she relied on any false representation made by any Defendant or that she conferred a benefit upon any Defendant, the acceptance and retention of which would be inequitable under the circumstances. Count IV should thus be dismissed for this additional reason.

g.      Count V – "Intentional Infliction of Emotional Distress"

Under Missouri law, the alleged conduct in an intentional infliction of emotional distress (IIED) claim "must have been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Gillis v. Principia Corp.*, 111 F. Supp. 3d 978, 987 (E.D. Mo. 2015) (citing *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. banc 1997)).  "In Missouri, it is a rare occurrence when 'a defendant's conduct [is] sufficiently extreme and outrageous to warrant recovery." *Gillis v. Principia Corp.*, 832 F.3d 865, 875 (8th Cir. 2016) (citation omitted).

Plaintiff's allegations, which, at most, characterize a temporary suspension from campus while the Student Conduct Board was investigating complaints about her conduct, the subsequent revocation of her scholarship, and an attempt to collect unpaid tuition, do not meet the very high bar to state a claim for IIED under Missouri law.  *See, e.g.*, *Gillis*, 111 F. Supp. 3d at 981, 987 (college professor's openly hostile behavior, including repeatedly yelling at plaintiff "in an angry tone with harsh language; threaten[ing] her grade in his class when she asked questions about the nature of exam questions or exam formats; refus[ing] to assist her with methods to better learn the course material; openly mock[ing] her as a 'slow learner' when she confessed how hard and long she studied for an exam for which she received a poor grade; consistently talk[ing] over her; . . . excluding her name when listing or calling on students; slamming doors when leaving Plaintiff after yelling and becoming upset with her; telling Plaintiff she should withdraw from his class after Plaintiff asked for applied examples of theory referenced in his lectures; becoming agitated when Plaintiff asked for clarification about what was said that offended the instructor; and showing highly favorable behavior when speaking with other students immediately before or after speaking to Plaintiff" fell "well short of a level of extremity that could be said to exceed all possible bounds of decency and be regarded as atrocious and utterly intolerable"); *see also Gibson v. Hummel*, 688

21

S.W.2d 4, 7–8 (Mo. Ct. App. 1985) (collecting cases in which the facts pleaded did not meet the very high standard for an IIED claim).

Additionally, under Missouri law, an IIED claim requires the plaintiff to plead "'emotional distress or mental injury' which 'must be *medically diagnosable* and must be of sufficient severity so as to be *medically significant*.'" *Childs v. Williams*, 825 S.W.2d 4, 10 (Mo. Ct. App. 1992) (emphasis added) (quoting *Bass v. Nooney Co.*, 646 S.W.2d 765, 772–73 (Mo. banc 1982)). Here, Plaintiff does not allege she suffered a medically diagnosable or medically significant injury, and therefore fails to state an IIED claim. *See, e.g.*, *Saling v. Pelton,* 2023 WL 1765203, at *9 (E.D. Mo. Feb. 3, 2023) ("Plaintiff has not alleged that he experienced medically diagnosable emotional distress as a result of defendants' actions. As such, plaintiff's claims for intentional infliction of emotional distress are subject to dismissal.") (applying Missouri law).

Further, Plaintiff's IIED claim "raises questions concerning the reasonableness of [Defendants'] conduct in providing educational services," meaning it is barred by the educational malpractice doctrine, as described above. *Soueidan*, 926 F.3d at 1034.

### h.    Count VI – "Negligence"

Plaintiff's negligence claim is based on Defendants' alleged breach of their duty to "protect Plaintiff from sexual predators and racial discrimination." (First Am. Compl. ¶ 165.) To state a claim for negligence under Missouri law, the plaintiff must allege "(1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; and (3) the defendant's breach was the proximate cause of the plaintiff's injury." *Dilley v. Valentine*, 401 S.W.3d 544, 548 (Mo. Ct. App. 2013). Thus, in order to state a claim for negligence, "a plaintiff must first establish that the defendant owed the plaintiff a duty of care . . ." *M.B. v. Live Nation Worldwide, Inc.*, 661 S.W.3d 342, 349 (Mo. Ct. App. 2022).

22

While it is less than clear which Defendant Plaintiff claims owed her a duty to protect her "from sexual predators and racial discrimination" (let alone how that alleged duty was breached), Plaintiff's claim is fundamentally flawed for two reasons: (1) Plaintiff's claim that Defendants failed to protect her from racial discrimination is duplicative of her Title VI, Title VII, and/or Section 1981 claims, which are barred for the reasons described above; and (2) Plaintiff's claim that Defendants failed to protect her from "sexual predators" fails because "[a] duty to protect against the criminal acts of third parties is generally not recognized because such activities are rarely foreseeable." *Id.* at 350 (citation omitted). The Missouri Supreme Court recognizes two, limited exceptions to the rule against imposing liability based on criminal acts of third parties: the "special-relationship exception" and the "special-circumstance exception." *Id.* The first exception "involves a special relationship between the parties, where one party is entrusted to the protection of another and relies on that party for safety." *Id.* (citation omitted). That exception does not apply to any of the relationships between Plaintiff and Defendants here. *See Freeman v. Busch*, 349 F.3d 582, 587 (8th Cir. 2003) ("[S]ince the late 1970s, the general rule is that no special relationship exists between a college and its own students because a college is not an insurer of the safety of its students.") (collecting cases). The second exception applies when the defendant "knows or has reason to know the third person is harming or about to harm an invitee on the business's premises." *Id.* at 351. Plaintiff does not, and cannot, allege that exception applies here either. Because Plaintiff cannot allege the existence of a duty owed or identify how that alleged duty was breached, her negligence claim fails as a matter of law.

