March 3, 2025

<u>*Via CM/ECF*</u>

The Honorable Theodore D. Chuang

U.S. District Court for the District of Maryland

6500 Cherrywood Lane, Suite 245

Greenbelt, MD 20770

RE:   *Brown v. Washington University in St. Louis School of Law, et al.*

<u>CASE NO.: TDC-24-3198; NOTICE OF INTENT TO FILE A MOTION FOR RULE 11 SANCTIONS FOR DEFENDANT'S FILING OF THEIR MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION</u>

Dear Judge Chuang,

Pursuant to Section II.A.1 of the Case Management Order (ECF No. 4), I submit the following Notice of Intent to File a Motion on behalf of myself, Plaintiff Allison Brown. I respectfully request the Court's permission to file a motion for sanctions against Defendants under Federal Rule of Civil Procedure 11(b) pursuant to Case Management Order II. A. 1. I respectfully request permission to file a motion for sanctions under Rule 11(b) regarding the assertions and omissions contained in ECF Document 33-1, ECF Document 35, and ECF Document 35-1.

## Summary

Defendants have filed ECF 33-1, ECF 35, and ECF 35-1 in furtherance of their fraud, racially discriminatory, and defamatory campaign of harassment against Plaintiff. Defendants' "Memorandum in Support of Their Motion To Dismiss For Lack of Personal Jurisdiction" (ECF 33-1) under FRCP 12(b)(2) and 12(b)(6) makes several baseless, defamatory and false claims in bad faith in violation of Rule 11(b). This renewed notice to file a motion for Rule 11 sanctions discusses Defendants' claims in ECF Document 33-1, ECF 35, and ECF 35-1 regarding their arguments under FRCP 12(b)(2) and 12(b)(6). In short, Defendants have lied about their extensive contacts with Maryland that are available from: 1) the extensive interactions between Defendants and Plaintiff, a Maryland Resident, from 2021 to present and 2) a cursory level google search of Wash U in St. Louis's contacts with Maryland.

## Rule 11 – Generally

Rule 11(b) of the Federal Rules of Civil Procedure (FRCP) requires that attorneys certify that their claims, defenses, and other legal contentions are supported by law or a nonfrivolous argument for changing the law. Attorneys must also certify that their factual contentions are supported by evidence or are likely to be supported after further investigation. Wash U and their council have repeatedly violated this rule throughout their Motion filed on February 5th, 2025.

Rule 11 provides that when an attorney presents a written motion or other filing to the Court, the attorney certifies that to the best of the [attorney's] knowledge, information, and

belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and] (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Fed. R. Civ. P. 11(b). If an attorney violates Rule 11(b), "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).

Rule 11 requires a pre-filing factual investigation. A complaint containing factual allegations unsupported by any information obtained prior to filing violates this requirement. Fed.R.Civ.P. 11(b)(3). Rule 11 primarily serves "to 'deter future litigation abuse.'" Hunter v. Earthgrains Co. Bakery, 281 F.3d 144, 151 (4th Cir. 2002) (quoting In re Kunstler, 914 F.2d 505, 522 (4th Cir. 1990)); see also In re Sargent, 136 F.3d 349, 352 (4th Cir. 1998) (same).

The Court has the discretion to impose sanctions for Rule 11 violations. "[S]anctions may be awarded only in the face of misconduct of some sort." Fidrych v. Marriott Int'l, Inc., 952 F.3d 124, 146 (4th Cir. 2020). "Rule 11 motions should not be made or threatened for minor, inconsequential violations" [*26] of the rule. Fed. R. Civ. P. 11 advisory committee notes (1993). Indeed, "[t]he Court expects that motions for sanctions will not be filed as a matter of course" and "will consider in appropriate cases imposing sanctions upon parties who file unjustified sanctions motions." Loc. R. 105.8(a). Further, "when imposing sanctions under Rule 11, a court must limit the penalty to 'what is sufficient to deter repetition of such conduct,' and 'shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.'" Hunter, 281 F.3d at 151 (quoting Fed. R. Civ. P. 11(c)). Allegations cannot be "based on information which minimal factual inquiry would disprove." Chaudhry, 174 F.3d at 410-11 (quoting In re Kunstler, 914 F.2d 505, 516 (4th Cir. 1990)).

