

CONFIDENTIAL

UNIVERSITY STUDENT CONDUCT BOARD

WASHINGTON UNIVERSITY IN ST. LOUIS

April 27, 2023

In the matter of Allison Brown
Case No. 00748-2002

### DECISION OF THE UNIVERSITY STUDENT CONDUCT BOARD

In this matter, a complaint was submitted to the Office of Student Conduct and Community Standards ("OSCCS") by the School of Law ("Complainant") against law student, Allison Brown ("Respondent"), alleging violations of Offense Nos. 2 and 4 of the University Student Conduct Code ("Code"). The Panel deliberated following the conclusion of Phase One and carefully weighed the evidence. Although the Panel has concerns about the Respondent's behavior and the abrasive choices she makes when interacting with others and online, ultimately the Panel determined there was not sufficient evidence to establish that it was more likely than not that the Respondent engaged in a violation of Offense Nos. 2 or 4 of the Code.

*Complaint Allegations*

The Complainant School of Law alleged that the Respondent engaged in a pattern of disruptive and harassing behavior inside and outside of the classroom, which began prior to the Respondent's matriculation, continued during the Spring 2022 semester, and persisted into the Fall 2022 semester, even after faculty and administrators communicated their concerns to the Respondent about her behavior. Specifically, the Complainant alleged it received multiple reports from students and faculty that:

1.      Students do not feel comfortable participating in classes they share with the Respondent because the Respondent allegedly posted derogatory and inflammatory remarks about the classmates and their class related comments on social media;

2.      The Respondent allegedly engaged in a pattern of attacking students on social media who do not share the Respondent's views or with whom Respondent disagrees;

3.      The Respondent allegedly engaged in similarly disruptive behavior in class and on course instruction platforms; and

4.      One student reported that they did not feel comfortable meeting in person with Dean Walsh because they had heard the Respondent knew who came to Dean Walsh's office.

The Complainant alleged that as a result of the Respondent's behavior, students were unable to fully participate in the law school classroom and in extracurricular activities, and law school community members were impeded in their ability to engage in educational, administrative, professional and other functions. The Complainant alleged that the Respondent's actions and resulting impact constitute a violation of Offense numbers 2 and 4 under the University Student Conduct Code.

The Respondent denied the allegations.

*Procedural Background*

A hearing before the Student Conduct Board ("SCB" or "Panel") was originally scheduled for December 15, 2022 to determine whether a violation of the Code occurred. At the Respondent's request, it was rescheduled.

Phase One of the hearing took place over four different days, (February 24, March 20, April 5, April 11). During Phase One, the Panel heard evidence and considered whether it was more likely than not that the Respondent engaged in one or more violations of the Code. Under the Code, the Respondent is presumed innocent of the alleged violations.

*Relevant Provisions of the University Student Conduct Code Offenses*

| University Student Conduct Code/2. Interfering with the rights – Interfering with the rights of other members of the University community or visitors to the University to engage in educational, recreational, residential, administrative, professional, business, and ceremonial activities or other functions.<br><br>University Student Conduct Code/4. Harassment, Stalking, Hazing, etc. – Threatening physical abuse, stalking, hazing, engaging in domestic, dating, or interpersonal violence, or any other conduct which harasses, threatens, or endangers the safety or health of any member of the University community or visitor to the University. |
|---|

*Phase One Summary*

Over the course of the first phase of the hearing, the Complainant presented evidence, including screenshots and direct testimony from witnesses, to illustrate its contention that the Respondent was consistently disruptive inside and outside of the classroom. The Complainant called several witnesses, including several students, a staff person and a faculty member who also serves as one of the vice deans of the Law School.

The Complainant's four student witnesses recalled in testimony how the Respondent's behavior discouraged themselves and/or others from fully participating in class or student group activities due to fears of uncomfortable confrontations with the Respondent. Furthermore, student witnesses noted that they and other classmates felt

that they could not fully participate in class because they were afraid of online retaliation from the Respondent.

The Complainant provided numerous screenshots from the Respondent's social media posts that had been shared with the Law School administration. The social media posts included several editorializations by the Respondent disparaging Law School faculty, students, and visitors.

Several of the documents the Complainant included in its evidentiary packet include emails to faculty and Law School administration both from named and anonymous law students expressing concerns regarding the Respondent's impact on student engagement and learning in the classroom, most notably her Criminal Law class.

The Complainant also included an extensive Canvas discussion between students in the Criminal Law class, including the Respondent, discussing the use of force against Black Lives Matter protestors and whether deadly force should be allowed against protestors who damage private property. At certain points, the discussion devolved into name-calling and character attacks, which ultimately led to the professor intervening and threatening to remove the ability for the class to interact on Canvas. The Respondent referred to one student's position as racist, but that student did not testify at the SCB hearing.

