**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| ALLISON BROWN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WASHINGTON UNIVERSITY )<br>SCHOOL OF LAW, et al., )<br>)<br>Defendants. ) | Civil Action No. 8:24-cv-03198-TDC |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION
TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE
ALTERNATIVE, FAILURE TO STATE A CLAIM**

## **TABLE OF CONTENTS**

**INTRODUCTION** ............................................................................................................. 2

**I.    THIS COURT LACKS PERSONAL JURISDICTION OVER ANY DEFENDANT.** ............................................................................................................. 2

    **A.    General Personal Jurisdiction** .......................................................................... 2

    **B.    Specific Personal Jurisdiction** .......................................................................... 3

        **1.    Prong 1: Purposeful Availment** ............................................................ 4

        **2.    Prong 2: Arise out of Activities Directed at the State** ........................ 4

        **3.    Prong 3: Constitutionally Reasonable** ................................................ 5

    **C.    Maryland Long Arm Statute** ............................................................................ 5

    **D.    Request for Jurisdictional Discovery** ............................................................... 8

**II.   PLAINTIFF FAILS TO STATE A CLAIM AGAINST ANY DEFENDANT.** ............................................................................................................. 9

    **A.    Abandoned Claims** ............................................................................................ 9

    **B.    Defended Claims** ............................................................................................... 9

        **1.    Title VII (Count I)** ............................................................................... 10

        **2.    Title VI (Count II)** .............................................................................. 10

        **3.    Intentional Infliction of Emotional Distress (Count V)** ................... 10

        **4.    Breach of Contract (Count VII)** ........................................................ 11

        **5.    Conspiracy Against Rights (Count IX)** ............................................. 11

        **6.    Violation of the Fourteenth Amendment (Count XI)** ...................... 12

    **C.    Potential Claims** .............................................................................................. 13

        **1.    Title IX** ................................................................................................. 13

        **2.    Civil Rights Restoration Act of 1987** ................................................ 14

**CONCLUSION** ............................................................................................................... 14

**INTRODUCTION**

Plaintiff's opposition to Defendants' motion to dismiss fails to establish that this Court has personal jurisdiction over any Defendant. Instead of demonstrating meaningful contacts between Defendants and Maryland that would satisfy the state's long-arm statute and the requirements of due process, Plaintiff offers only unsupported legal conclusions, speculation about a nonexistent "conspiracy," and irrelevant assertions about Washington University's unrelated business activities. The law is clear that a plaintiff cannot unilaterally create personal jurisdiction by choosing to relocate to a forum when the alleged events occurred elsewhere. Even if this Court were to find jurisdiction proper, Plaintiff's opposition also fails to address the pleading deficiencies identified by Defendants in their motion under Rule 12(b)(6). In fact, Plaintiff concedes through silence that at least five of her claims should be dismissed. Despite her request to amend her complaint yet again, Plaintiff has not identified any new allegations that could cure these fatal defects. Accordingly, the Court should grant Defendants' motion and dismiss the Amended Complaint in its entirety.

**I.   THIS COURT LACKS PERSONAL JURISDICTION OVER ANY DEFENDANT.**

    **A.   General Personal Jurisdiction**

The Court cannot exercise general personal jurisdiction over Defendants. Citing nearly thirty-year-old, outdated circuit precedent, Plaintiff asserts that Defendants are "at home" in Maryland due to WashU's relationship with the National Institutes of Health and Johns Hopkins University. (Pl.'s Memo. Opp'n Mot. Dismiss at 21, ECF No. 39 (citing *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997).) She claims that this relationship is so "continuous and systematic" as to justify exercise of general personal jurisdiction over all

Defendants. (*Id.*) Plaintiff's assertion regarding general jurisdiction ignores controlling Supreme Court precedent.

