IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| _____ : | |
| Allison Brown : | Amended Complaint for a Civil Case |
| 6405 Chew Road : | |
| Upper Marlboro, MD 20772 : | |
| Prince George's County, MD : | Case Number: 8:24-cv-03198-TDC |
| PLAINTIFF, : | |
| : | |
| v. : | **JURY TRIAL DEMANDED** |
| : | |
| Washington University : | |
| EIN: 43-065361 : | |
| 1 Brookings Drive : | |
| St. Louis, MO 63130 : | |
| : | |
| Washington University School of Law : | |
| 1 Brookings Drive : | |
| St. Louis, MO 63130 : | |
| : | |
| Elizabeth Walsh : | |
| Anheuser-Busch Hall Room 213E : | |
| 1 Brookings Drive : | |
| St. Louis, MO 63130 : | |
| : | |
| Adrienne Davis : | |
| Anheuser-Busch Hall Room 548 : | |
| 1 Brookings Drive : | |
| St. Louis, MO 63130 : | |
| : | |
| Carrie Burns : | |
| Anheuser-Busch Room 210D : | |
| 1 Brookings Drive : | |
| St. Louis, MO 63130 : | |
| : | |
| Russell Osgood : | |
| 1 Brookings Drive : | |
| St. Louis, MO 63130 : | |
| : | |
| Robert Wild : | |
| MSC 1167-226-200 : | |
| 1 Brookings Drive : | |
| St. Louis, MO 63130 : | |

```
                                        :
Darrell Hudson                          :
1415 Washington Heights                 :
Ann Arbor, MI 48109                     :
                                        :
Deanna Wendler-Modde                    :
1 Brookings Drive                       :
St. Louis, MO 63130                     :
                                        :
Nicole Gore                             :
1 Brookings Drive                       :
St. Louis, Mo 63130                     :
                                        :
Peggie Smith                            :
Anheuser-Busch Hall Room 548            :
1 Brookings Drive                       :
St. Louis, MO 63130                     :
                                        :
Mark Kamimura-Jiménez                   :
MSC 1083-226-330                        :
1 Brookings Drive                       :
St. Louis, MO 63130                     :
                                        :
Elizabeth Katz                          :
Anheuser-Busch Hall Room 548            :
1 Brookings Drive                       :
St. Louis, MO 63130                     :
                                        :
Angela Smith                            :
Room 325D-2, 1 Brookings Drive          :
St. Louis, MO 63130                     :
                                        :
INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITY;
                                        :
                                        :
                                        :
                                        :
                                        :
            DEFENDANTS.                  :
                                        :
                                        :
_____:
```

## COMPLAINT

### I.    INTRODUCTION

Plaintiff, Allison S. Brown ("Plaintiff") brings claims against her former law school and employer, Washington University EIN Number: 43-0653611 ("Defendant.") Defendant discriminated against Plaintiff, including but not limited to by treating her worse than her white counterparts and classmates, subjecting her to a hostile work environment because of her race (Black), and further discriminated and retaliated against her by suspending her with no pretextual reason or probable cause after she engaged in protected activity by complaining about racial and sex discrimination.

Defendant now is initiating garnishment proceedings and the collections process against Plaintiff after Defendant wrongfully suspended Plaintiff for 6 months. On May 2nd, 2023, the SCB (SCB) at Defendant found Plaintiff not guilty on all alleged violations of the Student Conduct Code. On August 2nd, 2023, Plaintiff paid $17,455.02 cash for the 2023-2024 tuition, and took out $30,000 in FAFSA loans - all of which were paid to Defendant. On August 15th, 2023, Defendant unilaterally revoked Plaintiff's $37,000 annual scholarship via e-mail after Plaintiff was forced, due to the racial and sexual discrimination by Defendant, to relocate back to Maryland for her third and final year of law school to Georgetown University Law Center. Plaintiff has made numerous requests to Defendant's counsel to resolve this matter outside of litigation with no success. On October 14th, 2024, Lisa M. Wood, Deputy General Counsel of Defendant sent an email to Plaintiff: "While the University will waive any late fees that may have been charged to your account, it is otherwise unwilling to enter into negotiations. If you have questions with respect to the collection process, please contact Student Billing . . ."

Plaintiff brings claims pursuant to Title VI of the Civil Rights Act of 1964, as amended,

42 U.S.C. §2000d, et seq. ("Title VI"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq. ("Title VII"),  the Civil Rights Act of 1866, as amended, 42 U.S.C. §1981 ("Section 1981"),  42 U.S.C.A. § 1983 ("Section 1983"), 42 U.S.C.A. § 1985 ("Section 1985"), U.S. Const. amend. XIV, § 2 ("14th Amendment,") U.S. Const. amend. V. ("5th Amendment,") and Title IX of Education Amendments of 1972, 20 USC §§ 1972, 20 USC §§1681 -1688 ("Title IX.") Plaintiff also brings claims of racial and sex discrimination and retaliation, disparate treatment, hostile work environment, conspiracy to commit discrimination, defamation, breach of contract, bad-faith negotiation, fraud, forgery, negligence, tortious interference, and intentional infliction of emotional distress. Plaintiff also seeks a refund for tuition paid during her 6 month suspension for no reason, where Defendants substantially (and wrongfully) interfered with Plaintiff's contracts, property interests, and education in retaliation for complaining of racial discrimination. Plaintiff seeks all damages allowable by law, including but not limited to injunctive relief regarding garnishee processes and collections actions in response to the racially and/or sexually discriminatory and retaliatory billing practices of Defendant. Plaintiff also seeks all other damages, including but not limited to economic loss, compensatory, liquidated, special and punitive damages, costs, attorney's fees and all other relief that this Court deems appropriate.

## II.    PARTIES

### A.  The Plaintiff

1.  Plaintiff, Allison Brown ("Plaintiff"), is an individual and a citizen of the State of Maryland (Upper Marlboro, MD) with intent to remain indefinitely.

2.  Plaintiff is female and Black/African-American.

3.  Plaintiff has resided permanently in Maryland since her retaliatory suspension from

Defendant in Fall 2022, and the entirety of the third year of law school while enrolled as a visiting student at Georgetown University Law Center for her safety.

**B. The Defendants**

4.  Defendant, Washington University, EIN Number: 43-0653611, is a Missouri institution of higher education with a principal place of business at 1 Brookings Drive St. Louis, Missouri 63130. Defendant continuously recruits students, including Plaintiff, to attend their undergraduate and graduate programs from the state of Maryland.

5.  At all times material hereto, Defendant was acting as an institution of higher education that receives federal funding and within the meaning of the statutes (including 42 U.S.C. §2000d-1) which form the basis of this matter.  At all times material hereto, Defendant employed fifty (50) or more employees. At all times material hereto, Defendants were Plaintiff's employers within the meaning of the statutes (including 42 U.S.C. § 2000e) which form the basis of this matter. At all times material hereto, Defendants acted by and through authorized agents, servants, workmen, and/or employees acting within the course and scope of employment with Defendants and in furtherance of their business.

6.  At all times material hereto, Defendants at times acted in concert with each other and authorized agents, servants, workmen, and/or employees acting within the course and scope of employment with Defendants and in furtherance of a conspiracy to commit discrimination under Section 1985.

7.  Elizabeth Walsh is the Associate Dean of Student Life at Defendant Law School.

8.  Russell Osgood is the former Dean of Defendant Law School.

9.  Adrienne Davis is a Professor in the School of Law and Professor of Organizational Behavior in Olin Business School at Defendant. Defendants Adrienne Davis and Peggie

Smith are friends, and former Yale Law School classmates.

10. Carrie Burns is the Vice President of Financial Aid at Defendant Law School. Defendants Elizabeth Walsh and Carrie Burns are close friends - not just colleagues.

11. Robert Wild is the Associate Vice Chancellor, and Dean of Students at Defendant.

12. Darrell Hudson is the Chair of the University SCB at Defendant.

13. Deanna Wendler-Modde is the Assistant Vice Chancellor and Associate General Counsel at Defendant.

14. Nicole Gore is the Associate Dean in the Office of Student Conduct and Community Standards at Defendant.

15. Peggie Smith is the Vice Dean at Defendant Law School, and a fellow classmate of Defendant Adrienne Davis at Yale Law School. Mark Kamimura-Jiménez is the Associate Vice Chancellor for Student Affairs at Defendant.

16. Elizabeth Katz was a Professor of Law at Defendant Law School, and is now a Professor of Law at the University of Florida Levin School of Law.

## III.    JURISDICTION AND VENUE

17. The causes of action which form the basis of this matter arise under federal law are Title VI, Title VII, Title IX, Section 1981, Section 1983, Section 1985, the 5th Amendment, and the 14th Amendment.

18. This District Court has jurisdiction over Count I - Title VI, Count II - Title VII, Count III - Section 1981, and Count IX - Section 1985, Count X - Title IX, Count XI - the 5th and 14th Amendment, and Count XII - Section 1983, pursuant to 28 U.S.C. §1331.

19. The District Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as there exists complete diversity of citizenship between the Plaintiff and Defendants and the

amount in controversy exceeds $75,000.00.

20. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to these claims occurred within this District including but not limited to the suspension of Plaintiff, the Student Conduct Board Hearing, the revocation of Plaintiff's scholarship, and Defendant's interference with Plaintiff's employment contracts.

21. The District Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 regarding the following state common law claims: defamation, libel, slander, breach of contract, bad-faith negotiation, fraud, fraudulent misrepresentation, negligence, tortious interference, and intentional infliction of emotional distress.

22. Defendants are engaged in an industry affecting interstate commerce and regularly do business in the state of Maryland. At all times material hereto, Defendant were employers within the meaning of the statutes which form the basis of this matter. Plaintiff was an employee of Defendant within the meaning of those statutes.

23. Defendant committed a substantial part of the discriminatory acts against Plaintiff within this District. Defendants, including Defendant Wild, sent billing and suspension documents to Plaintiff's address in Maryland. Plaintiff experienced a significant amount of adverse and discriminatory actions, including the revocation of her scholarship, by Defendant and through Defendant's agents while residing in the state of Maryland.

24. Plaintiff reported Defendants Walsh and Davis to the Office of Chief Disciplinary Counsel of the Supreme Court of Missouri in February 2024; Staff Counsel, Cecilia E. Young sent Plaintiff a letter on April 17th, 2024, stating "Based upon the information provided in your letter, it would not be appropriate for this office to take action. The

5

matter you raise in your correspondence involves legal issues which are within the

jurisdiction of the courts to resolve. This office has no jurisdiction."

25. Plaintiff has fully exhausted her administrative remedies, and complied with all

administrative prerequisites for the commencement of this action.

IV.        **FACTUAL ALLEGATIONS**

**February 2021**

26.  On February 24, 2021, Plaintiff applied for admission to Defendant Law School.

27. Plaintiff is Black, and disclosed her race to Defendant: Black/African-American, and her

birthday, December 14th in her application submitted from her home state of Maryland.

28. Plaintiff's application to Defendant Law School explained that she was an "Angell

Scholar" at the University of Michigan's Ford School of Public Policy, an award given to

students receiving straight A's for more than 2 semesters. Plaintiff stated in her

application to Defendant Law School that "I hope to be a part of a coalition that changes

the legal system for the better . . . With my light skin privilege, and talented-tenth family,

I understand that I have a responsibility to dismantle white supremacy."

29. Plaintiff's diversity statement stated: "I hope that at [Defendant Law School], I will be

able to investigate the root of anti-Black racism. . . [Defendant Law School] is home to a

faculty devoted to teaching and researching topics with the purpose of creating valuable

scholarship and viable solutions. I just hope I have the opportunity to learn from them."

**March 2021**

30. Plaintiff was accepted to Defendant Law School via e-mail from applylaw@wustl.edu on

Monday, March 22, 2021 at 3:33pm EST. On June 15, 2021 at 11:00AM EST, Defendant

accepted Plaintiff for admission to Defendant Law School with a scholarship of

$37,000/year ($18,500 per semester) for each year with the only condition as follows: "Your award is based on full-time student status."