### i.    Count VII – "Breach of Contract"

Plaintiff's breach of contract claim is based on WashU allegedly "suspending Plaintiff erroneously for 6 months, requiring Plaintiff to hire a lawyer, spending $15,000 to ensure that Plaintiff's rights would not be violated during the SCB Hearing, and then revoking her

23

scholarship." (Am. Compl. ¶ 167.)  The essential elements of a breach of contract action include: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff.  *Moore v. Armed Forces Bank, N.A.*, 534 S.W.3d 323, 327 (Mo. Ct. App. 2017). There are five essential elements to contract formation:  (1) competency of the parties to contract; (2) subject matter;  (3) legal consideration;  (4) mutual assent;  and  (5) mutuality of obligation. *Olathe Millwork Co. v. Dulin*, 189 S.W.3d 199, 203 (Mo. Ct. App. 2006).

Plaintiff fails to allege the existence of any contract that would prevent WashU from suspending her or from "requiring" her to hire and pay for a lawyer.  Further, to the extent Plaintiff claims WashU's alleged revocation of her scholarship constituted a breach of contract, documents merely informing a student of their selection for a scholarship do not create an enforceable contract absent mutual consideration and clear, complete terms governing the parties' obligations.  *See Muckle v. UNCF*, 930 F. Supp. 2d 1355, 1359 (N.D. Ga. 2012).  As in *Muckle*, Plaintiff attempts to assert a breach of contract claim on "various documents informing [her] of [her] selection to receive a . . . scholarship."  *Id.*  But Plaintiff has not alleged the existence of an enforceable contract.  *See Weinstein v. KLT Telecom, Inc.*, 225 S.W.3d 413, 415-16 (Mo. 2007) (noting one of the "general principles of contract law that consideration must be measured at the time the parties enter into their contract").  Nor has she identified any terms in the scholarship award letter that would restrict WashU's ability to suspend students or revoke scholarships.  Indeed, the only term Plaintiff identifies—the requirement to maintain full-time status—appears to be a condition Plaintiff needed to meet rather than a limitation on WashU's authority to take disciplinary action or modify scholarship awards.  Without allegations establishing the existence of contractual

provisions that would prohibit the conduct she challenges, Plaintiff's breach of contract claim necessarily fails.

### j.    Count VIII – "Defamation"

Plaintiff claims that "Defendant" (without specifying which defendant) "has engaged in a pattern of spreading false and defamatory statements concerning Plaintiff."  (Am. Compl. ¶ 171.) Plaintiff does not, however, specifically identify these allegedly defamatory statements.  "To satisfy federal pleading standards, a plaintiff must specifically allege each defamatory statement." *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 757 (D. Md. 2015); *English Boiler & Tube, Inc. v. W.C. Rouse & Son, Inc.*, 172 F.3d 862, 1999 WL 89125, at *3 (4th Cir. 1999) (unpublished table decisions) ("In a defamation claim, "[a] plaintiff may not baldly allege a broad course of conduct over a lengthy period of time and later sue on any act that occurred during that time period."). Plaintiff's allegations are deficient.  She never pleads the content of the alleged defamatory statements.  Without allegations regarding the statements themselves, Defendants cannot engage with the claim on its merits—for example, by moving to dismiss because the alleged statements are unactionable opinion or simply true.  Without a "specific description of the content of the alleged statements," Plaintiff's "allegations cannot plausibly support an actionable defamation claim."  *Brown v. Ferguson Enters., Inc.*, 2012 WL 6185310, at *3 (D. Md. Dec. 11, 2012); *Missouri Church of Scientology v. Adams*, 543 S.W.2d 776, 777 (Mo. 1976) (holding that plaintiff must plead the specific words claimed to be defamatory).

### k.    Count IX – "18 U.S.C. 241 – Conspiracy Against Rights"

Plaintiff purports to bring a claim under the federal criminal statute prohibiting conspiracies against rights.  *See* 18 U.S.C. § 241.  This statute, however, is "criminal in nature" and does not "provide a private right of action."  *Alexander v. Hendrix*, 2015 WL 3464145, at *3

25

(D. Md. May 29, 2015); *McKenzie-El v. IRS*, 2020 WL 902546, at *14-15 (D. Md. Feb. 24, 2020) (same). Therefore, this claim must be dismissed.