In other words, an attorney violates Rule 11 if "applying a standard of objective reasonableness, it can be said that a reasonable attorney in like circumstances could not have believed his actions to be legally justified." Morris v. Wachovia Securities, Inc., 448 F.3d 268.

Plaintiff seeks Rule 11 sanctions against Defendants in filing their Memorandum in Support of Their Motion to Dismiss for Lack of Personal Jurisdiction, or, in the Alternative, Failure to State a Claim. ("Defendant's Motion") Defendant's Motion and accompanying filings are full of omissions, erroneous statements of law and fact, should not have been filed, and should be withdrawn.

### 1. **Defendant Erroneously States that The Court Does Not Have General Personal Jurisdiction Over Any Defendant Because No Defendant is a Citizen of Maryland**

Defendant erroneously states that "the Court does not have general personal jurisdiction over any Defendant because no Defendant is a citizen of Maryland. . . . Accordingly, the Court may not exercise personal jurisdiction over any defendant." (Defendant's ECF Document 33- page 5.) This is demonstrably false.

Fed. R. Civ. P. 4(k)(1) permits a federal district court to exercise personal jurisdiction over a defendant in accordance with the law of the state in which the district court is

2

located. *Carefirst of Maryland v. Carefirst Pregnancy*, 334 F.3d 390, 396 (4th Cir. 2003). Therefore, "to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Id*.; *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). Thus, this court can exercise personal jurisdiction over non-resident defendants. Plaintiff has requested this court to do so.

### 2. Defendant Hides the Legal Entity to be Sued and Failed to Disclose Contacts

Rule 11 requires that attorneys "conduct a reasonable inquiry and . . . determine that any papers filed with the court are well grounded in fact, legally tenable, and 'not interposed for any improper purpose.'" *Chaudhry v. Gallerizzo*, 174 F.3d 394, 410 (4th Cir. 1999) (quoting *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990)); see also *Morris v. Wachovia Sec., Inc.,* 448 F.3d 268, 277 (4th Cir. 2006) (noting that allegations must be supported by the information counsel obtained before filing suit). Further, Rule 11 requires a pre-filing factual investigation. A complaint containing factual allegations unsupported by any information obtained prior to filing violates this requirement. Fed.R.Civ.P. 11(b)(3).

Defendant states, in a footnote that "The Washington University School of Law is not an independent legal entity." (ECF 33, Page 1, Footnote 1) Yet, instead of clarifying the proper legal entity, it names the Washington University School of Law ("WashU") as a Defendant, instead of **clarifying that Washington University School of Law is one of nine schools comprising Washington University in St. Louis ("WASHU").** WASHU has extensive contracts, contacts and owns and operates programs and dual-degree programs throughout the state of Maryland. These extensive contacts were omitted from Defendant's Motion to Dismiss, ECF 33-1, ECF 35, and ECF 35-1.

Lastly, Defendant did not clarify the legal entity to be sued and hid from the Court that WASHU has extensive contacts with the state of Maryland and therefore, should be subject to personal jurisdiction in Maryland. This is fraud. Defendant should be subject to Rule 11 sanctions for not being forthcoming with the Court regarding the proper legal entity that should be held accountable for Plaintiff's injuries, both past and ongoing.

### 3. Defendants Lied About the Extensive Contacts of WASHU and Maryland; Defendant's Filing of a List of "Affiliated Entities" Is A Feeble Attempt to Obfuscate WASHU's Extensive Contacts with the State of Maryland

A couple of hours on the internet and a few cursory google searches will reveal that Defendants have extensive Maryland contacts. WASHU School of Medicine has actively sought to expand its contacts with the National Institute of Health ("NIH") which is headquarted in Bethesda, Maryland, and has received at least $374 million every year since 2016, with substantial increases every year, receiving $583.6 million from the NIH in 2023, and $683 million in 2024. The McKelvey School of Engineering ("MSE") received an up to $20 million contract from the Advanced Research Projects Agency for Health ("ARPA-H") in Bethesda, Maryland. WASHU also has dual degree programs with four Maryland colleges: St. Mary's College, McDaniel College, Washington College of Maryland, and Notre Dame of Maryland University. WASHU Arts and Sciences has extensive contacts with Goddard Space Flight Center