The Complainant also presented documentary evidence as well as witness testimony from one student, which indicated that there were conflicts with the Respondent within student chat forums (e.g. group text chains) and with the Black Law Student Association ("BLSA"). One student witness testified regarding a few conflicts that arose between the Respondent and a few members of BLSA, including disputes around in-person meetings, an overnight retreat, and the decision-making authority of leadership of the organization. Again, in group texts and on her social media posts, several of the Respondent's comments are abrasive, offensive, and derogatory. For example, the Respondent refers to two other students (not the witness) as "coon" in a group chat. One student witness told the Panel that she felt she was being harassed by the Respondent.

The Complainant also offered the testimony of Angela Smith, Assistant Dean of Diversity, Equity, and Inclusion and Peggie Smith, Professor and Vice Dean for Academic Affairs. Both witnesses described how they had become aware of the Respondent's behavior inside and outside of the classroom. They noted that they proactively reached out to the Respondent out of concern after hearing that the Respondent's behavior was concerning to peers and faculty in the Law School.

In the case of Vice Dean Smith, she met with the Respondent and encouraged her to be more careful in her interactions in the classroom, as her behavior could have a chilling effect on classroom dialogue, shutting down discussions and limiting opportunities for students to learn. She also told the Panel that she advised the Respondent that if one's

3

goal is to try to change hearts and minds and to convince people to open their eyes to racial harm from their words and actions, irrespective of intent, it would be useful for the Respondent to consider the value of using a less blunt tactic other than calling people racists or coons. Dean Smith shared that she gave the Respondent advice and a warning that if the Respondent were in her class, under no circumstance would she permit a student to call another student a racist and the Respondent would be out of her class.

Dean Elizabeth Walsh, who presented the case on behalf of the Complainant, also testified regarding the concerns she received from faculty and students as well as her own interactions with the Respondent. She told the Panel that she and the Criminal Law professor met with the Respondent to share how she was making students feel in the classroom and that her behavior was "chilling" speech. Dean Walsh acknowledged that the conversation did not go well and that the Respondent subsequently sent her an email with links about tone policing and the negative connotation of the word "professionalism" when used with black women. Dean Walsh told the Respondent she appreciated the resources and that, although it was not her intent, she apologized if she made the Respondent feel as if she was "tone policing" her. Dean Walsh said she was trying to help the Respondent understand how the Respondent was making her classmates feel.

The Respondent then began her case presentation. The Respondent first called one student witness to share their experience in the Race and the Law class with the Respondent. The student told the Panel that the Respondent did not derail their class or rob other students of their education. To the contrary, this student praised the Respondent for helping this particular class explore issues of race more deeply. In their written statement to the Panel, the student witness shared that the Respondent did not berate or shame other students who did not have the same lived experiences. The student shared that the Respondent inspired them to "refocus the lens through which [they] view society and [their] place in it."

The Respondent then went through each of her exhibits with the Panel. The Respondent's exhibits included statements of support from other students and faculty who had her in class. She also provided email exchanges with Professor Adrienne Davis and documents showing a grant she received to conduct research for the Center for the Study of Race, Ethnicity and Equity. She included emails between Law School administrators about the Respondent as well as multiple screenshots of her social media posts and exchanges with her classmates and with Law School administrators. The Respondent also provided articles about the use of the word "coon" and how its use has changed over time, particularly by members of the Black community such that some individuals believe that the word is not offensive or a slur.

The Respondent told the Panel that it was not her intention to disrupt classes or make other students feel that they could not fully participate in class. The Respondent noted that she is passionate about race and the law and often felt compelled to speak out in

certain classes because the instructors or classmates were not adequately contextualizing course content regarding race/ racism.

The Respondent said that she believes her fellow classmates and peers as well as the Law School faculty and administrators were "tone policing" her and that some of the students who complained about her are uncomfortable with current racial realities in America. She told the Panel that she only posted on social media to clear her name or when she felt her safety was in danger, although this assertion was questioned by the Complainant. The Respondent also asserted that some of the social media posts were intended as jokes.

The Respondent stated that after she was made aware of how her conduct was affecting the classroom environment, she changed her behavior. She claimed that she refrained from sharing course content on social media and became quieter in classes. The Respondent also noted that she resigned from her leadership position in the Black Law Students Association.

One Panel member asked how the Respondent reacted after being told people were uncomfortable with her language and in particular her use of the word coon.The Respondent answered that she understood the regional differences and discontinued using it. She also left a group chat of black first year law students, and she withdrew from that community.