In *Daimler AG v. Bauman*, the Court explicitly rejected the formulation that general jurisdiction may be exercised "in every State in which a corporation engages in a substantial, continuous, and systematic course of business." 571 U.S. 117, 138 (2014). The Court held this approach to be "unacceptably grasping" and inconsistent with due process requirements. *Id.* at 138-39. Rather, the Court established that general jurisdiction is appropriate only when an entity's affiliations with a state are "so continuous and systematic as to render it essentially at home in the forum State." *Id.* at 139 (internal quotation marks omitted). Putting aside that Plaintiff has failed to present competent evidence on this issue, academic and business relationships with Maryland institutions fall far short of this standard. Under *Daimler*, the paradigmatic bases for general jurisdiction are a corporation's place of incorporation and principal place of business. *See id.*; *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 132 (4th Cir. 2020). As explained in Defendants' opening memorandum, under controlling Supreme Court precedent, Defendants variously are citizens of Missouri, Michigan, and Florida. (Defs.' Memo. Supp. Mot. Dismiss at 1-2, ECF No. 31.) This Court lacks general personal jurisdiction over any Defendant.

### B.   Specific Personal Jurisdiction

As previously discussed, the Fourth Circuit has formulated a three-part test for determining whether specific jurisdiction over a defendant exists. The three prongs are: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Jones v. Mutual of Omaha Ins. Co.*, 639 F. Supp. 3d 537, 549 (D. Md. 2022) (quoting *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009)).

3

        **1.**       **Prong 1: Purposeful Availment**

Plaintiff contends that her "forcible relocation to the state of Maryland upon threat of arrest by Defendants" satisfies this prong. (Pl.'s Memo. Opp'n Mot. Dismiss at 22.) She claims that "Defendants purposefully availed themselves to the state of Maryland by suspending Plaintiff and forcing her to relocate to Maryland for her safety." (*Id.*) These contentions lack support in the record. No allegations or evidence exist supporting the conclusion that Plaintiff was forced to relocate to Maryland by anyone, let alone any of the Defendants. Plaintiff instead alleges that she was suspended from WashU and barred from entering campus. (Am. Compl. ¶¶ 90-91, ECF No. 6; Am. Compl. Ex. D at 2, ECF No. 6-5.) Plaintiff's conclusions do not follow from the alleged facts. Her allegations do not support an inference or finding that Defendants forced Plaintiff to relocate to Maryland or purposefully availed themselves of the forum state.

Plaintiff also states that this prong should be weighed in her favor for the reasons that Plaintiff articulates in the portion of her brief concerning the Maryland Long Arm Statute. Defendants address those arguments below. In any event, Plaintiff does not address the eight purposeful-availment factors set out by the Fourth Circuit and cited in Defendants' opening memorandum. *See UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020). For the reasons stated in Defendants' opening memorandum, the purposeful-availment inquiry as set out by the Fourth Circuit favors Defendants. (Defs.' Memo. Supp. Mot. Dismiss at 7-10.)

        **2.**       **Prong 2: Arise out of Activities Directed at the State**

Plaintiff argues that her claims "arise out of Defendants' acts and omissions that occurred in Maryland." (Pl.'s Memo. Opp'n Mot. Dismiss at 23.) She asserts that the student conduct hearing, the alleged revocation of her scholarship, and unspecified "actions" that caused a "Bar organization . . . to be doubtful of Plaintiff's character and fitness" all "occurred in Maryland." (*Id.*; Am. Compl. ¶ 168.) To the extent that these allegations are intelligible, the Amended

4

Complaint does not allege that these events took place in Maryland, nor could the Amended Complaint plausibly do so. *See Lefebvre v. Washington Univ.*, No. 20 C 4928, 2021 WL 197388, at *2 (N.D. Ill. Jan. 20, 2021) ("In summary, the product 'sold' by Washington to Plaintiff was an education, the educational teaching occurred in Missouri regardless of whether Plaintiff heard it in Missouri or in Illinois, and the University's decision not to award him a degree for his efforts occurred in Missouri.").

### 3. Prong 3: Constitutionally Reasonable

Plaintiff states that it is constitutionally reasonable to require Defendants to litigate in Maryland because "the evidence . . . is already in existence" and "Plaintiff does not anticipate the need for any depositions." (Pl.'s Memo. Opp'n Mot. Dismiss at 23.) Regardless of Plaintiff's waiver of whatever right she might at some point have to take depositions, it is undisputed that none of the relevant witnesses (other than Plaintiff) is in Maryland, and most are in Missouri. (Defs.' Memo. Supp. Mot. Dismiss at 1-2.) In the event that this case proceeds to trial, Defendants would be required to travel across the country to litigate claims arising entirely from conduct occurring in Missouri. Such a burden would be unreasonable under the circumstances. *See Christian Sci. Bd. of Dirs. of First Church of Christ, Sci. v. Nolan*, 259 F.3d 209, 217 (4th Cir. 2001).