31. As of October 21st, 2024 at 11:17PM EST, Defendant Law School's website states "At WashULaw, all of our JD scholarships are guaranteed for three years. Not only is this unusual but many schools make scholarship awards conditional on maintaining a certain GPA or class rank. By contrast, WashULaw scholarships are given with no strings attached as long as you remain a student at the law school." This is available here: https://law.washu.edu/consumer-information-aba-required-disclosures/

32. There is no university policy pursuant to Plaintiff's scholarship letter that states that Plaintiff or any other student would have their scholarship revoked **if Plaintiff were forced to visit another institution, studying abroad or visiting at another institution.**

33. As an American Bar Association (ABA) accredited law school, Defendant Law School is subject to the ABA Standards for Approval of Law Schools. The ABA Standards that Defendant is required to abide by may be found at americanbar.org and here: https://law.washu.edu/consumer-information-aba-required-disclosures/.

34. As of the date of filing of this complaint, Defendant has not complied with the requirements of the ABA Standards. Accordingly, a private investigation has been initiated by the ABA's 12-member council under Rule 42 of the ABA Standards. Under Rule 43 of the ABA Standards, this is the final disposition of Plaintiff's complaint with the ABA. This District court is Plaintiff's last resort for redress and remedy of Defendant's invidious discrimination, fraud, and failure to comply with the ABA Standards. There is no other condition of scholarship aside from "maintain full time student status" on any scholarship letter sent to Plaintiff from Defendant Law School.

35. Plaintiff's status, according to her transcript, never wavered from "full time student status" but Defendant chose to unilaterally revoke her scholarship anyways because Plaintiff is Black and complained of racial and sex discrimination in connection with her employment at Defendant Law School and prior. Further, Plaintiff's scholarship, initially issued in June 2021, was unilaterally revoked by Defendant in retaliation for winning the SCB hearing against Defendant Walsh and her agents.

36. Defendant's decisions have caused irreparable harm to Plaintiff in 2024, as Defendants' decision to revoke Plaintiff's scholarship was discriminatory and retaliatory, rooted in Plaintiff's success against Defendant Walsh's accusations in the September 2022 through May 2023 SCB Hearing in Maryland, Defendant Elizabeth Walsh's hatred of Plaintiff because of her race and sex, and Plaintiff's complaints of racial and sex discrimination.

**August 2021 - May 2022; Title IX Violations and Exposure to Sexual Predators**

37. In or around August 2021, Richard O sends Plaintiff a rape contract before they had ever met one another in person. Richard O calls Plaintiff, and explains that he generally sends contracts "to ensure that his needs are met in his female friendships" that allows him to rape Plaintiff and rituals involving semen and blood. Plaintiff is taken aback because she had never met Richard in person before; she could have smelled like onions - yet Richard O still wanted to be sure that he could have sex with her at his will, and against hers.

38. On May 9th, 2022, Plaintiff gave Defendant's Title IX Office a large binder detailing all of the harm that Richard O had perpetrated against her for the past year. Defendant does not investigate Plaintiff's claim and deems it "insufficient evidence" on its face. Plaintiff is not given an investigation while Richard O's investigation occupied Plaintiff's entire first semester of law school; Plaintiff was found not responsible for any alleged violation.

**September 2021**

39. Plaintiff enters Defendant Law School and joins the Black Law Student Association.

40. On Monday, September 27th, 2021 at 12:00pm, Plaintiff met with Defendant Walsh about Plaintiff's concerns and complaint regarding Alexis T, one of Richard's friends who enjoyed touting that they carry guns around campus and to school events. During the meeting, despite Plaintiff providing screenshots and email evidence, Defendant Walsh told Plaintiff: "too bad, so sad" with regards to Alexis T and there was nothing that she could do despite carrying guns being against school policy. Defendant Walsh said that she was uninterested in explaining the "culture of St. Louis" to Plaintiff and suggested that Plaintiff "get over it" and "make other friends." Plaintiff's complaints regarding issues like gun violence on campus, racial and sex discrimination are ignored by Defendants.

**January 2022**

41. In January 2022, during Plaintiff's second semester of law school, Plaintiff was automatically enrolled into Defendant Katz's Criminal Law section.

42. Defendant Katz had a documented history of students of color complaining and reporting her discriminatory practices and was mentioned during a Women in Color Law Society event as being a "problematic professor to look out for." Previous students had reported Defendant Katz, but Defendant Law School did not investigate because most of the complaints were from women of color.

**February 2022**

43. In early February 2022, Professor Katz began to show videos of only Black children (e.g. Latasha Harlin and Tamir Rice) being murdered.

44. On Tuesday, February 1st, 2022, Plaintiff and a coalition of other students unionized and collaborated to file a report against Defendant Katz complaining of Katz's racist classroom practices. Plaintiff, along with four classmates, drafted a letter to the administration objecting to Katz's sensationalization of Black children's gruesome murders. Plaintiff (despite not being the only student who objected and/or complained regarding Defendant Katz's racist class practices) is the only student reprimanded by Defendants for complaining about Defendant Katz's racism.

45. Plaintiff, a Black woman, is the only student called into the Dean's Office five times, substantially interfering with her studies, over the course of her second semester in law school regarding her "tone" and professionalism. No other similarly situated student in Plaintiff's section is subjected to these retaliatory actions by Defendant Law School.

46. Defendant Katz states in an email on Saturday, February 26, 2022 that perhaps "Peggy Smith would be able to speak to Plaintiff's frame of mind" because they are both Black. Further, Defendants Angela Smith and Peggy Smith (Black administrators) are selected to harm Plaintiff so Defendant's actions did not appear racist or sexually discriminatory.

47. In an email thread dated Feb 25, 2022, Defendant Peggie Smith conspires with and gives Professor Katz advice on how to discriminate against Plaintiff. The "investigation" by Defendant that Peggy Smith was referring to in this email thread, was actually a conspiracy by Defendant Walsh and her friends to try to get Plaintiff expelled for engaging in protected activity, and complaining about racial and/or sexual discrimination in her Criminal Law course and on Defendant's campus. Defendants' real concern was

10

not that Plaintiff was being disruptive. Instead, Plaintiff was observing Defendants act racist towards her, and then complaining about it. Defendants resolved to punish Plaintiff instead of rectifying the racial discrimination to which Plaintiff was subjected.

48. Yehoshua W, who is Jewish and white, in Plaintiff's section, is regularly seen on the course recordings derailing class time for over 30 minutes (around ⅓ of the class period) to ask hypotheticals unrelated to the course material. Shane G, another white classmate in Plaintiff's criminal law course states that the First Nations folks' genocide is irrelevant to a case about a First Nations' couple hesitant to take their child to the doctor because of the US's legacy of murdering indigenous children. Shane G said that was "unreasonable", and that it constitutes child abuse. Neither of these white students were reprimanded or disciplined for their disruptive classroom behavior.

49. In response to Shane G's comments during the same class, Plaintiff was called on and stated that a Native American family may be wary of going to a Western/allopathic doctor in fear of their child being placed in a "re-education" school, and/or killed.

50. Around the same time, in February 2022, an anonymous 80-person survey was distributed by Defendant Katz to Plaintiff's criminal law section because other students began to make complaints to the administration regarding Katz's class. None of the students named Plaintiff as the cause of Katz's poor classroom management.

51. On February 25th, 2022, Defendant Walsh and Katz, two white women, made racialized comments regarding Plaintiff's appearance, tone-policing, and complaining about Plaintiff's "tone" and "professionalism" in a zoom call with Plaintiff, a Black woman.

52. After the call, the same day, on February 25th, 2022 at 4:47PM CST, Plaintiff sends a

follow-up message with scholarly articles and research papers from Harvard, Stanford, and Cambridge about why the discussion they just had was inappropriate, and why what Defendant Walsh and Professor Katz said to Plaintiff was racist.

53. Defendant Katz sent an email on February 26, 2022 at 11:11AM CST to Walsh and Peggy Smith concerned that Plaintiff "may see her as a racist or naïve white woman." Defendant Katz also shared the results of her survey, along with her assertions that the comments regarding the toxic classroom environment should be attributed to Plaintiff. These comments from students could have easily been attributed to Plaintiff's white and male classmates, Yehoshua W, Shane G or Graeme H. Yet, Defendant Katz assigned these comments to Plaintiff.

54. Defendant Katz states in an email on Saturday, February 26, 2022 that perhaps "Peggy Smith would be able to speak to Plaintiff's frame of mind" because they are both Black. Further, Defendants Angela Smith and Peggy Smith (Black administrators) are selected to harm Plaintiff so Defendant's actions did not appear racist or sexually discriminatory.

**March 2022 - April 2022**

55. Plaintiff arrives at Defendant Peggy Smith's office on Thursday, April 7th, 2022 with two of her white friends for moral support. Defendant Peggy Smith sternly tells them to leave. Plaintiff goes into Defendant Peggy Smith's office alone.

56. Defendant Peggy Smith has no disciplinary authority of students as part of her role and attests to this in the SCB Hearing in or around March 2023. Yet, Defendant Smith tells Plaintiff that "if [Plaintiff] were to say that a policy or law were "racist" in her classroom, [Plaintiff] would be suspended." Plaintiff asks Defendant Peggy Smith if this meeting is a disciplinary warning. Defendant Peggy Smith says "No, it is not a warning," and "is just

giving advice that may make life and law school easier."

57. Defendant Peggy Smith discriminated against Plaintiff by telling her, a victim of racial and sex discrimination at Defendant Law School, and to refrain from calling any law, policy, or opinion "racist" or describing systemic or pattern of discrimination as "racism" or [Plaintiff] would be expelled from the class.

58. Plaintiff asked Defendant Peggy Smith if she had met with Shane G or Graeme H, two white male students who espoused their opinions in class about how the First Nations people genocide was inconsequential in a case about First Nations people, how Plaintiff "doesn't belong in the field of law but instead belongs in a discipline like sociology," or how BLM protestors should be shot/killed in defense of property. Defendant Peggy Smith says did not meet with Shane G or Graeme H as "it was not her concern."

59. In or around March 2022, Defendant Katz sent an email, excited, to Defendants Peggy Smith, Angela Smith, and Walsh stating that Plaintiff had stopped participating in class.

60. On Monday, March 28th, 2022, Defendant Katz made a racist comment to Plaintiff in the middle of class. Plaintiff wrote an email to Defendants Walsh and Smith describing the incident. Defendant Angela Smith tells Plaintiff "Thanks" and continues to ignore her.

61. Defendant, along with Defendant's agents, fail to investigate Defendant Katz's racist actions towards Plaintiff or Plaintiff's complaints of the same.

62. Through participating in the Diverse Attorney Pipeline Program, Plaintiff is offered a Summer Associate position with Norton Rose Fulbright in New York in March of 2022.

63. Plaintiff notified Hilary Von Rohr, a Lecturer in Law at Defendant Law School that she had been offered a Summer Associate position with Norton Rose Fulbright in New York. Hilary Von Rohr told Plaintiff that her summer employment was logged in Defendant

13

Law School's database regarding law students matriculating into BigLaw firms. This database is how Defendant Walsh knew how to interfere with Plaintiff's employment.

**May 2022 - August 2022**

64. Plaintiff tries to transfer to other schools because she is afraid of further racial and sexual discrimination and harassment at Defendant Law School. Katz is given an award.

65. In or around June 2022, Plaintiff applied to around 10 other law schools in the summer after her 1st year, explaining that she feared returning to Defendant Law School for her safety due to sexual harassment and racial discrimination. In early June 2022, Plaintiff requested Defendant Walsh send a letter of good standing to transfer in late May. Walsh refused to send the letters. Georgetown and Columbia contacted Plaintiff telling her that they did not receive a letter of good standing from Defendant Law School. Only after Plaintiff's mother personally asked Walsh to send the letters did Walsh tell Plaintiff's mother that she planned to send the letters. Plaintiff never received confirmation from Georgetown or Columbia that they received the letters from Defendant Walsh.