### l.    Count X – "Abuse of Process"

"The essence of a claim for abuse of process is the use of process for some collateral purpose. A plaintiff who brings an abuse of process claim must establish (1) an illegal, improper, perverted use of process, (2) done for an improper purpose, (3) resulting in damage." *Impey v. Clithero*, 553 S.W.3d 344, 349 (Mo. Ct. App. 2018) (citations and internal quotation marks omitted). Such a claim requires the "use of a *legal* claim to accomplish some end not envisioned by the *legal* process used." *Trs. of Clayton Terrace Subdivision v. 6 Clayton Terrace, LLC*, 585 S.W.3d 269, 278 (Mo. 2019) (emphasis supplied). Plaintiff does not allege misuse of any legal process. Instead, her claim involves the use of WashU's private disciplinary procedures. Specifically, Plaintiff alleges that "Defendant Law School and her agents had a duty to ensure that Defendant Walsh would not pursue malicious abuse of process against Plaintiff. Defendant Law School breached this duty when they allowed Defendant Walsh to utilize their bureaucratic instrumentalities to get Plaintiff expelled from law school." (Am. Compl. ¶ 177.) These procedures cannot plausibly be interpreted as referring to the criminal or civil process issued by a court. *See* 1 Am. Jur. 2d *Abuse of Process* § 2, Westlaw (database updated October 2024) ("In order to maintain an action for abuse of process, there must have been an issuance of legal or judicial process."). Plaintiff's allegations of abuse of process based on the initiation of an investigation under the Student Conduct Code does not meet this requirement.

### m.    Count XI – "Amendment XIV of the US Constitution"

Plaintiff alleges that as "private actors that receive federal funding, Defendant Law School and their agents are subject to the 14th Amendment." (Am. Compl. ¶ 179.) She claims that by "committing . . . acts of discrimination and retaliation against Plaintiff based on her race, sex and

complaints of racial and sex discrimination, Plaintiff has been deprived of her rights under Amendment XIV." (*Id.*)

This claim fails for several reasons. First, the "Fourteenth Amendment does not contain an independent cause of action but is instead enforceable by private plaintiffs under 42 U.S.C. § 1983." *Doe #1 v. Bd. of Ed. of Somerset Cnty.*, 2023 WL 375189, at \*9 (D. Md. Jan. 24, 2023). Plaintiff has not attempted to plead a claim under § 1983. Second, even if she had, "Section 1983 creates a cause of action against any person who, acting under color of state law, deprives another of their constitutional rights." *Id.* (emphases and internal quotation marks omitted). Plaintiff has not, and cannot, allege that any defendant acted under color of state law. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982) (holding that private school did not engage in state action despite receipt of public funds and high degree of state regulation); *Slovinec v. DePaul Univ.*, 332 F.3d 1068, 1069 (7th Cir. 2003) (per curiam) ("DePaul is a private university, so Slovinec cannot use 42 U.S.C. § 1983."). Third, and relatedly, the Fourteenth Amendment provides no shield against private conduct, no matter how "discriminatory or wrongful." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 453 (1974); *see also Nat'l Coll. Athl. Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988) ("As a general matter the protections of the Fourteenth Amendment do not extend to private conduct abridging individual rights."). Accordingly, Fourteenth Amendment claims cannot be brought against private universities and individuals like Defendants here. *See, e.g.*, *McClean v. Duke Univ.*, 376 F. Supp. 3d 585 (M.D.N.C. 2019); *George v. Averett Univ. of Danville*, 2019 WL 3310517, at \*2 (W.D. Va. July 23, 2019); *Parlante v. Liberty Univ.*, 2022 WL 1498113, at \*3 (W.D. Va. May 11, 2022).

## CONCLUSION

The Court does not have personal jurisdiction over WashU or any of the twelve Individual Defendants.   And despite its substantial length and Plaintiff's exhaustive efforts, the Amended Complaint fails to state a claim for relief against any Defendant.   The Court should dismiss the Amended Complaint for lack of personal jurisdiction or, in the alternative, failure to state a claim.

Respectfully submitted,

**LEWIS RICE LLC**

Dated: February 5, 2025        By:    /s/ Winthrop B. Reed III

Winthrop B. Reed III, *pro hac vice* (Mo. Bar #42840)
Lindsey M. Bruno, *pro hac vice* (Mo. Bar #73055)
600 Washington Avenue, Suite 2500
St. Louis, Missouri 63101
Telephone:  (314) 444-7617
Facsimile:  (314) 612-7617
wreed@lewisrice.com
lbruno@lewisrice.com

**SAUL EWING LLP**

By:    /s/ Anamika Roy Moore

Anamika Roy Moore, Bar #21689
1001 Fleet Street, 9th Floor
Baltimore, MD 21202
Telephone: (410) 332-8634
anamika.moore@saul.com

*Attorneys for Defendants*