3

in Greenbelt, Maryland as it manages the data for an instrument on the Artemis Moon Mission, and has at least one Goddard, Maryland-based scientist (Eric Christian) on the WASHU faculty and at least one Goddard, Maryland-based scientist (Regina Caputo) as a guest speaker at WASHU. A Forbes article states that WASHU received a total of $633,343,121 from NIH, a governmental agency with its headquarters in Bethesda, Maryland in 2023. Thus, WASHU's 8 other schools received almost $50 million in 2023. Therefore, while Plaintiff attended WASHU, WASHU received over a billion dollars from Maryland entities and used Maryland property extensively. Yet, Defendants didn't disclose this to the court. These are flagrant omissions, especially against a pro se plaintiff, and constitute sanctionable behavior.

      Further, Defendants acknowledge that if they were to state that there is no general jurisdiction under Maryland Long Arm Statute Section 6-103(2), it would constitute fraud. Instead, Defendants chose to not address Maryland Long Arm Statute Section 6-103(2). Defendant allege that "Sections 6-104(3) does not apply because Defendant did not commit any relevant acts or omissions in Maryland" and "Section 6-103(4) is likewise inapplicable because Defendants do not regularly conduct business in Maryland, maintain any persistent course of conduct there, or derive substantial revenue from Services in Maryland." Defendants fail to acknowledge that their actions are considered as actions not by just the Defendants themselves, but as actions taken by WASHU. These omissions in Defendant's Motion to Dismiss (ECF 33-1) are sanctionable. (Page 10 of ECF 33-1 of Defendants' Motion to Dismiss.)

      These contacts are enough to establish general jurisdiction over WASHU. And, these contacts are public information. Yet, Defendant's Motion did not disclose any of these contacts in their Exhibit A filing in ECF Document 35-1. In fact, Defendants on page 7 of ECF 33-1 state "The quality and nature of Defendants' contacts with Maryland do not establish purposeful availment." WASHU lied about the nature and extent of their contacts on this form, as WASHU received nearly a billion dollars from Maryland entities while Plaintiff attended WASHU. This must give rise to purposeful availment.

      Lastly, **not one** Maryland contact that is discoverable via Google or other means of public disclosure on Defendant' Motion was included on the list produced by Defendants in ECF Document 35-1, filed 02/07/2025. Instead, Defendant's Motion focuses on Washington University in St. Louis School of Law and some of its employees, which is not even an independent legal entity when it states that "Defendants have not transacted relevant business or performed any relevant work or service in Maryland within the meaning of 6-103(1)" (Defendant's MTD, page 17.)

      Defendants' arguments are an attempt to hide the ball from the court. Personal jurisdiction does not arise solely from what the Plaintiff alleges. Personal jurisdiction arises from any contacts that the Defendant has with the forum state. Therefore, trying to hide the contacts that the Defendants have had with the state of Maryland should be sanctionable.

### 4. <u>Defendant Does not Acknowledge WASHU's Extensive Efforts In Securing Over a Billion Dollars of Maryland funding while Plaintiff Attended WASHU</u>

      On WASHU's website, it states that "When [Perlmutter] became Dean of the School of Medicine in 2016, Perlmutter launched a strategic initiative to expand the schools research infrastructure and programs, with a goal in increasing NIH funding to the second highest level in the country. That target was reached last year [2023] when the School of Medicine researchers received awards totaling $583.6 million from the NIH. That represents a growth in total funding

of more than $200 million since 2016, the largest increase among top five medical schools" in the washu.edu website article "WashU rises to No. 2 in nation in NIH research funding."  Another article states that there are more than 1000 projects conducted at WASHU that are funded by NIH.  (Exhibit 3 - washu.edu website article "WashU Medicine reaches all0ime high in NIH funding.")  Yet Defendant's Motion does not mention any active pursuit of Maryland funding by WASHU. These actions alone show that WASHU is subject to general personal jurisdiction under Section 6-103(2) of Maryland's Long Arm Statute. Yet this is not mentioned anywhere in Defendant's Motion. This should be sanctionable.