The Respondent also pointed the Panel to read the letters of recommendation and written statements from law school faculty and students that attested to her positive contributions to classes. There were not any complaints of her behavior in these letters. The Respondent shared that she was offered an opportunity to work closely with Professor Adrienne Davis to conduct a project on critical race theory in the law school curriculum. There was also email evidence presented in which Professor Davis seemed to have a good relationship with the Respondent. One faculty letter from Professor Hollander-Blumoff noted that she had the Respondent in three of her classes. In her letter, Professor Hollander-Blumoff relayed that the Respondent asked thoughtful questions and brought a valuable lens to the course material. Professor Hollander-Blumoff stated that the Respondent was not disruptive to her teaching and that she had no information to suggest that other students felt threatened or uncomfortable as a result of the Respondent's class participation.

Following closing statements, Phase One of the hearing concluded. The Panel was given the instructions below (some of which had already been given during the hearing itself) and deliberated.

5

***Instructions to the Panel***

    A. <u>Instruction about Blank Exhibits</u>

Before we begin with opening statements, I also wanted to mention for the Panel that you may have noticed a few exhibits that were intentionally left blank in Respondent's packet. I apologize for that, the Office of Student Conduct had some numbering issues. For efficiency purposes given the number of exhibits, I instructed Dean Gore to leave those exhibit numbers blank instead of trying to re-number all of the exhibits. The Panel should not draw any conclusions or inferences one way or the other based upon the fact that there are blank exhibit pages.

    B. <u>Instructions about Title IX evidence and [Student X]</u>

1.    The first instruction is to clarify references that have been made to two Title IX complaints filed involving Ms. Brown and another student, [Student X]. The Respondent, Ms. Brown, and [Student X] were the subject of Title IX cross-complaints against each other. In the complaint [Student X] filed against Ms. Brown, the Title IX office investigated and issued a finding of "no responsibility" on the part of Ms. Brown. In the complaint filed by Ms. Brown' against [Student X], the complaint was dismissed by the Title IX office and therefore no violation was found because the alleged behaviors and actions of [Student X] reported by Ms. Brown did not meet the definition of "sexual harassment" under Title IX, nor did the reported behaviors constitute a violation of the Student Conduct Code. These findings by the Title IX office do not constitute evidence for purposes of this Student Conduct Board proceeding, and this information is simply provided to offer the Panel additional context only. It is not to be relied on for purposes of making a decision in this case.
2.    The Complainant has represented to the Chair that it is not relying on any communications or interactions between Ms. Brown and [Student X] as evidence in this matter to prove a violation of the Code. Accordingly, the SCB Panel is to disregard the reference in Complainant's Exhibit 22 where Respondent refers to [Student X] as a "little bitch." In addition, the SCB Panel is instructed to disregard and not consider all testimony referencing this particular comment.
3.    The SCB Panel is to disregard and not consider the statements by [Student Witness 1] related to an individual who showed a "sex contract" to Ms. Brown and that Ms. Brown destroyed that person's reputation or the posting of pictures that may have labeled an individual a "rapist."

    C. <u>Instruction about November 2nd class</u>

In addition, the Complainant has also represented that it is not relying on interactions from Professor Davis's class as evidence in support of the law school's case against the Respondent, Ms. Brown. Accordingly, the SCB Panel Is instructed to disregard and not consider the statements made by [Student Witness 1] suggesting Respondent made a professor cry.

6

D. <u>Instruction on Prior Violation</u>

The Panel has heard testimony and reviewed evidence regarding a prior student conduct violation by the Respondent related to violation of the Law School's recording privacy policy. The Panel is instructed that the evidence related to the law school recording policy and the Respondent's violation of that policy has already been adjudicated and is not a determination to be made by this Panel. The Panel is also instructed that it should not consider the mere fact that a prior violation exists as evidence that the Respondent is in violation of the allegations today. The evidence of the prior violation is only being offered by the Complainant for consideration of the Respondent's alleged pattern of behavior and impact on the community.

***Deliberations and Conclusions***

The Panel focused on the specific allegations set forth in the Complaint described at the outset of this decision and whether, "as a result of the Respondent's behavior, students were unable to fully participate in the classroom and in extracurricular activities and law school community members were impeded in their ability to engage in educational, administrative, professional and other functions."

The Panel recognizes that the Respondent posted inflammatory and disparaging remarks about classmates, faculty, law school administration, and visitors to the law school on social media and/or in group chat messages. The evidence clearly demonstrates that the Respondent would initiate and engage in argument and debate. At times, she openly insulted and criticized those who disagreed with her views, both in and outside of the classroom. The evidence is also clear that some students felt uncomfortable participating in class with the Respondent. Further, addressing these issues with the students and the Respondent took the time of Law School administration and faculty.

The question is whether, based on the preponderance of the evidence, the Respondent's actions rose to the level of harassment (Offense No. 4) or interfered with the rights of others to engage in educational, administrative, or other university activities (Offense No. 2).

Although the Panel agreed that the evidence demonstrated that the Respondent was disruptive at times and abrasive on occasion, they did not believe that there was sufficient evidence to establish that it was more likely than not the Respondent's conduct rose to the level of violating Student Conduct Code Offense Nos. 2 or 4.