### C. Maryland Long Arm Statute

Plaintiff opens her arguments concerning the Maryland long-statute with the following passage: "'As to causing tortious injury in the state, personal jurisdiction may be asserted over a defendant based solely on electronic contacts with the forum state.' *See Lewis v. Willough at Naples*, 311 F. Supp. 3d 731 (D. Md. 2018)." (Pl.'s Memo. Opp'n Mot. Dismiss at 12.) Yet this quote does not appear in the cited case. In fact, this case did not interpret Maryland's long-arm statute at all. Instead, the case describes how courts in the Fourth Circuit apply the *Zippo* sliding

scale test to determine whether personal jurisdiction may be exercised over an out-of-state defendant based on electronic contacts. *See Lewis*, 311 F. Supp. 3d at 737.

Putting aside the non-existent quotation, Plaintiff contends that Maryland's long-arm statute is satisfied because Plaintiff was purportedly in Maryland when she received communications from Defendants, when she participated remotely in a Student Conduct Board hearing, and when her scholarship was allegedly revoked. (Pl.'s Memo. Opp'n Mot. Dismiss at 13.) Plaintiff also mentions that Defendants have "furnished lies" about her which has affected her due to her alleged presence in Maryland. (*Id.*) The Court should disregard the last assertion, given that Plaintiff has abandoned her defamation claim. The remainder of the allegations are precisely the "unilateral activity" that cannot form the basis for the exercise of personal jurisdiction. *Cf. Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[T]he unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.").

As relevant here, Maryland's long-arm statute authorizes jurisdiction over a party which, directly or by an agent, "(1) [t]ransacts any business or performs any character of work or service in the State; [or] . . . (3) [c]auses tortious injury in the State by an act or omission in the State; (4) [c]auses tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, services, or manufactured products used or consumed in the State." Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1), (3)-(4). Defendants briefly address why no subsection of Maryland's long-arm statute supports the exercise of personal jurisdiction.

First, subsection 1 does not support the exercise of personal jurisdiction over Defendants. This subsection "is limited to actions in contract." *Zinz v. Evans & Mitchell Indus.*, 324 A.2d 140, 144 (Md. Ct. Spec. App. 1974); *see* Md. Code Ann., Cts. & Jud. Proc. § 6-103(a). Plaintiff's insufficient contract allegations make clear that no Defendant transacted business or performed work in Maryland. The fact that Plaintiff unilaterally chose to attend classes remotely from Maryland or that WashU sent bills to her Maryland address, does not constitute transacting business in the state.

Second, subsection 3 does not support the exercise of personal jurisdiction because Defendants did not commit any relevant acts or omissions in Maryland; rather, all alleged discriminatory conduct and disciplinary proceedings occurred in Missouri. *See Zinz*, 324 A.2d at 144 (holding that "both elements" of subsection (3) must be present to support the exercise of personal jurisdiction and endorsing the reasoning that, in the case of an allegedly defamatory phone call from Wisconsin to Washington, D.C., the long-arm statute would not be satisfied despite the injury being felt in Washington, D.C., because the tortious act took place in Wisconsin).

Third, subsection 4 does not apply because Defendants do not regularly solicit or do business in Maryland, engage in any other persistent course of conduct in Maryland, or derive substantial revenue from goods, services, or manufactured products used or consumed in Maryland. WashU's alleged general recruitment of Maryland citizens and other alleged routine dealings with entities in Maryland does not establish the type of regular, persistent conduct contemplated by the statute, particularly where Plaintiff's claims bear no relationship to such alleged recruitment. *See* Md. Code Ann., Cts. & Jud. Proc. § 6-103(a).

Plaintiff also attempts to invoke subsections 2 and 5 to support jurisdiction. These provisions concern contracts to provide goods and services and interests in real estate. However,

Defendants may only be sued "on a cause of action arising from any act enumerated in this section." Md. Code Ann., Cts. & Jud. Proc. § 6-103(a). Plaintiff's claims do not arise from the acts enumerated in subsections (2) and (5), so they are not relevant to the personal-jurisdiction analysis.