66. Plaintiff receives glowing reviews at Norton Rose Fulbright, and is told by the Director of HR that she is "one of the most professional Summer associates that he has ever seen" and is offered a return position for Summer 2023.

**August 2022**

67. Plaintiff returns to Defendant Law School after her transfer applications are denied.

68. Plaintiff was awarded her full $38,000 scholarship for her 2nd year of law school, elected as Vice President of the Black Graduate Students Association, and as Advocacy Chair of the Black Law Students Association.

69. Plaintiff enrolled in 2 classes from Defendant Adrienne D. Davis, "Trusts and Estates,"

and "Race in American Law" during the Fall 2022 semester.

70. Plaintiff made a post on social media in the beginning of August that she does not feel safe returning to Defendant Law School because of the sexual harassment and racial violence that she faced at the hands of the administration her first year of law school.

71. Defendant Angela Smith contacts Plaintiff about the instagram post that Plaintiff made regarding not feeling safe at Defendant University. Plaintiff reiterates that she already told her in a meeting prior that year about being sexually harassed by a classmate. Plaintiff said she had been continually retraumatized by telling different administrators at Defendant the details regarding Defendants' sexual and racial discrimination, and subsequently ignored. Defendant Smith then ignores Plaintiff.

72. Defendants Walsh and Smith conspire to remove Plaintiff from the law school for her comments about being afraid to return to Defendant. Defendants recruit Defendant Adrienne Davis to gain Plaintiff's trust in the hope that Defendants would be able to manufacture a facially legitimate reason to expel Plaintiff for her complaints.

**September 2022 - October 2022**

73.  Defendant Davis sends an invitation to the law school community to be her research assistant in September 2022. Plaintiff applies to Davis's email advertisement, and apologizes for her lower than average grades, explaining that she was sexually harassed by a classmate during her 1L year. Plaintiff was hired by Davis, a purported scholar of racism and history, to perform research on racism and history in the 1L Curriculum.

74. Plaintiff was given access to Workday, an Employee Self Service platform in connection with her employment by Defendant Davis. Plaintiff was also awarded a $1000 CREE2 Grant from the Center for Race, Ethnicity, and Equity to perform research for Defendant

Davis on racism and history in the 1L Curriculum.

75. Defendant Davis writes Plaintiff an email, stating that she "liked" (both physically and

metaphorically, as Defendant Davis specified in her email) Plaintiff's instagram page,

where she discussed at length her subjection to sexual and racial violence at Defendant.

76. Defendant Davis acts oddly, sending Plaintiff messages outside of business hours and

asking her to meet in her office regarding unrelated and inappropriate discussions. During

a one-on-one meeting after one of Defendant Davis's classes, fraudulently memorializes

their discussion and states that Plaintiff "must raise her hand before talking in class"

when this was not discussed at the meeting, and instead told Plaintiff in her office that

she is forbidden from using the words "coon" or "Uncle Tom."

77. Plaintiff does not speak in either her Trusts and Estates or her Race in the Law class for

the next two weeks. During this period, Defendant Davis tries to entice Plaintiff to speak

by gesticulating "Counselor Brown would say" and musings regarding Plaintiff's praxis,

but Plaintiff would not speak. Defendant Davis sends Plaintiff an email asking if she

raised her hand (she didn't) in a class of 90 people. Plaintiff only spoke after being

solicited by a classmate and fellow coworker under Defendant Davis of Plaintiff's, when

Defendant Davis called on Plaintiff on November 2, 2022.

**November 2, 2022**

78. On November 2, 2022, Plaintiff attended "Race in the Law" with Defendant Davis.

79. Defendant Davis started the classroom recording at approximately 10:30AM CST on

November 2, 2022. This recording would never be uploaded to Canvas, but every single

other class of Defendant Davis's, was uploaded to Canvas. The tape of Defendant

Davis's November 2nd class was requested to be shown during the SCB to exonerate and

support the fact that Plaintiff had neither harassed or threatened anyone on campus, and

the fact that Defendant Davis staged an emotional bowel movement performance to get

Plaintiff expelled. Defendants have declined to view or produce the tape for any reason.

80. On November 2, 2022, Davis disseminated an article about Rishi Sunak to the class, and

solicited a classroom discussion on Rishi Sunak, and whether or not he is a "diversity

success story" or a "diversity failure." Davis assigned the students into groups. Plaintiff

spoke to her group members, but never to Davis. Davis called on different students, and

lambasted Plaintiff's classmates as "unprofessionalism" for stating "Rishi Sunak sucks."

81. Defendant Davis calls on a fellow research assistant, and coworker of Plaintiff's, who

was in Plaintiff's small group discussion from earlier. This co-worker objects to

Defendant Davis's assertion that to say something "sucks" is not professional; instead he

says that "policing language is utilizing the same white supremacy that we are supposed

to be trying to dismantle." Coworker gesticulated with his hands "Counselor Brown

articulated this much more eloquently than me." Defendant Davis called on Plaintiff.

Plaintiff stated, "the classroom is the safest place for us to talk about linguistic racism."

82. Defendant Davis has an emotional meltdown. She feigns that Plaintiff called her "Bull

Connor" and a white supremacist, and storms out of the classroom. Davis yells on the

tape "I am a white supremacist. I am Bull Connor. I am the KKK." Plaintiff replies,

"Professor, I do not mean to disparage you as I greatly admire you as my professor."

83. Defendant Davis says "I am going to go to the Dean's Office to get you the Professor that

you deserve." Davis runs out of the room for about a minute. Plaintiff then turned around,

looked directly into the camera, filming, and stated while Davis was outside of the room:

"I am not taking responsibility for Professor Davis's mental health outburst." Davis

comes back into the room in tears, and dramatically throws her microphone down on the podium, causing a ricochet of microphone feedback across the room. Plaintiff sent a follow up email to Davis, apologizing if she said anything wrong. Professor Davis then cancels classes for the next week, and assigns a youtube video for the class to watch.

84. Plaintiff attends office hours with Professor Hollander-Blumoff, her Civil Procedure, Federal Courts, and Negotiation professor, and tells her about Professor Davis's meltdown. Professor Hollander-Blumoff says it is bizarre, but not to worry as "sometimes Professors have things going on in their personal life separate from students."

**November 4th, 2022**

85. On November 4th 2022, Dean Robert Wild called Plaintiff to inform her that she was banned from campus indefinitely effective immediately. Defendant Wild gave Plaintiff 40 minutes to grab her possessions from her locker in Defendant Law School.

86. Defendant Wild's suspension letter detailed that Plaintiff would be arrested (by the St. Louis City Police or the WashU Police) if Plaintiff were found to be in any on campus or off-campus event OR apartment, constructively evicting her from her housing. Plaintiff's apartment building was denoted on a map labeled by the WashU police department as the "off-campus Rosedale patrol zone." See Exhibit 77. Thus, Plaintiff's fear of being arrested and subject to harm by staying in St. Louis was reasonable; she fled to Maryland due to fear of arrest and detention in St. Louis County Jail by Defendants.

87. Plaintiff was temporarily suspended on November 4th, 2022, after Defendant Davis's performance on November 2nd, 2022 because Plaintiff is Black and complained of race and/or sex discrimination at Defendant Law School.

88.  On November 9th, 2022, Defendant Walsh and Wild meet with Plaintiff at 4pm CST via

zoom and tell her that she is "temporarily suspended" and "in huge trouble" and that she is "not to step foot on campus" and if she does, "[Plaintiff] will be arrested." Defendant Robert Wild's letter to Plaintiff sent on November 4th, 2022, stated that she did not pose a "physical threat" to campus. Yet, Defendant Wild maintained that Plaintiff was engaged in a pattern of "threatening" and "harassing" other professors and students in violation of Sections 2 and 4 of the Student Conduct Code.

89. On November 10th, Defendant Wild sent a suspension letter addressed to Plaintiff's Maryland address again reiterating that Plaintiff would be arrested if she violated the terms of her suspension, and could only *ask for permission* to come on campus to seek mental health services.

90. Plaintiff, elected as Vice President of the Black Graduate Students Association, is forbidden from maintaining her leasehold in St. Louis, Missouri, per the Wash U police department's designation of her apartment as an "off campus apartment" subject to patrol, and seeing "Black Panther" at a local movie theater off campus or attending any other campus events. Defendants Walsh and Wild tell Plaintiff if she attends the viewing (which is off campus at a local AMC theater in St. Louis), Plaintiff would be in violation of the temporary suspension and subject to more sanctions.

91. Defendants Walsh and Gore show Plaintiff Defendants' "evidence." Among the evidence against Plaintiff are copies of Plaintiff's social media postings about Cardi B and Drake, Black musicians that Plaintiff enjoys in support of their argument that Plaintiff was "unfit" to continue attending Defendant Law School.

92. As early as November 28, 2022, in emails Defendant Gore expresses that Defendants do not want Plaintiff to return to campus ever. Plaintiff never does.

19

Case 8:24-cv-03198-TDC    Document 48    Filed 04/11/25    Page 22 of 64

**December 2022**

93. Plaintiff paid $15,000 to retain Lento Law Firm in connection with legal representation in this hearing. Plaintiff's case is assigned to Stacy T. Forchetti (hereafter, Forchetti) who oddly and suspiciously started at the firm at the same time as Plaintiff's hearing.

94. Plaintiff's mother, a Maryland resident, emailed a handwritten letter to Defendants Walsh and Wild telling them that Defendant Davis feigned her objection to Plaintiff's innocuous comment to harm her. Plaintiff's mother attaches Davis's bizarre emails to her letter, and urges Defendant to stop discriminating against Plaintiff. Defendants would have never ignored the pleas from a white student and her mother, Harvard Law School '92.

95. Plaintiff's mother sent a second email to Defendants Walsh and Wild explaining that Defendant Davis' behavior is setting Plaintiff up is typical of a "coon" or "Uncle Tom" - a Black person who acts to harm other Black people for personal short-term benefit. Plaintiff's mother says that Plaintiff is being uniquely targeted and retaliated against because she is Black and complained of race discrimination at Defendant.

96. Plaintiff's mother sent a third email from Maryland containing the statements of Plaintiff's classmates, showing that statements of the students support the conclusion that Davis feigned objection to Plaintiff's innocuous statement to get her expelled.

97. In preparation for the SCB Proceeding, Defendant Hudson rules that no videos of any class are allowed to be entered into evidence, even though Plaintiff's behavior at several classes (specifically, November 2, 2022) is contested and argued as a violation of the Student Conduct Code. No statements regarding Professor Davis's conduct are allowed, and no evidence regarding the Title IX proceedings between Richard O and Plaintiff are allowed to be admitted. Defendants did not admit any of this evidence in the SCB

because it showed Plaintiff was discriminated against based on her race and sex.

98. Plaintiff objected to Defendants' selection of Nicholas Armstrong, who held Plaintiff's

BLSA position of advocacy chair directly before Plaintiff, and Breia Maddox, a friend of

Richard O's who had fed him her social media content since Plaintiff blocked him, two

members of the SCB. Further, both individuals were close friends with two of Defendant

Walsh's witnesses. Defendant Hudson removed Breia Maddox from the SCB but not

Nicholas Armstrong, breaching Plaintiff's rights to a fair hearing with neutral arbiters.

99. An exorbitant number of discriminatory, bogus and kangaroo-court-like restrictions are

made in violation of Plaintiff's 5th and 14th amendment rights. Plaintiff complains of

these restrictions. Defendant ignores Plaintiff and does not acknowledge the same.

100.     On December 9th, 2022, Defendant Gore informed Plaintiff that Defendants

Davis and Katz were dropped from being called as witnesses at the hearing. The only

folks left to testify in the SCB are 5 students who disliked Plaintiff after the Title IX fall-

out involving Richard O, and two administrators that **Plaintiff has never had a class**

**with.**

101.     **Not one professor that Plaintiff had testified against Plaintiff at the hearing.**

102.     Defendant Walsh argued in the suspension letter that Plaintiff was a "threat" and

"harassing" students because Plaintiff is Black. Defendant Walsh argued in bad faith in

the SCB. Walsh knowingly, willfully, and intentionally abused the SCB hearing process

by arguing Plaintiff was a "threat" and "harassing" students when **she had no evidence.**

103.     Accordingly, Walsh did not meet her burden in the SCB hearing, and **lost.** Defendant

Walsh defamed Plaintiff by accusing Plaintiff of lying during the hearing, with no

evidence. Walsh lashed out on Plaintiff through retaliatory billing practices and the

unilateral revocation of her scholarship that started on or around August/September 2023, when Plaintiff relocated for her safety to Georgetown University Law Center.