### 5. Defendant's Failure to Acknowledge the Defendants' Specific Contacts With Maryland

Opposing counsel, Winthrop Reed, in the pretrial hearing acknowledged that Plaintiff was in Maryland (and thus, that Defendants systematically contacted Plaintiff through numerous emails, video calls, and zoom meetings) during the pre-trial hearing with the Judge in January due to Plaintiff's suspension given by Defendants, that Plaintiff was a resident of Maryland while a student at Georgetown while enrolled at WASHU, and that Defendants have regularly and continuously sent matriculation and billing documents to Plaintiff's addresses in Maryland. Defendants engaged in NUMEROUS activities, including the following activities with Maryland residents, Plaintiff Allison Brown and her mother Patricia Brown, yet do not acknowledge any of these interactions in their motion to dismiss. Further, Plaintiff was in Maryland while Defendants directed their activity towards the forum state of Maryland (including but not limited to) the following instances:

1. The actions of Defendant Davis, who is recorded on tape, having an emotional bowel movement in response to Plaintiff's innocuous classroom comment that "The classroom is the safest place for us to discuss linguistic racism." Defendant Davis's performance made Defendants (Wild, Walsh, Kamimura-Jimenez and Gore) suspend Plaintiff from campus indefinitely, and required Plaintiff relocate to Maryland (there was nothing "unilateral" about Plaintiff relocating to her home state of Maryland after being told she was going to be arrested if she stepped on campus, and no assurances were given that it wouldn't happen again after Plaintiff demanded such assurances; any reasonable law student would have left Missouri. This is contained in the Complaint as a direct rebuttal to assertions on Page 10 of ECF 33-1 of Defendants' Motion to Dismiss.);
2. The actions of Defendant Wild in a recorded conversation (available to the court at their request) lying to Plaintiff about the nature of the allegations against her and telling her that she is a threat to Wash U and not welcome on campus causing Plaintiff to relocate to Maryland;
3. Defendant Walsh threatened Plaintiff with arrest and/or sanctions by the University by interacting with professors via email or students off campus (contained in Complaint);
4. The actions of Defendant Hudson refusing to have the hearing on campus in St. Louis, Missouri because "zoom is more convenient" (in an attached exhibit);
5. The multiple times that Plaintiff was threatened by Defendants (Walsh, Wild, Gore, and Wendler-Modde) with arrest if she were to step on campus at WASHU;
6. WASHU acceptance of Allison Brown application for admission to her Maryland address
7. WASHU interview of Plaintiff (Dr. Joy Johnson of Wash U) occurred in Maryland on March 12, 2021 at 11:00AM EST;