It is important to note that the Student Conduct Code is not meant to limit free and open exchange of ideas and perspectives, as set forth below in the very first section of the Code's General Principles:

7

A. Purpose: The University Student Conduct Code sets forth community standards and expectations for Washington University students. These community standards and expectations are intended to foster an environment conducive to learning and inquiry. Freedom of thought and expression is essential to the University's academic mission. Respect for different points of view is essential. Nothing in this Code should be construed to limit the free and open exchange of ideas and viewpoints, ==even if that exchange proves to be offensive, distasteful, disturbing or denigrating to some.==

**<u>Offense No. 4</u>**

The Panel quickly determined that there was insufficient evidence to establish that it was more likely than not the Respondent's actions constituted harassment or threatening behavior in violation of Offense No. 4.

The Respondent asked each of the witnesses called by the Complainant whether they felt threatened or harassed by the Respondent's behavior. Almost all of the witnesses responded that they did not feel threated or harassed by the Respondent.

The Panel did note that one student witness reported that they felt that the Respondent had harassed them. The Panel believed that this witness genuinely felt personal distress from her interactions with the Respondent. However, the Panel did not believe the Respondent's behaviors described by the witness in posting on the group chat and in challenging different decisions made by the witness and student group leadership rose to the level of harassment or threatening behavior under Offense No. 4.

**<u>Offense No. 2</u>**

The majority of the Panel's discussion during its deliberation focused on Offense No. 2 and whether the evidence was sufficient to establish that it was more likely than not that Respondent's actions and their impact on members of the law school community constituted interference with others' rights to engage in educational, recreational, administrative and other university activities in violation of the Code.

As described in the summary of the evidence above, several of the student witnesses indicated that the Respondent was disruptive at times and that they and other students felt uncomfortable engaging in class discussions. There was also email evidence from one professor and testimony from Law School administration expressing concern about the Respondent's behavior in and out of class and the potential chilling effect on other students in the classroom.

However, the Panel was not convinced that the Respondent was the sole cause of the students' discomfort and hesitation to participate in class.

Based upon the documentation submitted by the Complainant and the testimony of the Complainant's witnesses, most of the concerns around the Respondent's behavior centered around one class, Criminal Law and, to a lesser extent, Race and the Law. These are two classes where there were sensitive "hot button" topics discussed and challenging exchanges of ideas and viewpoints among the class, some of which may not have been well received. For example, as seen by the Criminal Law Canvas chat in evidence, the Respondent and her classmates engaged in a heated discussion about the looting of a Target store in the aftermath of George Floyd's murder.

Panelists noted that some of the Respondent's substantive points raised in class discussions and online around race/racism and privilege were legitimate. Panelists further noted that it is not surprising that some students would feel uncomfortable during those conversations; however, a student's discomfort or hesitation to participate in class may have been a result of the topics themselves.

The Complainant did not call upon any professors who had the Respondent in class to discuss the Respondent's behavior in and out of the classroom and its impact on their teaching or the students in their class. The Panel was interested in how the professors in those classes handled difficult classroom conversations with the Respondent and her classmates, including how they introduced controversial topics, laid conversation ground rules, or made attempts to heal the classroom after heated discussions.

The Panel did not find there to be sufficient evidence of the Respondent intentionally or systematically disrupting classroom instruction. The Respondent provided a detailed statement from another Law School professor who taught the Respondent in three different courses, and the professor's reviews of the Respondent's contributions in class were very positive, as noted above. Furthermore, there was some documentation that indicated the Respondent modified her behavior in classes after some faculty and administrators talked to her about the impact she was having on students in the classroom.

Regarding the evidence of the Respondent's posts on social media and group texts provided by the Complainant, the Panel was not convinced there was sufficient evidence to demonstrate that the Respondent's social media or text chain posts interfered with the rights of other students to fully participate in their educational or recreational activities. Several witnesses indicated that they had seen or heard about the Respondent's social media accounts, including calling out certain professors, visitors, and students. The Panel does not condone the Respondent's usage of social media or her posts on the group texts. Nor did the Panel find the Respondent's testimony suggesting that she only posted to proactively correct narratives or when she felt unsafe or threatened to be credible. However, the Panel did not believe that there was sufficient evidence to establish that it was more likely than not that these social media posts and group text exchanges interfered with the rights of other students, faculty or staff to engage in their educational, recreational, administrative, or other university functions.

***Appeal***

The Code does not permit the University to appeal. Accordingly, this decision is final.

Signed:

Darrell Hudson, PhD
University Student Conduct Board Chair

Case 8:24-cv-03198-TDC   Document 43   Filed 03/20/25   Page 11 of 12

Signature Page

Allison Brown, Plaintiff