### D. Request for Jurisdictional Discovery

At the end of her opposition, Plaintiff requests "discovery to establish jurisdiction." (Pl.'s Memo. Opp'n Mot. Dismiss at 25.) She claims that she has "proffered enough facts to show that additional information will produce the evidence needed to establish jurisdiction." (*Id.*) However, jurisdictional discovery is unwarranted here. Discovery "would not aid resolution of the personal jurisdiction issue." *ALS Scan, Inc. v. Digit. Serv. Consultants, Inc.*, 293 F.3d 707, 716 n.3 (4th Cir. 2002). Plaintiff fails to "proffer any further facts that [she] could demonstrate that would be material to the limited jurisdictional ruling." *Id.* In the present posture, jurisdictional discovery would be appropriate only when there existed some specific indication that the requested information would alter the court's jurisdictional analysis. *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Cntrs., Inc.*, 334 F.3d 390, 402-03 (4th Cir. 2003). Plaintiff has not identified what specific information she seeks or how it might establish jurisdiction.

As previously discussed, when a court decides a Rule 12(b)(2) motion without an evidentiary hearing, the plaintiff must make a *prima facie* showing that a defendant is properly subject to the court's jurisdiction. *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993); *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). In evaluating the plaintiff's showing, a court must accept the plaintiff's allegations as true, and it must draw all reasonable inferences and resolve any factual conflicts in the plaintiff's favor. *Mylan Labs., Inc.*, 2 F.3d at 59-60. The Court may also consider declarations and other submitted evidence in resolving a Rule 12(b)(2) motion. *See Costar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757, 763-64 (D. Md. 2009). In

this case, the jurisdictional facts are not in dispute—the Court can take the Plaintiff's allegations as true and make its determination. The standard of review for a 12(b)(2) motion already affords Plaintiff the benefit of having her allegations accepted as true and all reasonable inferences drawn in her favor. Plaintiff has not suggested that there are additional undiscovered facts that would establish jurisdiction, only that she believes the current facts are sufficient. Under these circumstances, jurisdictional discovery would serve no purpose. *See Carefirst*, 334 F.3d at 402; *Lewis*, 311 F. Supp. 3d at 738 (holding that "jurisdictional discovery is not warranted" because plaintiff "proffered only one additional fact that may be demonstrated by additional discovery").

## II.     PLAINTIFF FAILS TO STATE A CLAIM AGAINST ANY DEFENDANT.

### A.     Abandoned Claims

If the Court denies the motion to dismiss for lack of personal jurisdiction and proceeds to the merits, Plaintiff has either expressly abandoned or failed to defend—whether in the thirty pages allotted for her opposition or in her overlength notice of intent to file a motion—the following claims: Section 1981 (Count III), Fraud and Unjust Enrichment (Count IV), Negligence (Count VI), Defamation (Count VIII), Abuse of Process (Count X). (*See* Pl.'s Notice of Intent to File Mot. at 4, ECF No. 41 ("Plaintiff wishes to remove her claim for abuse of process . . . .").) So these claims should be dismissed with prejudice. *See Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) ("By her failure to respond to [these] arguments, the plaintiff abandon[s] [these] claim[s]."); *see also Harlow v. Wells Fargo & Co.*, 608 F. Supp. 3d 377, 387 (W.D. Va. 2022); *Alvarez v. Lynch*, 828 F.3d 288, 295 (4th Cir. 2016) (noting that "failure to join in the adversarial process would ordinarily result in waiver").

### B.     Defended Claims

Plaintiff appears to have mounted at least some defense of these claims: Title VII (Count I), Title VI (Count II), Intentional Infliction of Emotional Distress (Count V, but misidentified in

9

Plaintiff's opposition as Count III), Breach of Contract (Count VII, but misidentified in Plaintiff's opposition as Count VI), Conspiracy Against Rights (Count IX), and violation of the Fourteenth Amendment to the United States Constitution (Count XI).

### 1. Title VII (Count I)

Plaintiff argues that "Defendants' conspiracy, suspension of Plaintiff and the actions of Defendant Davis, Plaintiff's supervisor, easily rise to the level of actionable harassment." (Pl.'s Memo. Opp'n Mot. Dismiss at 28.) Plaintiff does not engage with Defendants' arguments for dismissal of this count and appears to acknowledge that she did not exhaust her remedies with the EEOC. For this reason and the others stated in Defendants' opening memorandum, this claim should be dismissed.