**February 2023 - May 2023 - The Actual SCB Hearing Proceedings**

104.    Defendant Walsh substantially interfered with the rights of Plaintiff. Walsh misplaced or lost over 30% of the class recordings from Plaintiff's classes during her retaliatory suspension (including Plaintiff's 1st Amendment classes regarding free speech in public/private schools) prohibited Plaintiff from communicating with professors and restricted Plaintiff from possession of her apartment, all on-campus and off-campus activities, and classroom discussion while her white non-complaining peers were not.

105.    On Wednesday, February 8th, 2023, Professor Leila Sadat sent Plaintiff an email, accusing her of being negligent with her course performance and attendance during her temporary suspension, when it was really Defendant Walsh's negligence that forbade Plaintiff from participating in class like her white classmates. Additionally, Defendant Walsh, in an email to Plaintiff's "Workplace Discrimination" professor, instructed the professor to "lock" Canvas discussion board so Plaintiff would not be able to participate.

106.    Defendant Walsh forced Plaintiff to withdraw from the War Crimes Tribunal seminar with Professor Sadat over a month after classes started. Defendant Walsh's interference and failure to provide Plaintiff with her coursework and discriminatory actions towards Plaintiff caused Plaintiff to struggle with coursework. As a result, the worst grades on Plaintiff's transcript are during the Spring 2023 semester.

107.    Only one of the students that testified against Plaintiff during the SCB hearing testified that Plaintiff *may* have exhibited harassing behavior towards her.

108.    This student, Cara H, testified against Plaintiff and said that Plaintiff was harassing

her. Plaintiff asked "Did you ever report our mutual classmate for peeing on you and making you uncomfortable? I never did that to you." Cara H published this information to Plaintiff and other witnesses (one of whom was forbidden from testifying) on the roof in the hot tub of one of their mutual classmates' apartment complexes.

109.    When Plaintiff asked Cara about another classmate peeing on her and her subsequent discomfort, Cara began to cry in the SCB Hearing and said "See, this is why I didn't even want to do this." Defendants allowed Cara, but not Plaintiff, to testify about Defendant Davis's November 2nd class. Neither Defendants, nor Forchetti, raised or rectified these evidentiary/14th amendment issues. Plaintiff also objected to testimony being introduced regarding Defendant Davis's November 2nd, 2022 class. Defendant Wendler-Modde, Defendant Darrell Hudson, nor Forchetti attempted to cure this defamatory testimony.

110.    Dinora testified that Plaintiff never harassed or threatened her. Dinora O (hereafter, Dinora) testified that Plaintiff's critiques of Defendant Katz were valid; and that Defendant Katz's class was "trash," and that she felt harassed and threatened by her white classmates ("The white kids come up to me and ask if I think like Allie because we are both women of color.")

111.    Defendant Walsh unfairly blamed Plaintiff for issues outside of her control throughout her questioning of her witnesses; Plaintiff could not control white students' comfort or control in the classroom yet was suspended (per Wild's suspension letter) for this reason.

112.    Another white student, Graeme H, who testified on Defendant Walsh's behalf, also espoused that conversations regarding race made him "generally uncomfortable." Graeme H explicitly testified that Plaintiff never threatened or harassed him during the SCB

hearing. Defendant Walsh still attributed Graeme H's discomfort to Plaintiff, a Black woman because Plaintiff is Black and complained of race and/or sex discrimination.

113.    Forchetti never produced *any work product* for the entirety of the SCB hearing despite receiving $15,000 in exchange for legal representation of Plaintiff. Forchetti repeatedly tells Plaintiff that she has not suffered any discrimination, racism, or injuries from Defendant Law School, despite Defendant Law School harming Plaintiff because she is Black and complained of racial and sex discrimination.

114.    Forchetti, knowing that Plaintiff was employed by Defendant Law School and Defendant Davis, did not inform Plaintiff of her need to file with the EEOC or any other administrative adjudicative body. Forchetti does not file with the EEOC like any civil rights Plaintiff lawyer exercising an ordinary level of care in the profession would.

115.    Forchetti ignored Plaintiff's emails and pleas for assistance to assert her race and sex discrimination claims before the SCB, delay the SCB process and missed SCB Motion and Answer deadlines from Defendant Hudson to conspire and facilitate the unjust enrichment, harm, racial, and sex discrimination against Plaintiff.

116.    Forchetti advocated for Plaintiff to sign identical agreements (including a release) that Plaintiff, earlier upon retaining Lento Law Firm, refused to sign. Forchetti repeatedly reiterated throughout the hearing that "no harm to Plaintiff had occurred" despite being aware of Defendant Law School's myriad of SCB hearing decisions regarding the admission of Plaintiff's evidence that were arbitrary, capricious, unrelated to a legitimate school concern, and violating Plaintiff's 5th and 14th amendment rights to a fair hearing before deprivation of her property interest. Forchetti also failed to inform Plaintiff of her rights because she was conspiring with Defendant Law School.

117.    Defendant Law School is a **predominantly white institution**. Yet, the participants in the SCB proceeding were **disproportionately black**. Defendants Angela Smith and Peggy Smith, the only two administrators testifying against Plaintiff in the SCB were Black. Defendant Gore, who is Black, replaced Defendant Wild, a white man, as the primary supporter of Walsh to provide a veneer of non-racist sentiment and legitimacy.

118.    Defendant Hudson and Defendant Wendler-Modde omitted the aforementioned facts regarding several witness's testimony from the SCB hearing determination letter, resulting in a false and defamatory recollection of the events during the hearing. Additionally, Defendants Hudson and Walsh did not allow for four of witnesses to testify on Plaintiff's behalf: (names redacted for privacy, but available at the court's request) a PhD student in Microbiology at Defendant, a Medical student at Defendant, one PhD student in Sociology at Defendant, and another PhD student in Sociology at Defendant. **Every single one of Plaintiff's witnesses barred from participation was Black. The only witness allowed to testify on behalf of Plaintiff was one white person.**

119.    The one white person that testified on Plaintiff's behalf testified that Plaintiff would not have been suspended if she were white. Defendant Darrell Hudson interrupted this witness, Plaintiff's only witness, and forbade her from reading her full witness statement regarding November 2, 2022, the singular class that precipitated Plaintiff's suspension from Defendant Law School. Defendant Hudson is not a lawyer and has never gone to law school but was selected to preside over the proceeding because he 1) is Black and 2) his Blackness provided a veneer of non-racist intent and sentiment from Defendant.

120.    **Defendant Walsh asked Plaintiff only one question after being temporarily suspended for 6 months: how was posting on social media to 'clear [her] name?'**

121.    Plaintiff replied that her white Jewish classmate, Yoshua W, would derail class for 45 minutes to an hour on a tangent in the middle of class, badgering the professor with off-topic and unrelated questions to the lesson plan. Plaintiff testified because she is a Black student, if she would ask even one question related to the course material regarding the racialized policy implications of the law, she would be labeled "disruptive" and subjected to racism vis a vis meritless claims of unprofessionalism and tone-policing.

122.    All of the aforementioned exchanges between Plaintiff and Walsh's witnesses were omitted from the SCB's determination letter furnished to Bar Associations and Plaintiff's prospective employers.

**May 2023 - February 2024**

123.    Plaintiff was found not guilty on all charges by the SCB in May 2023. Plaintiff was temporarily suspended for 6 months, from November 2022 until May 2023 for no cause, roughly 6 months or 180 days from the date of her temporary suspension, which was also the statute of limitations to file with the Missouri Commission for Human Rights, the Missouri administrative prerequisite for filing with the EEOC.

124.    Plaintiff demanded adequate assurances that the racially discriminatory practices of Defendants would not occur again if Plaintiff were to come back to Defendant Law School campus. Defendant Law School, and Defendant Gore refused to give adequate assurances that the wrongful suspension would not occur again if Plaintiff returned to Defendant Law School. Defendant Law School told Plaintiff that they would prefer if Plaintiff finished her law degree elsewhere during settlement negotiations, and Plaintiff held a reasonable belief that she would continue to be threatened with arrest, arrested, harmed or possibly killed if she were to return to Defendant after relocating to Maryland.

26

125.    On Thursday, April 20th, 2023, Plaintiff sent a spoliation letter to Defendant Gore
and Defendant Wendler-Modde stating that Plaintiff requests for all evidence regarding
the hearing and her tenure at Defendant Law School to be preserved for future litigation.
Defendants did not acknowledge Plaintiff's email despite Plaintiff's request to do so.

126.    Plaintiff started her "Summer Associate" role with Norton Rose Fulbright in New
York less than 2 weeks after the conclusion of the SCB hearing, and Defendant was made
aware of the same. Plaintiff disclosed during a routine exit-interview with HR that she
was transferring to Georgetown University Law Center because of the racial and sexual
discrimination at Defendant, and that her transcript would reflect those changes. Norton
Rose Fulbright told Plaintiff that "they would look out for the transcript change when
[Plaintiff] started next Fall."

127.    As a result of Defendant's wrongful suspension of plaintiff, and Defendant's
discriminatory and tortious conduct, Plaintiff is not offered a return offer (where the
incoming associate salary is $235,000) from Norton Rose Fulbright. Defendant's material
interference with Plaintiff's rights adversely affected her career trajectory.

**February 2024 - October 2024**

128.    Defendant and her agents continue, to this day, to ignore Plaintiff and her claims of
race and sex discrimination. Defendant continues to subject Plaintiff to race and/or sex
discrimination, and has failed to remedy or prevent the race and sex discrimination to
which Plaintiff has been subjected.

129.    The conduct of Defendants, as set forth above, was severe and/or pervasive enough
to make a reasonable person believe that the conditions of employment and schooling
were altered as the environment was hostile and abusive. Defendants' conduct, as set

forth above, was outrageous under the circumstances, was done by and with the knowledge of administration and warrants the imposition of punitive damages against Defendants.

130.     Plaintiff's race and/or sex was the motivating and/or determinative factor in connection with Defendants' discriminatory treatment of Plaintiff, including without limitation, in harming Plaintiff and in the creation of the hostile work environment and wrongful suspension to which Plaintiff was subjected.

131.     The conduct of Defendants, as set forth above, was willful and intentional.

## COUNT I - TITLE VII

132.     Plaintiff incorporates by reference the above paragraphs as if set forth herein in their entirety. By their actions set forth above, Defendants committed race and/or sex discrimination upon Plaintiff in violation of Title VII.

133.     Plaintiff's former attorney, Forchetti of the Lento Law Firm failed to advise Plaintiff of the need to file with the EEOC in a timely manner so that Plaintiff's workplace racial discrimination claims would not be heard in a timely manner.

134.     Plaintiff has evidence, both direct and circumstantial, that prove Defendant's discriminatory intent. Plaintiff has also demonstrated Defendant's discriminatory purpose through their decision making processes and ignoring Plaintiff's complaints regarding race and/or sex discrimination at Defendant Law School. Plaintiff's race and subsequent complaints of race and/or sex discrimination was a clear motivating factor in Defendant's "clear pattern unexplainable on grounds other than" discriminatory ones. Plaintiff through the incorporated paragraphs and foregoing exhibits has shown evidence of a "consistent pattern" of actions of decision-makers constituting invidious discrimination.

135.    Defendant applied different procedural processes or substantive standards to requests of minorities and non-minorities, and preferred the white and/or non-complaining classmates of Plaintiff over Plaintiff, a Black student who complained of race and/or sex discrimination at Defendant Law School. Defendant's race and/or sex discrimination and retaliatory conduct and comments have caused Plaintiff significant emotional distress.