5

8. WASHU offer of admission to Allison Brown, Maryland address on top of letter on March 22, 2021;
9. WASHU offer of Scholarship to Allison Brown, Maryland address on top of letter on June 15, 2021;
10. WASHU acceptance of Allison Brown via $500 Deposit made from Maryland on April 12, 2021;
11. WASHU acceptance of Allison Brown via $500 Deposit made from Maryland on May 25, 2021;
12. WASHU from "Washington University School of Law Office of Admissions" sending a physical care-congratulations package to Plaintiff's Maryland address on March 24, 2021 at 5:14PM EST (email in exhibits);
13. WASHU conversation in December 2021 between Cynthia Copeland of Wash U Title IX Office and Patricia Brown, Plaintiff's mother and Maryland Resident regarding Title IX investigation against Allison Brown on behalf of Richard O;
14. The multiple times that Defendant Walsh, Defendant Wild, and Defendant Hudson interfered with Plaintiff's education and participation in classes while in Maryland, and contributing to the erroneous 6-month long suspension of Plaintiff in Maryland;
15. Defendants interfered with Plaintiff's clerkships to be performed in Maryland (Plaintiff was offered but was not allowed to accept, as a condition of Defendant's suspension, per emails from Defendant Gore and Defendant Walsh on November 21, 2022 at 2:13PM) Maryland-based clerkships at the National Center for Youth Law and The Permanent Forum for People of African Descent at the United Nations;
16. WASHU conversation between Defendant Walsh and Patricia Brown, Plaintiff's mother, a Maryland resident, emphasizing the timely need to send "Letter of Good Standing" to Columbia and Georgetown in Summer 2021 for Plaintiff's application for transfer;
17. 1st email from Patricia Brown, Maryland resident and Plaintiff's mother, regarding Defendant Davis' fraud in getting Plaintiff suspended to Defendants Walsh and Wild;
18. 2nd email from Patricia Brown, Maryland resident and Plaintiff's mother, regarding regarding literature discussing use of the word "coon" to Elizabeth Walsh and Rob Wild;
19. 3rd email from Patricia Brown, Maryland resident and Plaintiff's mother, forwarding Plaintiff's classmate statements in support of Plaintiff's claim that Plaintiff had been subjected to racial discrimination;
20. Telephone conversation between Patricia Brown, Maryland resident and Plaintiff's mother, with Defendant Walsh confirming Defendant Walsh's receipt of the three emails;
21. Email from Patricia Brown, Maryland resident and Plaintiff's mother, regarding to Defendants Wendler Modde, Defendant Gore and Defendant Hudson regarding Defendant Davis' fraud and request that evidence relating to same be admissible in Student Conduct Board Hearing; all recordings of hearing are available at court's request from Defendant;
22. 1st Hearing with Plaintiff in Maryland (4-6 hours);
23. 2nd Hearing with Plaintiff in Maryland (4-6 hours);
24. 3rd Hearing with Plaintiff in Maryland (4-6 hours total);
25. 4th Hearing with Plaintiff in Maryland (2 hours total);
26. Email from Plaintiff to Defendant Hudson regarding request for admission of Defendant Davis classroom tapes while Plaintiff is in Maryland; Defendant's Hudson denial is addressed to Plaintiff while Plaintiff is in Maryland;

6

27. Email from Plaintiff to Defendant Walsh regarding need for production of classroom tapes while Plaintiff is in Maryland;
28. Defendant Walsh interfering with Plaintiff's education by "losing" tapes and lying to her about their existence while Plaintiff is in Maryland;
29. Defendant Walsh furnishing Plaintiff with "class notes" while Plaintiff is in Maryland that contain factually and legally incorrect information, according to the professor;
30. Email from Defendant Walsh stating Plaintiff cannot participate in discussions with any members of her class while Plaintiff is in Maryland;
31. Emails from Defendant Walsh stating Plaintiff cannot do a spring internship in D.C. (with the Center for Youth Law AND the Permanent Forum for People of African Descent at the United Nations) because of her standing as a "threat" to the WASHU community while Plaintiff is in Maryland;
32. Email from Plaintiff, in Maryland sending Spoilage Letter regarding Student Conduct Board evidence and any classroom materials since Plaintiff's matriculation at WASHU
33. Emails to all Defendant's regarding student conduct board hearing;
34. Emails from Plaintiff regarding the Department of Education's investigation into WASHU sent from Maryland to WASHU;
35. Email from Patricia Brown, Maryland resident, to Defendant Wendler Modde regarding need for WASHU to honor Plaintiff's scholarship;
36. Email from Lisa Wood, General Counsel of WASHU, to Patricia Brown, Maryland resident, requesting that any inquiries regarding Plaintiff should be directed to her;
37. Emails from Plaintiff to all defendants regarding discrimination, harassment, and failure of WASHU to honor Plaintiff's scholarship;
38. Displaying Plaintiff, a Maryland resident, on their website as late as March 3, 2025
https://cre2.wustl.edu/people/allison-brown/



Screenshot taken on March 3, 2025
This screenshot itself is defamatory. Defendant Davis got Plaintiff suspended, and tried to her expelled for complaining of racial discrimination. This website is communicating lies to third parties.

39. And Emails from WASHU to Maryland Bar Association containing defamatory acts and omissions of Defendants regarding Plaintiff's character and fitness to practice law.

All of these instances were mentioned in the Complaint, and can be produced by Plaintiff if Plaintiff is allowed to supplement this filing with exhibits. However, because this is a notice to file a motion and not a motion itself, Plaintiff requests for the Court to tell her if the above (and similar, but not necessarily enumerated) emails are allowed to be attached to this notice.