### 2. Title VI (Count II)

Plaintiff argues that "Defendants' actions and unreasonable response to Plaintiff's complaints of racial and sexual harassment fall into the category of a Title VI deliberate indifference claim." (Pl.'s Memo. Opp'n Mot. Dismiss at 29.) Beyond Plaintiff's conclusory assertions that the alleged actions taken by Defendants were "racist," Plaintiff pleads no facts that would support the inference that any alleged misconduct was "motivated by race." *See Prince v. Wiedefeld*, No. 1:23-cv-2496-JRR, 2024 WL 3234003, at *7 (D. Md. June 28, 2024). For this reason and the others stated in Defendants' opening memorandum, this claim should be dismissed.

### 3. Intentional Infliction of Emotional Distress (Count V)

Plaintiff argues that she has sufficiently pleaded the outrageous conduct element of an IIED claim, pointing to her allegations about Defendant Davis' alleged classroom conduct and her allegations regarding a conspiracy more generally. (Pl.'s Memo. Opp'n Mot. Dismiss at 29.) For the reasons stated in Defendants' opening memorandum, this conduct does not approach the degree

of outrageousness required to state an IIED claim. *See Gillis v. Principia Corp.*, 111 F. Supp. 3d 978, 987 (E.D. Mo. 2015).

### 4. Breach of Contract (Count VII)

Abandoning her original breach-of-contract theory, Plaintiff offers two arguments against dismissal of her contract claim. First, she contends that she did not receive an education from WashU because Defendant Walsh "lost over 30% of the class recordings that were promised to Plaintiff." (Pl.'s Memo. Opp'n Mot. Dismiss at 30.) She also claims that WashU breached a contract "when Defendants retaliated against Plaintiff for complaining of race and sex discrimination." (*Id.*) Plaintiff's ever-shifting contract theories fail. Regarding the first contention, Plaintiff alleged in her complaint that Defendant Walsh "misplaced or lost over 30% of the tapes of class recordings from Plaintiff's classes during her erroneous suspension." (Am. Compl. at ¶ 107.) Plaintiff has not alleged the existence of a contract with WashU that conferred upon her the right to access class recordings during the course of an academic suspension, and, in any event, such a claim would be barred by the educational malpractice doctrine. *Soueidan v. St. Louis Univ.*, 926 F.3d 1029, 1034 (8th Cir. 2019). Regarding the second contention, Plaintiff has not alleged—and cannot allege—the existence of a contract with WashU concerning discrimination. It would be illegal for WashU to discriminate on the basis of race or sex; the law does not allow a party to contract not to break the law. *See* 17 C.J.S. *Contracts* § 126, Westlaw (database updated December 2024) (explaining that consideration "means giving up something which immediately prior thereto the promisee was privileged to retain, or doing or refraining from doing something which he or she was then privileged not to do, or not to refrain from doing").

### 5. Conspiracy Against Rights (Count IX)

In her Notice of Intent, Plaintiff attempts to clarify that she did not intend to bring a claim for conspiracy against rights under 18 U.S.C. § 241; she claims that she meant to bring this claim

11

under 42 U.S.C. § 1985. (Pl.'s Notice of Intent to File Mot. at 5.) Thus, Plaintiff has abandoned her § 241 claim. Without conceding that it would be proper for the Court to consider this and other proposed amendments in the scope of deciding the present motion, Defendants briefly address Plaintiff's putative 42 U.S.C. § 1985(3) claim, the elements of which are: "(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." *Strickland v. United States*, 32 F.4th 311, 360 (4th Cir. 2022). The Fourth Circuit has "specifically rejected [§]1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." *Id.* at 361. And, under § 1985(3), "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Here, Plaintiff has failed to allege any concrete facts showing a conspiracy. This is especially true given that Plaintiff fails to abide by the federal pleading rules, which require her to explain who did what to whom. Her conclusory accusations of racial and sex-based animus against "Defendants" are insufficient.