136.    Plaintiff's race and sex was a motivating and/or determinative factor in the above discriminatory and retaliatory acts. The retaliatory actions taken against Plaintiff after she complained of discriminatory conduct would have discouraged a reasonable employee or student from complaining of discrimination.  As a direct and proximate result of Defendant's discriminatory conduct and retaliatory conduct, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, reputational harm, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

137.    As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered the losses set forth herein and has incurred attorneys' fees and costs.

138.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

**COUNT II—TITLE VI**

139.    Plaintiff incorporates herein by reference the above paragraphs as if set forth

herein in their entirety. Defendant is a University that receives federal funds, and
pursuant to Title VI incorporated under the 14th Amendment, is forbidden from
discriminating against Plaintiff: Black people, women, and Black women on the basis of
race and/or sex.

140.    Defendant applied different procedural processes or substantive standards to requests
of minorities and non-minorities, and preferred the white and not-complaining of racial
classmates of Plaintiff over Plaintiff, a Black student who complained of racial
discrimination at Defendant Law School. Defendant's race and sex discrimination and
retaliatory conduct and comments have caused Plaintiff significant emotional distress.

141.    Plaintiff's race and/or sex was a motivating and/or determinative factor in the above
discriminatory and retaliatory acts. As a direct and proximate result of Defendant's
discriminatory conduct and retaliatory conduct, Plaintiff has in the past incurred, and may
in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and
suffering, embarrassment, humiliation, reputational harm, loss of self-esteem, mental
anguish, and loss of life's pleasures, the full extent of which is not known at this time.
Plaintiff is now suffering and will continue to suffer irreparable injury and monetary
damages as a result of Defendant's discriminatory and retaliatory acts unless and until
this Court grants the relief requested herein.

142.    By committing the foregoing acts of discrimination and retaliation against
Plaintiff, Defendant has violated Title VI.

143.    Defendant acted intentionally to harm and retaliate against Plaintiff, and with
malice and/or reckless indifference to Plaintiff's rights, and its conduct warrants the
imposition of punitive damages.

30

## COUNT III - SECTION 1981

144.    Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety. By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant violated Section 1981.

145.    As a direct and proximate result of Defendant's discrimination, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

146.    Said violations by Defendant Law School and above listed Defendants were done and/or carried out with malice and/or reckless indifference to Plaintiff's protected rights, and warrant the imposition of punitive damages. As a direct and proximate result of Defendant's violation of Section 1981, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs (including the $15,000 paid to Lento Law Firm.)

147.    Plaintiff requests relief of attorney fees paid to Lento Law Firm in connection with the Kangaroo-court-sham SCB orchestrated by Defendants. Plaintiff suffered irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

148.    Plaintiff suffered and continues to suffer from irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

149.    No previous application has been made for the relief requested herein.

## COUNT IV - FRAUD AND UNJUST ENRICHMENT

150.    Plaintiff incorporates and realleges the above paragraphs as if set forth herein in

their entirety. By their actions set forth in this complaint, Defendants committed fraud upon Plaintiff. Plaintiff reasonably relied, to her detriment, on the material misrepresentations and omissions of fact made by Defendants - specifically, that they are a University subject to the laws of the United States including but not limited to Title VI, Title VII, the 5th and 14th Amendment, were ABA accredited, subject to the ABA guidelines, would adhere to the ABA guideline 509 regarding condition scholarships and non-discrimination, and would not revoke Plaintiff's scholarship in retaliation for complaining of race and/or sex discrimination.

151.    Defendant defrauded Plaintiff by requiring Plaintiff to pay tuition for classes that were either 1) "lost" (according to Defendant Walsh) 2) "unavailable" or 3) not recorded at all (in the case of Professor Sadat's class.) Defendants also engaged in fraud by doctoring their emails about their "investigation" (as stated by Defendant Peggy Smith in emails to Defendant Osgood and Defendant Walsh) into Plaintiff to make Plaintiff look culpable in their conspiracy to expel Plaintiff from Defendant University.

152.    Defendants never addressed, confirmed, or denied Plaintiff's allegations of fraud, which were detailed in Plaintiff's emails to Defendant Gore, Lora Clark, and Forchetti. One particular email from Plaintiff addressing Defendant's alleged fraud was dated Wednesday, February 22, 2023, addressing the concerns regarding the font sizes, the omissions of certain e-mails in their entirety, and the different contents of e-mails. Further, Defendants engaged in fraud by conspiring with the Lento Law Firm to retain Forchetti as Plaintiff's attorney. At Defendants' direction, Forchetti was often sick with COVID, or having other obligations that interfered with Plaintiff's hearing strategy; Plaintiff litigated the entirety of the SCBH herself by design of Defendants.

153.     Defendant has been unjustly enriched by an amount equal to all the monies
collected from Plaintiff between November 2022 and May 2023 while Plaintiff was
erroneously suspended, and through the unilateral revocation of Plaintiff's scholarship for
the 2023-2024 school year from August 2023 to present. Defendant only took these
actions against Plaintiff because she is Black and complained of racial and/or sex
discrimination.

154.     Fundamental fairness requires Defendant to return all of Plaintiff's tuition during
her suspension and 3rd year of law school including any financial aid paid to Defendant
by a third party on Plaintiff's behalf. As a result of Defendant's unjust enrichment,
Plaintiff is entitled to recover monetary damages equal to the amount of tuition during her
suspension, plus prejudgment interest, and costs as may be recoverable at law.

155.     Forchetti told Plaintiff "[Walsh] just doesn't like you and that's why she won't
negotiate with you." Forchetti repeatedly said that Plaintiff had not been subject to any
racially and/or sexually discriminatory treatment. Forchetti also counseled Plaintiff, after
Plaintiff paid her firm $15,000, to accept a plea agreement that would have left Plaintiff
in a materially worse condition, but Defendant in a better position, than when Plaintiff
retained Lento Law Firm. Forchetti engaged in a fraud conspiracy with Defendants by
practicing an unfamiliar area of law to aid and abet Defendant Law School's
discrimination.

156.     Defendant made unambiguous promises to Plaintiff, before, during, and after her
tenure at Defendant, that any student would not have their scholarship revoked if not
found guilty of violating any other university code or policy. Defendant Wild made
unambiguous promises to Plaintiff, both before, during, and after her temporary

suspension, that if she were accused of a violation of the Student Conduct Code, she would not be sanctioned without a fair disciplinary procedure, an impartial and fair investigation and equitable resolution. Plaintiff's contractual and 14th amendment rights were violated through Defendant's failure to adhere to Plaintiff's terms of her suspension and retaliatory billing practices.

157.    Plaintiff relied on Defendant's promises when she decided to enroll, and continued to enroll for six semesters, at Defendant. Plaintiff maintained "full time student status," the sole condition of her scholarship letter, at all times from matriculation at Defendant Law School to completion of the graduation requirements.

158.    Plaintiff's reliance on "full time student status" being the sole condition of the scholarship because it was the only term listed on the scholarship letter was expected and foreseeable by Defendant, especially since the ABA Standard 509 requires all ABA approved law schools to fully disclose the conditions of any conditional offer or scholarship. Defendant knew Plaintiff was attempting to graduate from law school. Plaintiff relied on Defendant's promises to her detriment as Defendant wrongfully suspended Plaintiff, failed to provide her with a fair and equitable process that satisfied due process, and prevented Plaintiff from securing post-graduation employment.

159.    As a direct and proximate result of Plaintiff's reasonable reliance on Defendants' misrepresentations and omissions of fact, which Defendants knew to be false, Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' unlawful acts unless and until granted the relief requested herein.

**COUNT V - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

160.    Plaintiff incorporates by reference the above and below paragraphs as if set forth

herein in their entirety. By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has committed the intentional tort of intentional infliction of emotional distress. Defendants prolonged the SCB hearing with unreasonable delay and for no reason other than stall for time. Defendants refused to admit the videos of Plaintiff's classes, despite Walsh arguing that Plaintiff was disruptive in class. Additionally, Defendant Gore and her assistant, Lora Clark's willful and intentional actions of botching, misconstruing, and mislabeling Plaintiff's exhibits caused Plaintiff to be suspended for over 6 months. This caused severe mental and emotional distress to Plaintiff and her mother who begged for Defendants to stop torturing Plaintiff.

161.    For three of Plaintiff's consecutive birthdays, Defendant intentionally and repeatedly traumatized Plaintiff through fraud and exposing Plaintiff to sexual predators, prolonging hearings, tampering with evidence and doctoring emails. For her 25th birthday, Defendants also caused Plaintiff to be involved and actively testifying in a sham Title IX proceeding with a known sexual predator that Defendant had a duty to protect her from. On her 26th birthday, Defendants erroneously suspended Plaintiff because she is Black and complained of racial discrimination in connection with her employment. On her 27th birthday, Defendants stole her FAFSA refund in retaliation for winning the SCB hearing against Defendant Walsh leaving her destitute, financially crippled and broke.

162.    Defendant engaged in a pattern of malicious and intentional conduct to harm Plaintiff.                    **COUNT VI - NEGLIGENCE**

163.    Plaintiff incorporates and realleges the above paragraphs as if set forth herein in their entirety. Defendant's actions were a grievous and foreseeable breach of their duty

and exposed Plaintiff to an unreasonable risk of harm, which she has now incurred.

164.     Defendants acted in concert and breached their duty of care to act as any

reasonable Top 20 law school would when they ignored Plaintiff regarding her race and

sex discrimination claims, failed to investigate Plaintiff's racial and sexual discrimination

claims, and then retaliated against her for making such claims; Plaintiff is now destitute

and has suffered damages as a result of Defendant's breach.

## COUNT VII - BREACH OF CONTRACT

165.     Plaintiff incorporates by reference and realleges the above paragraphs as if set

forth herein in their entirety. Defendant and Plaintiff had a legally enforceable obligation

and agreement through the scholarship award letter that specified and required one term

of performance by Plaintiff: "maintain full time student status" which Plaintiff never

broke.

166.     Defendant breached this obligation by suspending Plaintiff erroneously for 6

months, requiring Plaintiff to hire a lawyer, spending $15,000 to ensure that Plaintiff's

rights would not be violated during the SCB Hearing, and unilaterally revoking her

scholarship.

167.     Plaintiff had to receive food supplemental assistance in the State of Maryland as a

result of Defendant's breach of contract. Plaintiff also had to work 3 jobs at one time

after Defendant revoked her scholarship, and breached the scholarship contract.

Defendant's actions forced Plaintiff to resign from the DC Office of Human Rights. As a

result, the MD Bar asked Plaintiff if she had "attendance issues" relating to her job at the

DC Office of Human Rights, when in actuality, she had to resign because of Defendant's

fraud and breach of contract. Defendant Walsh's actions caused the bar to be doubtful of

Plaintiff's character and fitness for admission to the MD bar.

168.     Defendant's breach of contract continues to materially harm Plaintiff as she has been reported as delinquent to credit agencies as a result of their Defendant's unilateral revocation of Plaintiff's scholarship in retaliation for complaining of race and/or sex discrimination at Defendant University.

## COUNT VIII - DEFAMATION

169.     Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety. Plaintiff restates and realleges the allegations contained both above and below as contained therein.

170.     From November 2022 to the date of this complaint, Defendant has engaged in a pattern of spreading false and defamatory statements labeling Plaintiff a threat and harassing to Defendant University concerning Plaintiff through unprivileged publications to third parties including but not limited to the Bar Associations of various jurisdictions, resulting in fault amounting at least to Defendant's negligence.

171.     Defendants transmitted and publicized harmful and untrue statements about Plaintiff to various third parties, and defamed Plaintiff within every single document that Defendant produced regarding Plaintiff; Defendant has furnished defamatory messages to several bar associations, the American Bar Association, to federal investigators at the US Department of Education and FAFSA's Ombudsman Office.

172.     Defendants continue to transmit harmful and untrue messages about Plaintiff to prospective employers and other entities in the legal profession. Plaintiff's harm will continue until this Court acts to impose damages on Defendant.