**Regarding WASHU's General Contacts Found on Web:**
40. Exhibit 32 - https://medicine.washu.edu/news/washu-medicine-rises-to-no-2-in-nation-in-nih- research-funding/ ;
41. Exhibit 33 - https://www.forbes.com/sites/michaeltnietzel/2024/02/10/top-20-universities-for-nih-funding-johns-hopkins-ranks-first-again/ ;
42. Exhibit 34 - https://medicine.washu.edu/news/washu-medicine-reaches-all-time-high-in-nih-funding/ ;
43. Exhibit 35 - https://www.studlife.com/news/2025/02/12/its-actual-people-and-their-jobs-how-the-nih-funding-cuts-would-affect-washu ;
44. Exhibit 36 - https://www.mcdaniel.edu/academics/special-academicopportunities/graduate-school-partnerships/engineering-partnerships ;
45. Exhibit 37 - https://catalog.smcm.edu/preview_program.php?catoid=4&amp;poid=241 ;
46. Exhibit 38 - https://hemi.jhu.edu/home/about-hemi/partners/ ;
47. Exhibit 39 - https://source.washu.edu/2024/04/washu-to-manage-data-for-instrument-on-artemis-moon-mission/ ;
48. Exhibit 40 - https://sites.wustl.edu/tigeriss/about/ ;
49. Exhibit 41 - https://happenings.wustl.edu/event/space-sciencesastrophysics-seminar-with-regina-caputo ;
50. Exhibit 42 - https://physics.wustl.edu/people/eric-r-christian ;
51. Exhibit 43 – https://engineering.washu.edu/news/2024/WashU-awarded-20-million-to-develop- high-tech-imaging-technology.html ;
52. Exhibit 44 - https://engineering.washu.edu/academics/dual-degree-program/affiliated-schools.html#tab3 ;
53. Exhibit 45 - https://source.washu.edu/2016/02/dietary-link-to-stunted-growth-identified/ ;
54. Exhibit 46 - https://www.brightfocus.org/news/washington-university-and-johns-hopkins- university-researchers-win-helen-keller-prize/ ;
55. Exhibit 47 - https://canopybiosciences.com/news/canopy-biosciences-licenses-novel-gene-editing-technology-washington-university-johns-hopkins-university/

All of the above articles were accessed as of March 3, 2025. Additionally, Plaintiff requests for the court to inform her if she is permitted to attach these articles to this notice of intent to file a motion for sanctions.

## Conclusion

Defendants' omissions and lying regarding their contacts with the state of Maryland are sanction-worthy behavior and egregious in the face of filing a list of contacts (per Document 35-1) but failing to include all of the contacts that amount to more than $1 billion in continuous contacts, grants, and funding from Maryland owned-and-operated, and headquarted entities including but not limited to Johns Hopkins, NIH, McDaniel College, and St. Mary's College of

Maryland. These omissions are in Defendants' documents numbered ECF 33-1, ECF 35, and ECF 35-1.

Further, Defendant's allegations in their Motion to Dismiss are not based upon Plaintiff's failure to plead facts with particularity. Plaintiff wrote 132 pages and then reduced the filing down to 40 pages to comply with the court's rules, detailing the discrimination and harm that has occurred to Plaintiff at the hands of Defendants. It is so egregious, and hurtful that the Defendants would just surmise "well the complaint was long, and we don't get it." The complaint speaks for itself. Yet, because Defendants are engaged in an ongoing conspiracy to commit racial discrimination in violation of the 14th Amendment, Title VII, Title VI, and Title IX, and a myriad of other laws, they maintain that Plaintiff's complaint should be dismissed, and that she is not entitled to relief.

*At the root of this* is the fact that Defendants think that Black students shouldn't have the same rights that white students have. Defendants should close their eyes and imagine Plaintiff as a white man making the same claims. It's that simple. If Defendants really didn't understand Plaintiff's assertions, they could've submitted a motion for a more definite statement. But instead, they've resorted to making up lies about how Defendants haven't availed themselves to the state of Maryland, and how Plaintiff doesn't have a claim.

Plaintiff respectfully requests the permission of the court to file a motion for sanctions.

Respectfully submitted,

Allison Brown, Plaintiff | Signed March 3, 2025