### 6. Violation of the Fourteenth Amendment (Count XI)

Plaintiff states that she wishes to clarify that her stand-alone Fourteenth Amendment claim was meant to arise under 42 U.S.C. § 1983 and assert claims regarding the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. (Pl.'s Notice of Intent to File Mot. at 3-4.) Such claims would fail. The provisions of the Fourth, Fifth, and Fourteenth Amendments secure the rights of the people against the government. And, as stated previously, Plaintiff cannot allege that any Defendant acted under color of state law as required to state a § 1983 claim. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982). The Amendments do not apply against private

entities and individuals like Defendants here. *See Augustin v. SecTek, Inc.*, 807 F. Supp. 2d 519, 526 (E.D. Va. 2011) ("Plaintiff's claims for alleged violations of his Fourth and Fifth Amendment rights must be dismissed because the Fourth and Fifth Amendments proscribe only governmental action and do not apply to private actors."); *Skillings v. Knott*, 251 F. Supp. 3d 998, 1005 (E.D. Va. 2017) ("It is a well-enshrined principle of Fourteenth Amendment jurisprudence that its application is limited to state actors.").

### C.   Potential Claims

Plaintiff has indicated that she wishes to assert two new claims arising under Title IX and the Civil Rights Restoration Act of 1987. (Pl.'s Notice of Intent to File Mot. at 2-4.) Though the Court has not yet addressed Plaintiff's notice of intent to file a motion seeking leave to add these claims, Defendants briefly address why amendment to add these claims would be futile. *See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (affirming the denial of leave to amend complaint on futility grounds because the proposed amended complaint did not state a claim under Rule 12(b)(6)).

#### 1.   Title IX

"To prevail on a Title IX claim premised on sexual harassment or assault, a plaintiff must prove four elements: (1) that the educational institution receives federal funds; (2) that the plaintiff was subjected to harassment based on her sex; (3) that the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity; and (4) that there is a basis for imputing liability to the institution." *Doe v. Morgan State Univ.*, 544 F. Supp. 3d 563, 575 (D. Md. 2021) (internal quotation marks omitted). "Liability may be imputed to the institution if an official who has authority to address the alleged harassment and to institute corrective measures has actual knowledge of harassment in the institution's programs and fails adequately to respond or displays deliberate indifference to harassment." *Id.* Here, Plaintiff

13

alleges no well pleaded facts that would establish a basis for imputing liability to WashU. As Plaintiff acknowledges, WashU received Plaintiff's Title IX complaint and denied it for insufficient evidence. (Am. Compl. ¶ 39.) Plaintiff should not use a federal lawsuit to collaterally attack this discretionary decision. *Cf. Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 649 (1999) (explaining that an institution is not subject to Title IX liability when it "refrain[s] from a form of disciplinary action that would expose it to constitutional or statutory claims"). Further, "Title IX allows for lawsuits against only educational institutions and programs," not individuals. *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 700 (4th Cir. 2018). Thus, Plaintiff should not be permitted to add Title IX claims against any individual defendant.

### 2.     Civil Rights Restoration Act of 1987

The Civil Rights Restoration Act of 1987, Pub. L. No. 100-259, 102 Stat. 28, amended certain provisions of Title IX of the Education Amendments of 1972, the Rehabilitation Act of 1973, the Age Discrimination Act of 1975, and Title VI of the Civil Rights Act of 1964. The Act does not contain any independent provisions, let alone a cause of action. Thus, Plaintiff cannot bring a claim under the Act.

### **CONCLUSION**

The Court should dismiss the Amended Complaint for lack of personal jurisdiction or, in the alternative, failure to state a claim.

                                      Respectfully submitted,

                                      **LEWIS RICE LLC**

Dated: March 28, 2025         By:    /s/ Winthrop B. Reed III
                                                  Winthrop B. Reed III, *pro hac vice* (Mo. Bar #42840)
                                                  Lindsey M. Bruno, *pro hac vice* (Mo. Bar #73055)
                                                  600 Washington Avenue, Suite 2500
                                                  St. Louis, Missouri 63101
                                                  Telephone:  (314) 444-7617
                                                  Facsimile:  (314) 612-7617
                                                  wreed@lewisrice.com
                                                  lbruno@lewisrice.com

                                        **SAUL EWING LLP**

                                    By:    /s/ Anamika Roy Moore
                                                  Anamika Roy Moore, Bar #21689
                                                  1001 Fleet Street, 9th Floor
                                                  Baltimore, MD 21202
                                                  Telephone: (410) 332-8634
                                                  anamika.moore@saul.com

                                                  *Attorneys for Defendants*