## COUNT IX - 42 USC 1985 - CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS

173.      Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety. Plaintiff restates and realleges the allegations contained both above and below as contained therein.

174.      By committing the foregoing act of a conspiracy against Plaintiff's rights, Defendants injured, oppressed, threatened, and intimidated Plaintiff from exercising her rights guaranteed under the 5th and 14th Amendment in violation of Section 1985.

## COUNT X - TITLE IX

175.      Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety. Plaintiff restates and realleges the allegations contained both above and below as contained therein.

176.      Defendant, a recipient of federal funding, had actual knowledge of Plaintiff's receipt of a rape contract from a fellow classmate at Defendant, and request for rituals involving semen and blood from a classmate and acted with deliberate indifference to the harassment and discrimination. Furthermore, Plaintiff was retaliated against by Defendant in numerous actions against her, including but not limited to being labeled a threat to the University community, suspended without cause, and stripped of her scholarship for engaging in protected activity and complaining to Defendants Walsh, Angela Smith, Peggy Smith, and Kamimura-Jimenez of the same.

177.      Plaintiff requests all damages allowable by law.

## COUNT XII - SECTION 1983

178.      Plaintiff incorporates by reference the above paragraphs as if set forth herein in their entirety.  Plaintiff restates and realleges the allegations contained both above and below as contained therein.

179.      By using the force of arrest and the color of state law to force Plaintiff out of her

apartment and back into the state of Maryland in retaliation for complaining of race

and/or sex discrimination, Defendants have acted under the color of state law.

180.      The Fourth Circuit has held that private security officers licensed by the state, as

Wash U's police force is, and having plenary arrest powers, which Wash U's police force

does, are properly deemed to act "under color of law" in a suit brought pursuant to

Section 1983.  Defendants' police force was given instruction, per Plaintiff's suspension

letter and the map of their patrol premises, to arrest Plaintiff in retaliation for

complaining of racial and sexual discrimination, constituting a breach and violation of

her 5th, and 14th Amendment rights. Wash U's police force is a state actor because they

were armed, and possessed the same arresting authority enjoyed by the police.

181.      Plaintiff requests further discovery in order to further establish that Defendants

acted under the color of state law in threatening Plaintiff with arrest in connection with

her retaliatory suspension, and for Defendants to be charged in both their individual and

official capacity with respect to their retaliatory actions against Plaintiff.

**COUNT XI - AMENDMENT V and XIV OF THE US CONSTITUTION**

182.      Plaintiff incorporates by reference the above paragraphs as if set forth herein in

their entirety.  Plaintiff restates and realleges the allegations contained both above and

below as contained therein.

183.      As private actors that receive federal funding, Defendants are subject to the 5th

and 14th Amendment. By interfering with Plaintiff's property interest in her education

and committing the foregoing acts of discrimination and retaliation against Plaintiff based

on her race, sex and Plaintiff's complaints of racial and sex discrimination, Plaintiff has

been deprived of due process and her rights under the 5th and 14th Amendments.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant:

(a) declaring the acts and practices complained of herein to be a violation of Title VI; Title VII; and/or Title IX; declaring the acts and practices complained of herein to be in violation of Section 1981; Section 1983, and/or Section 1985 and the 5th and 14th Amendments;

(b) declaring the acts and practices complained of herein to be in violation of the common law of the State of Maryland in addition to Plaintiff's breach of contract and tort claims;

(c) entering judgment against Defendant and in favor of Plaintiff in an amount to be determined; enjoining and restraining Defendant's collections actions and the violations alleged herein; awarding compensatory damages to Plaintiff for past and future emotional upset, mental anguish, humiliation, loss of life's pleasures, and pain and suffering; to make Plaintiff whole for all past and future lost earnings, benefits, and earning capacity, which Plaintiff has suffered and will continue to suffer as a result of Defendants' discriminatory, retaliatory, and unlawful misconduct; awarding Plaintiff costs of this action, together with reasonable attorney's fees; awarding liquidated and punitive damages to Plaintiff; awarding Plaintiff such other damages as are appropriate; and granting such other and further relief as this Court deems appropriate.

Respectfully submitted,

Allison Brown, Plaintiff

40

**Exhibit List**

Exhibit A - Richard O Contract

Exhibit B - Finding of Not Responsible - Title IX

Exhibit C - Screenshots Regarding Allison Brown's hiring by Professor Davis in September 2022; Screenshots grabbed from Workday on 11/3/2024 at 5:30pm

Exhibit D- Suspension Letter from Defendant to Plaintiff

Exhibit E - Defendant Conclusion of Investigation with Erroneous Assertions Therein

Exhibit F - Release of All Claims and Non Disparagement Agreement with Defendant

Exhibit G - SCB Determination

Exhibit H - Scholarship Letters and Issues from Defendant Carrie Burns to Plaintiff

Exhibit I - Letters and Correspondence from Plaintiff's Mother to Defendant Law School

Exhibit J - Forchetti Denial of Defendant Racial Discrimination

Exhibit K - E-mails and Correspondence from Defendants Re: Racial Discrimination

Exhibit 77 – MAP of Wash U Police Department and Plaintiff's Apartment

Exhibit A - Richard O Contract 1



Exhibit A - Richard O Contract 2



Richard sent this agreement to Plaintiff, and signed Plaintiff's name with a hippo emoji. Plaintiff

never signed an agreement with Richard to be raped at will. Richard O characterized this as a

"private conversation" he had with Plaintiff during Defendant Law School's Title IX

proceedings.

**Exhibit B** - Finding of Not Responsible of Sexual Harassment of Richard O and Letter from

Defendant Refusing to Investigate Richard O

## Washington University in St.Louis
### GENDER EQUITY AND TITLE IX COMPLIANCE OFFICE

January 11, 2022

PERSONAL AND CONFIDENTIAL
VIA E-MAIL

Allison Brown
allison.brown@wustl.edu

Dear Ms. Brown,

I am writing to follow up on the Amended Notice of Complaint sent to you on November 12, 2021, regarding your interactions with Richard Omoniyi-Shoyoola from August 26, 2021, through October 8, 2021, and from October 13, 2021, through November 4, 2021. After an investigation, including interviewing parties and witnesses, considering all the information provided, you have been found not responsible for the following violations of the University Student Conduct Code:

> University Student Conduct Code/4. Stalking, hazing, engaging in domestic, dating, or interpersonal violence, or any other conduct which harasses, threatens, or endangers the safety or health of, any member of the University community or visitor to the University.

> University Student Conduct Code/2. Interfering with the rights of other members of the University community or visitors to the University to engage in educational, recreational, residential, administrative, professional, business, and ceremonial activities, or other functions

> University Student Conduct Code/20. Knowingly or recklessly violating a published University policy, rule, or regulation; or participating in conduct which one should reasonably know to be a violation of a published University policy, rule, or regulation.

Investigator Fischer interviewed you, the Complainant and two witnesses. I based my decision on these interviews as well as the extensive documentation provided by the parties and witnesses. Specifically, I find that between August 26, 2021, and October 8, 2021, it is not more likely than not that you harassed Complainant or interfered with his rights as a member of the university community.

Complainant described two specific incidents of in-person contact in his initial complaint. The first incident on August 27, 2021, was observed by an independent witness. They recalled you expressing displeasure to Complainant and to others. The witness did not, however, remember you calling the Complainant any derogatory names or making comments that were sexual in nature. During the second incident, on the evening of August 28th into the early morning of August 29th, 2021, Complainant stated that you sexually propositioned him and then became

**Exhibit B** - Finding of Not Responsible of Sexual Harassment of Richard O and Letter from

Defendant Refusing to Investigate Richard O



**Washington University in St. Louis**

GENDER EQUITY AND TITLE IX COMPLIANCE OFFICE

angry when he declined your advances. You denied that the conversation took place. No
independent witnesses to this specific conversation were identified. Witness interviews and
documentation do show that you and Complainant left the social gathering that evening together
in a rideshare that you arranged. Complainant paid you the following morning for a portion of
the cost. The information available does not corroborate that you said or did anything that was
harassing or interfering with Complainant's rights.

The initial complaint also alleged several instances of unwanted electronic contact between
August 26th and September 4th, 2021. Complainant acknowledged that he did not specifically tell
you he wanted to have no contact with you during that time. He did say that he blocked you on
several communication platforms. Documentation provided shows you were aware that
Complainant had blocked you from some forms of communication during that time.
Documentation also shows, however, that during the time you and Complainant had been
acquainted, it was not uncommon for one or both of you to block the other from certain
platforms, but maintain consensual communication by other means. It is not clear from the
information provided, based on the history of your communication, that you knew all
communication with Complainant during that time was unwanted. Further, additional
documentation shows that Complainant continued to initiate in-person communication with you
during the same period. None of your communications directed at Complainant during that time
were harassing or interfering with Complainant's rights.

Complainant filed a second complaint alleging that you retaliated against him for filing his initial
complaint and requesting a No Contact Order against you. Specifically, he reported that social
media posts you made between October 13th and November 4th, 2021, were retaliatory. During
that timeframe, Complainant was blocked from your social media sites and did not view these
posts directly. None of the posts in question mentioned Complainant by name, "tagged" him or
otherwise identified him. Based on the content of these posts and the fact that they were posted
on a forum that Complainant was prohibited from viewing, they are not retaliatory. Specifically,
I do not find that they adversely affected the terms of Complainant's education.

Overall, the totality of information provided to our office is insufficient to find you in violation
of the University Student Conduct Code or any other university policy. The No Contact Order
previously issued, however, remains appropriate and in place. You are directed to abide by the
restrictions in that Order until further notice.

Ms. Brown, we truly want you to succeed in your remaining time at Washington University in
St. Louis and hope we can be supportive of your efforts. Not abiding by the No Contact Order
will result in further action and/or referral to the Office of Student Conduct and Community
Standards. If you have any questions about this letter, or if we can be of any assistance to you,
please feel free to contact our office.

**Washington University in St. Louis**

GENDER EQUITY AND TITLE IX COMPLIANCE OFFICE

Sincerely,

/s/ Cynthia M. Copeland

Cynthia M. Copeland, J.D.
Assistant Director & Associate Title IX Coordinator

Cc:  Ms. Jessica W. Kennedy, Director, Gender Equity and Title IX Compliance Office & Title
      IX Coordinator
      Mr. Richard Omoniyi-Shoyoola, Complainant

Exhibit B - Finding of Not Responsible of Sexual Harassment of Richard O and Letter from

Defendant Refusing to Investigate Richard

## Washington University in St.Louis

### GENDER EQUITY AND TITLE IX COMPLIANCE OFFICE

July 5, 2022

PERSONAL AND CONFIDENTIAL
VIA E-MAIL

Ms. Brown
allison.brown@wustl.edu

Dear Ms. Brown,

After reviewing the information in the complaint you submitted on May 9, 2022, I have determined that the reported behaviors do not constitute Prohibited Conduct under the Title IX definition of Sexual Harassment. Therefore, the university has determined the matter should be dismissed as a Title IX complaint.

Further, after reviewing the documentation you submitted with your complaint, as well as your interview conducted by our investigator and the interview of an additional witness, I have determined that the conduct you allege does not rise to the level of a potential violation of the student conduct code or other university policy. Therefore, the complaint will also be dismissed as a Gender Equity complaint.

Specifically, regarding the allegations of repeated unwanted contact, **documentation** shows that, during the time you and Respondent had been acquainted, it was not uncommon for one or both of you to block the other from certain platforms or ask not to be contacted, but maintain consensual communication by other means. It is not clear from the information provided, based on the history of your communication, that Respondent knew his contact with you prior to the No Contact Orders was unwanted.

Regarding Respondent filing complaints with our office and the Office of Student Conduct and Community Standards (OSCCS), investigations of those complaints did not support a finding that Respondent's complaints were frivolous or false, even though you were found not responsible. Respondent is entitled to seek an Order of Protection through the courts, and did not violate the Student Conduct Code by doing so.

Regarding the potential charges of physical abuse and sexual assault, you alleged one instance of unwanted physical contact, the respondent placing his hands on your waist/hips following a party at his apartment. Based on the information and documentation we have, this contact did not rise to the level of either physical abuse or sexual assault. You also cite a text sent by the Respondent containing a proposed promise of physical affection and sexual activity. The information and documentation provided to us do not demonstrate any threats or other attempts

Exhibit B - Finding of Not Responsible of Sexual Harassment of Richard O and Letter from

Defendant Refusing to Investigate Richard O

## Washington University in St. Louis
### GENDER EQUITY AND TITLE IX COMPLIANCE OFFICE

to have you agree to or abide by this promise. This does not rise to the level of a threat of physical abuse.

The allegation about the University of Chicago, if true, does not constitute a violation of the Code.

The No Contact Orders put in place on October 13, 2021, remain in effect. If you are in need of additional supportive measures, please let me know.

You have a right to appeal this dismissal. Your right to appeal is detailed in our Student Title IX Grievance Process under section 37. The Process can be found here:
https://titleix.wustl.edu/students/student-title-ix-grievance-process/

If you have any questions about this letter, or if we can be of assistance to you, please feel free to contact the Gender Equity and Title IX Compliance Office.

Sincerely,
/s/ Cynthia M. Copeland
Cynthia M. Copeland, J.D.
Asst. Director & Assoc. Title IX Coordinator

Cc: Ms. Jessica W. Kennedy, Director & Title IX Coordinator

Exhibit C - Screenshots Regarding Allison Brown's hiring by Professor Davis in September 2022

Screenshots grabbed from Workday on 11/3/2024 at 5:30pm



Exhibit D- Suspension Letter from Defendant to Plaintiff



Washington University in St. Louis

STUDENT AFFAIRS

**Associate Vice Chancellor for Student Affairs and Dean of Students**

November 4, 2022

Allison Brown
allison.brown@wustl.edu

Dear Allison,

I was recently contacted by the School of Law, which alleges that you have engaged in a pattern of disruptive and harassing behavior targeted at law school community members, including faculty and students. Specifically, you are reported to have been disruptive in multiple classes and to have generally engaged in unprofessional and harassing behavior that interferes with or prevents faculty members and students from fully participating in the learning environment. These allegations are concerning and, if true, they would violate our University Student Conduct Code.

Your continued presence on campus poses a substantial threat to the ability of faculty and other students to continue their normal University functions and activities. Therefore, by authority granted by the University Student Conduct Code Section X.A., I must notify you that you are temporarily suspended from Washington University.

**Effective immediately, you are no longer permitted on campus. You will be permitted to complete your classes remotely, as noted below.**

The terms of this temporary suspension, which takes effect immediately, are as follows:

1. You are prohibited from being present on any Washington University campus or any University leased or owned property, including but not limited to the Danforth Campus, the School of Law, any Residential Life-managed on and off-campus residence halls and apartments, and the Danforth University Center and the Athletic Complex. If you are found in violation of these expectations, you will be physically removed from campus and subject to arrest by Washington University Police. If you wish to be present on campus for any reason, including to visit Habif Health and Wellness Center +you must seek prior approval from me.
2. You are prohibited from participating in any University activities, with the exception of courses that will be recorded for you. This means, for example, that you are not permitted to participate in student organizations that you may belong to.
3. Your ongoing participation in courses will be through asynchronous viewing of class recordings. Any questions you have for the instructor must be in writing and delivered through Dean Elizabeth Walsh. Dean Walsh will work with the instructor to provide responses to your questions.
4. If you wish to meet with me under Section X D. to discuss this temporary suspension, you should do so within five business days from receiving this notice. Please call my office at 314-935-4526 to make an appointment and secure permission to be present on campus.

Washington University in St. Louis, Campus Box 1250, One Brookings Drive, St. Louis, MO 63130-4899
(314) 935-4329, *Fax:* (314) 935-7776, studentaffairs.wustl.edu

Exhibit E - Defendant Conclusion of Investigation with Erroneous Assertions Therein



OFFICE OF INSTITUTIONAL EQUITY

Date:    May 7, 2024

To:      Allison Brown

From:    Gillian Boscan, Director of Investigations

Re:      Investigation Conclusion

We received the complaint you filed on March 18, 2024 alleging discrimination and retaliation against you. The investigation into this complaint has now concluded. Investigation findings are based on interviews and a review of all available, relevant evidence. You declined OIE's invitation to meet and provided little follow-up or new evidence to support the allegations. Some investigation findings may pertain to personnel matters that are kept confidential and therefore cannot be shared.

The allegations and subsequent investigation results do not support a finding of violation of the university's Discrimination and Harassment policy. The decision to temporarily suspend you in order to review allegations through the Office of Student Conduct was not based on your race but on feedback from multiple sources about concerning behaviors. The process was not as rapid as originally planned because you requested to delay the hearing from December to February. The temporary suspension did not preclude you from completing coursework and you received a favorable outcome from the hearing.

The decision to charge you tuition followed standard university procedures and was not based on race or a retaliatory purpose. The Washington University School of Law 2023-2024 Financial Aid Handbook, pages 11-12, outlines the School's tuition practice for law students visiting at another law school. This information applies to all students visiting other law schools, regardless of membership in a protected class or participation in Office of Student Conduct procedures.

The university prohibits retaliation against those who file complaints and those who participate in resulting investigations.

Washington University in St. Louis, 621 N. Skinker Blvd., St. Louis, Missouri 63110
An Equal Opportunity/Affirmative Action Employer

50

Exhibit E - Defendant Conclusion of Investigation with Erroneous Assertions Therein



Student Conduct and
Community Standards
STUDENT AFFAIRS AT WASHINGTON UNIVERSITY

January 20, 2023

Allison Brown                                              **PERSONAL AND CONFIDENTIAL**
Allison.brown@wustl.edu                                          Via Electronic Mail

Re: Student Conduct Matter and Options for Resolution

Dear Allison:

As you are aware, this office received a complaint from the School of Law alleging that you have
engaged in a pattern of disruptive and harassing behavior inside and outside of the classroom
in violation of the University Student Code of Conduct. The School of Law alleges that some of
this conduct began prior to your matriculation and continued during the Spring and Fall 2022
semesters, even after faculty and administrators communicated with you regarding concerns
about your behavior. Specifically, the School of Law alleges that it received reports from
multiple students and faculty that:

1. Students do not feel comfortable participating in classes they share with you because you have
   posted derogatory and inflammatory remarks about your classmates and their class-related
   comments on social media;
2. You have engaged in a pattern of attacking students on social media who do not share your
   views or with whom you disagree;
3. You have engaged in similarly disruptive behavior in class and on course instruction platforms;
   and
4. One student reported that they did not feel comfortable meeting in person with Dean Walsh
   because they had heard you knew who came to Dean Walsh's office.

The School of Law alleges that as a result of your behavior, students have been unable to fully
participate in the law school classroom and in extracurricular activities, and law school
community members have been impeded in their ability to engage in educational,
administrative, professional and other functions.

These allegations, if true, would be a violation of one or more of the following offense(s):

University Student Conduct Code/2. Interfering with the rights of other members of the
University community or visitors to the University to engage in educational, recreational,
residential, administrative, professional, business, and ceremonial activities or other functions.

University Student Conduct Code/4. Stalking, hazing, engaging in domestic, dating, or
interpersonal violence, or any other conduct which harasses, threatens, or endangers the safety
or health of, any member of the University community or visitor to the University.

1

Exhibit F - Release of All Claims and Non Disparagement Agreement with Defendant



The School of Law has agreed to withdraw its complaint and settle this matter, in lieu of proceeding forward with a University Student Conduct Board hearing, subject to the terms and conditions below:

1. Allison Brown will complete the Spring 2023 semester through an off-campus externship or other non-campus program that qualifies for the School of Law credits and by enrolling in Legal Practice II remotely.[1] To enable Allison to do so, the School of Law will allow Allison to work for the appropriate number of credits at the National Center for Youth Law and/or the United Nations Permanent Forum for People of African Descent per the terms of the previously-submitted offer letters. The School of Law will also allow Allison to receive a stipend from her employers in addition to the academic credit granted through the School of Law. The School of Law will identify the Legal Practice II instructor and enroll Allison in that course.

2. Allison Brown will apply for admission as a visiting student to other law schools to complete her third year of law school. If Allison enrolls at another law school as a visiting student, the School of Law will grant her leave as needed.

3. The School of Law will review all courses in which Allison Brown enrolls at another accredited law school. So long as Allison earns the equivalent of a "C" or higher, the course meets a School of Law degree requirement, and the course is not duplicative of any course Allison has already taken, the School of Law will not unreasonably withhold acceptance of the associated transfer credits. Barring unusual or atypical circumstances, accurate and equivalent categorization of a course at a different law school will generally indicate that the course will fulfill School of Law degree requirements. The School of Law will review any courses in which Allison indicates an intention to register at or before the time of registration to confirm that each such course would fulfill School of Law degree requirements and would be eligible for transfer credit if successfully completed.

4. Assuming Allison Brown successfully completes the School of Law's requirements for a J.D. by the end of the 2023-2024 academic year, including an ethics course and a seminar, Allison will receive a J.D. from the School of Law.

5. Allison Brown will be allowed to enroll in classes at the School of Law for one semester during the 2023-2024 academic year to complete her law degree remotely[2] if and only if (i) Allison is not accepted into a visiting student or study abroad program at another law school and (ii) she demonstrates to the School of Law's satisfaction that she has made

---

[1] Remote enrollment will be asynchronous and/or synchronous as determined by the course instructor.
[2] See footnote 1.

2

Exhibit F- Release of All Claims and Non Disparagement Agreement with Defendant



systematic, sustained and diligent efforts to obtain admittance elsewhere.[3] In the event that Allison is allowed to enroll in classes at the School of Law for one semester during the 2023-2024 academic year, Associate Dean Elizabeth Walsh will work with her to insure that she enrolls in courses that are appropriate for remote, asynchronous learning.

. Allison Brown will not attend any Washington University sponsored events and will notbe permitted on the Washington University campus (or any university owned, leased,managed or rented property) without advance permission. Permission must be soughtthrough Associate Dean Elizabeth Walsh or Dean of Students Rob Wild.

. In the event Allison Brown returns to the School of Law in the 2023-2024 academic year (orwith regards to Legal Practice II), she will not take any course taught by ProfessorsAdrienne Davis, Elizabeth Katz, Ann Shields or Peggie Smith.

. Allison Brown will not contact any student who was named as a witness or identified inany School of Law exhibits, including emails, in the 2022 Student Conduct Proceeding.

. As Allison Brown continues her work toward her School of Law degree, she will continueto pay tuition and fees to the School of Law. Allison will also maintain her meritscholarship, which shall be credited toward her School of Law tuition and fees. In theevent Allison attends an institution as a visiting student with tuition and fees greaterthan the School of Law's, she will be solely responsible for any difference.

. <u>Release</u>
Allison Brown, for herself and her family members, heirs, personal representatives, and assigns, hereby releases and forever discharges Washington University in St. Louis, including the School of Law, its trustees, employees, former employees, faculty, administrators, students, representatives, insurers, attorneys, agents, and assigns ("Released Parties") from and against any and all causes of action, judgments, liens, indebtedness, costs, damages, obligations, attorneys' fees, losses, claims, liabilities and demands of whatever kind and character, whether known or unknown, suspected or unsuspected, and whether based on contract, tort, statutory or other legal or equitable theory of recovery, that she now has or may have had, or hereafter may claim to have, on behalf of herself or any other person or entity, including but not limited to claims arising out of or relating in any way to the Student Conduct Proceeding, the temporary suspension and/or Allison Brown's attendance at the School of Law. Allison Brown further promises to not initiate any proceeding (including, without limitation, under any School

[3] American Bar Association Standard 311(e) allows law schools to grant up to 1/3 of the credits required for a J.D. through distance education. Thus, Allison may complete two of her remaining three semesters asynchronously. At least one semester must be completed through a School of Law study abroad program or as a visiting student at another law school.

3

53

Exhibit F - Release of All Claims and Non Disparagement Agreement with Defendant



of Law policy or procedure, other administrative action, or other legal action) arising out of or relating to the Student Conduct Proceeding, the temporary suspension and/or Allison Brown's attendance at the School of Law, against the Released Parties.

   11. <u>Non-Disparagement</u>
      Allison Brown agrees that she will not hereafter publish to any other person or entity, either orally or in writing, including, but not limited to the news media, any social media platform, through the internet, U.S. Postal Service or any other commercial mailing, and/or any other type of hard copy or online publication, even on an anonymous basis, any disparaging or negative statements about the Released Parties.  It is understood that the School of Law administration will answer truthfully any inquiries they receive regarding Allison Brown from other academic institutions, bar examiners or government officers. However, the School of Law administration will not affirmatively reach out to any such parties and will limit any response it provides to the specific inquiry received. If Allison Brown violates any of the provisions of this paragraph, such shall be a material breach of this agreement and cause for the Released Parties to seek legal and/or equitable remedies against her.

   12. Upon receipt of the final signed agreement, School of Law will withdraw the pending student conduct complaint and remove any notation related to that complaint from Allison Brown's transcript.

If you do not wish to agree to the terms and conditions above, you may choose to continue to proceed with the Student Conduct Board hearing process under the University Student Conduct Code.

Please let me know how you wish to proceed.  If you choose to accept the terms and conditions above, I ask that you sign, date, and return this document to me.  Please keep a copy and maintain it for your records.  If you choose to proceed with a Student Conduct Board hearing, we will work with your attorney to set up an appropriate time.

Sincerely,

Nicole Gore
Associate Dean

cc: Elizabeth Walsh, Associate Dean
    Rob Wild, Associate Vice Chancellor and Dean of Students

4

Exhibit F - Release of All Claims and Non Disparagement Agreement with Defendant



Student Conduct and
Community Standards
STUDENT AFFAIRS AT WASHINGTON UNIVERSITY

### Acknowledgement

I acknowledge that I have read and accept the terms and conditions set forth above. I acknowledge that this agreement is a means to formally and mutually resolve the pending University student conduct matter.

_____                    _____

Allison Brown                                                        Date

Student ID # 503456

Exhibit G- SCB Determination



STUDENT AFFAIRS AT WASHINGTON UNIVERSITY

**CONFIDENTIAL**

**UNIVERSITY STUDENT CONDUCT BOARD**

**WASHINGTON UNIVERSITY IN ST. LOUIS**

**April 27, 2023**

**In the matter of Allison Brown**
**Case No. 00748-2002**

### DECISION OF THE UNIVERSITY STUDENT CONDUCT BOARD

In this matter, a complaint was submitted to the Office of Student Conduct and Community Standards ("OSCCS") by the School of Law ("Complainant") against law student, Allison Brown ("Respondent"), alleging violations of Offense Nos. 2 and 4 of the University Student Conduct Code ("Code"). The Panel deliberated following the conclusion of Phase One and carefully weighed the evidence. Although the Panel has concerns about the Respondent's behavior and the abrasive choices she makes when interacting with others and online, ultimately the Panel determined there was not sufficient evidence to establish that it was more likely than not that the Respondent engaged in a violation of Offense Nos. 2 or 4 of the Code.

The Complainant alleged that as a result of the Respondent's behavior, students were unable to fully participate in the law school classroom and in extracurricular activities, and law school community members were impeded in their ability to engage in educational, administrative, professional and other functions. The Complainant alleged that the Respondent's actions and resulting impact constitute a violation of Offense numbers 2 and 4 under the University Student Conduct Code.

The Respondent denied the allegations.

***Procedural Background***

A hearing before the Student Conduct Board ("SCB" or "Panel") was originally scheduled for December 15, 2022 to determine whether a violation of the Code occurred. At the Respondent's request, it was rescheduled.

Phase One of the hearing took place over four different days, (February 24, March 20, April 5, April 11). During Phase One, the Panel heard evidence and considered whether it was more likely than not that the Respondent engaged in one or more violations of the Code. Under the Code, the Respondent is presumed innocent of the alleged violations.

***Relevant Provisions of the University Student Conduct Code Offenses***

University Student Conduct Code/2. Interfering with the rights – Interfering with the rights of other members of the University community or visitors to the University to engage in educational, recreational, residential, administrative, professional, business, and ceremonial activities or other functions.

University Student Conduct Code/4. Harassment, Stalking, Hazing, etc. – Threatening physical abuse, stalking, hazing, engaging in domestic, dating, or interpersonal violence, or any other conduct which harasses, threatens, or endangers the safety or health of any member of the University community or visitor to the University.

Exhibit H - Scholarship Letters and Issues from Defendant Carrie Burns to Plaintiff

8/15/23, 11:56 PM                                    University of Michigan Mail - WashULaw 2023-24 Financial Aid



Allison Brown <albsure@umich.edu>

## WashULaw 2023-24 Financial Aid
4 messages

finance@wulaw.wustl.edu <finance@wulaw.wustl.edu>                    Thu, Jul 27, 2023 at 3:22 PM
To: albsure@umich.edu



### SCHOOL OF LAW

Financial Aid

To:    Allison S. Brown
       2000 Flourmill Court
       Crownsville, MD 21032

From:  Carrie Burns, Director of Financial Aid and Student Life, School of Law
       *cjburns@wustl.edu* | *(314) 935-4605*

Date:  July 27, 2023

The Financial Aid Committee reviewed your application for assistance and makes the following aid offer for
the entire 2023-2024 academic year.  Your offer is based on full-time student status.

| Source | Fall | Spring | Total |
|---|---|---|---|
| Washington University Law Scholarship | $18,500 | $18,500 | $37,000 |
| Federal Direct Unsubsidized Loan | $10,250 | $10,250 | $20,500 |
|  | ------- | ------- | ------- |
| Total | $28,750 | $28,750 | $57,500 |

https://mail.google.com/mail/u/0/?ik=6b8d8864bc&view=pt&search=all&permthid=thread-f:1772580171413544272&simpl=msg-f:1772580171413544272&simpl=...    1/3

Exhibit H- Scholarship Letters and Issues from Defendant Carrie Burns to Plaintiff

Tuition and [obscured] 7,744.

mailto:albsure@umich.edu

**To accept your Financial Aid offer, please complete the following steps:**

| |
|---|
| 1) Visit netpartner.wustl.edu. Use your WUSTL Key ID and Password to log in. Select 'Accept Offer' in the top left side menu. |
| 2) Provide all required documents listed in 'Documents & Messages'. |

If your aid offer includes the Federal Direct Graduate PLUS loan you will need to visit Federal Student Aid and complete the Graduate PLUS application.

If you have questions about your aid offer, please contact me to schedule a time to discuss the details, including whether a reduction or increase of your loan amount is most appropriate, as well as repayment strategies and next steps. Each student faces unique obligations and factors that impact the appropriate loan amount. I look forward to assisting you throughout this process.

---

**Allison Brown** <albsure@umich.edu>                    Thu, Jul 27, 2023 at 3:23 PM
To: brownandrussell <Brownandrussell@verizon.net>

[Quoted text hidden]
--
Allison S. Brown
Civil Rights and Immigration Policy, Ford School of Public Policy
University of Michigan, Ann Arbor
J.D. Candidate, Class of 2024
Washington University in St. Louis School of Law
allison.brown@wustl.edu | albsure@umich.edu
https://www.linkedin.com/in/allisonsbrown/

---

**Allison Brown** <albsure@umich.edu>                    Thu, Jul 27, 2023 at 4:59 PM
To: brownandrussell <Brownandrussell@verizon.net>

Get Outlook for iOS

**From:** finance@wulaw.wustl.edu <finance@wulaw.wustl.edu>
**Sent:** Thursday, July 27, 2023 9:22:47 AM
**To:** albsure@umich.edu <albsure@umich.edu>
**Subject:** WashULaw 2023-24 Financial Aid

Exhibit H- Scholarship Letters and Issues from Defendant Carrie Burns to Plaintiff

**From:** Brown, Allison <allison.brown@wustl.edu>
**Date:** Tuesday, January 16, 2024 at 12:36 PM
**To:** Burns, Carrie <cjburns@wustl.edu>, LAW Financial Aid Office <finance@wulaw.wustl.edu>, CFU
Student Financial Services <Financial@wustl.edu>, LAW Accounting <Law-
accounting@wulaw.wustl.edu>
**Cc:** customerservice@studentaid.gov <customerservice@studentaid.gov>
**Subject:** Spring 2024 Tuition Inquiry - Allison Brown

Dear Financial Aid Office,

I received a Spring 2024 tuition bill and it does not reflect my scholarship and my Spring 2024 loan from FAFSA.

Please send me an updated bill with both of these reflected.

Sincerely,
Allison

Allison S. Brown | she/her/hers
Ford School of Public Policy, University of Michigan
Visiting Student, Georgetown University Law Center
J.D. Candidate, Washington University in St. Louis School of Law
allison.brown@wustl.edu | https://www.linkedin.com/in/allisonsbrown/

Exhibit H - Scholarship Letters and Issues from Defendant Carrie Burns to Plaintiff



**Washington University in St.Louis** WebSTAC            Allison Brown  Logout

Academics Billing & Bear Bucks Housing Courses & Registration Student Information

Allison Brown (ID: 503456)

Current Balance: $ 46582.22

This information is correct as of 1/14/2024 12:39:06 PM

### Activity for Spring 2024

|   | Sem | FY | Div | TCode | Description | Amount | Post Date | Tran Date | Bill Date |
|---|-----|----|----|------|-------------|--------|-----------|-----------|-----------|
| | | | | | Student Bar Association Fee | 60.00 | | | |
| | | | | | Student Health and Wellness Fee | 308.00 | | | |
| | | | | | Tuition | 33504.00 | | | |
| | | | | Spring 2024 Semester Total | 33872.00 | | | | |

### Activity for Fall 2023

|   | Sem | FY | Div | TCode | Description | Amount | Post Date | Tran Date | Bill Date |
|---|-----|----|----|------|-------------|--------|-----------|-----------|-----------|
| | | | | | Anticipated Federal Direct Loan, Unsubsidized (Stafford) | 0.00 | | | |
| | | | | | Anticipated WU Scholarships and Grants | 0.00 | | | |
| | | | | | Federal Direct Loan, Unsubsidized (Stafford) | (10142.00) | | | |
| | | | | | Student Bar Association Fee | 0.00 | | | |
| | | | | | Student Health and Wellness Fee | 0.00 | | | |
| | | | | | Student Health Insurance | 2500.00 | | | |
| | | | | | Tuition | 37975.00 | | | |
| | | | | | WU Scholarships and Grants | 0.00 | | | |
| | FL2023 | 2024 | LW | CASH | Cash Payment | (17455.02) | 7/31/2023 | 7/31/2023 | 7/31/2023 |
| | FL2023 | 2024 | LW | LFEE | Late Fee | 249.22 | 12/27/2023 | 12/27/2023 | 12/28/2023 |
| | | | | Fall 2023 Semester Total | 13127.20 | | | | |

### Activity for Spring 2023

|   | Sem | FY | Div | TCode | Description | Amount | Post Date | Tran Date | Bill Date |
|---|-----|----|----|------|-------------|--------|-----------|-----------|-----------|
| | | | | | Anticipated WU Scholarships and Grants | 0.00 | | | |
| | | | | | Parking Permit | (416.98) | | | |
| | | | | | Student Bar Association Fee | 60.00 | | | |
| | | | | | Student Health and Wellness Fee | 288.00 | | | |
| | | | | | Student Health Insurance | 1296.00 | | | |
| | | | | | Tuition | 32244.00 | | | |
| | | | | | WU Scholarships and Grants | (18500.00) | | | |
| | SP2023 | 2023 | LW | CASH | Cash Payment | (15388.00) | 1/10/2023 | 1/10/2023 | 1/31/2023 |
| | | | | Spring 2023 Semester Total | (416.98) | | | | |

Exhibit 77 - Police Patrol Zones



Signature Page

6405 Chew Road
Upper Marlboro, MD
301-875-2658