**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| ALLISON BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 8:24-cv-03198-TDC |
| ) | |
| WASHINGTON UNIVERSITY, et al., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION
TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE
ALTERNATIVE, FAILURE TO STATE A CLAIM**

**TABLE OF CONTENTS**

**INTRODUCTION** ............................................................................................................... 1

**ARGUMENT** ....................................................................................................................... 1

    **I.**    **MARYLAND STILL DOES NOT HAVE PERSONAL JURISDICTION OVER ANY DEFENDANT.** ................................................... 1

    **II.**    **PLAINTIFF CONTINUES TO FAIL TO STATE A CLAIM AGAINST ANY DEFENDANT.** ........................................................................... 3

        **A.**    Conspiracy to Interfere with Civil Rights (Count IX) ............................ 4

        **B.**    Title IX (Count X) ...................................................................................... 5

        **C.**    Fifth and Fourteenth Amendments to the United States Constitution (Count 11) ............................................................................... 7

        **D.**    Section 1983 (Count XII) ........................................................................... 8

**CONCLUSION** ................................................................................................................... 8

**INTRODUCTION**

During the April 25, 2025 Case Management Conference, the Court accepted Plaintiff's proffered Second Amended Complaint (ECF No. 48) as the operative Complaint and held that Defendants' previously filed motion to dismiss (ECF No. 33) and the related briefing would be construed as a motion to dismiss the Second Amended Complaint. (*See* Order, ECF No. 55.) The Court, however, permitted Defendants to file this supplemental brief in support of their motion to dismiss for the purpose of addressing any new or amended claims in the Second Amended Complaint. (*Id.*) In this supplemental brief, Defendants first address the effect of Plaintiff's revisions on Defendants' personal jurisdiction arguments. After explaining why the revisions do not establish personal jurisdiction, Defendants then explain why the Second Amended Complaint also fails to state a claim.

**ARGUMENT**

**I.    MARYLAND STILL DOES NOT HAVE PERSONAL JURISDICTION OVER ANY DEFENDANT.**

In her Second Amended Complaint, Plaintiff adds three new jurisdictional facts, none of which is sufficient to establish personal jurisdiction over any Defendant.

First, Plaintiff alleges that she "submitted" her application to Washington University ("WashU") from Maryland in February 2021. (Second Am. Compl. ¶ 27, ECF No. 48.) Similarly, Plaintiff adds the allegation that WashU "continuously recruits students, including Plaintiff" who are "from the state of Maryland." (*Id.* ¶ 4.) Plaintiff does not, however, offer any factual allegations concerning any activities WashU engaged in to recruit *her* (let alone where such recruitment activities allegedly took place). Moreover, as explained previously, "[w]hatever argument might be made in favor of personal jurisdiction over nonforum commercial establishments that advertise for Maryland customers, the same cannot be said of a nonforum

1

university." *Hardnett v. Duquesne Univ.*, 897 F. Supp. 3d 920, 924 (D. Md. 1995). (*See* Def.s' Mem. Supp. Mot. Dismiss at pp. 8-9, 12, 14-15, ECF No. 33-1.) Thus, these allegations do not support an exercise of personal jurisdiction over Defendants.[1]

Second, Plaintiff baldly asserts that the Student Conduct Board hearing took place "in Maryland." (Second Am. Compl. ¶¶ 20, 36.) To the extent this allegation could be understood to assert that the hearing physically took place in Maryland, it is not plausible. *Cf.* Fed. R. Civ. P. 11(b)(3). Plaintiff's allegations and attached exhibits themselves show that the WashU hearing panel took evidence over the course of four days from students and staff. (Second Am. Compl. ¶¶ 56, 93, 98, 100, 102-03, 107, 109, 112-13, 116; *see also id.* at 92 (alleging that Plaintiff has "never" returned to campus since she was temporarily suspended in November 2022).) Absent a pleaded explanation for how that could have happened in Maryland, the Court should not take as true the allegation to the extent it could read to assert that the hearing physically took place in Maryland. To the extent that Plaintiff implies that she participated in the hearing remotely from Maryland (*see* Pl.'s Memo. Opp'n Mot. Dismiss at 7 (explaining that the hearing took place over Zoom and that she participated remotely from Maryland)), such an allegation also does not impact the personal jurisdiction analysis. The hearing "occurred in Missouri regardless of whether Plaintiff heard it in Missouri or in [Maryland]." *Lefebvre v. Washington Univ.*, No. 20C4928, 2021 WL 197388, at *2 (N.D. Ill. Jan. 20, 2021).

Third, Plaintiff claims that she was "constructively evict[ed]" from her St. Louis apartment, causing her to "fle[e]" to Maryland. (Second Am. Compl. ¶ 86.) To support this outlandish claim, she points to her suspension letter, which stated that Plaintiff was "prohibited from being present

---

[1] WashU's recruitment activities are certainly irrelevant to the personal jurisdiction analysis as it pertains to the Individual Defendants. (*See* Def.s' Mem. Supp. Mot. Dismiss at 12.)

2

on any Washington University campus or any University leased or owned property, including but not limited to the Danforth Campus, the School of Law, any Residential Life-managed on and off-campus residence halls and apartments, and the Danforth University Center and the Athletic Complex." (*See id.* at Exhibit D.) She claims that Defendants constructively evicted her from her privately owned, off-campus apartment because this privately owned, off-campus apartment is located within an off-campus patrol zone. (*Id.* ¶ 86; *see also id.* at Exhibit 77.) But the fact that the Washington University Police Department patrols the neighborhoods surrounding campus does not transform these neighborhoods into WashU property. By the suspension letter's plain terms, Plaintiff was prohibited from campus and University property, not her private, off-campus apartment. Plaintiff's "constructive eviction" argument fails at its premise.[2]

With these additional observations, Defendants stand on their previous briefing, which explains why this Court lacks personal jurisdiction.

## II. PLAINTIFF CONTINUES TO FAIL TO STATE A CLAIM AGAINST ANY DEFENDANT.

If the Court denies the motion to dismiss for lack of personal jurisdiction and proceeds to the merits, the Court should nevertheless dismiss the Second Amended Complaint for failure to state a claim upon which relief can be granted. Defendants stand on their previous briefing with respect to the following claims: Title VII (Count I), Title VI (Count II), Section 1981 (Count III), Fraud and Unjust Enrichment (Count IV), Intentional Infliction of Emotional Distress (Count V), Negligence (Count VI), Breach of Contract (Count VII), Defamation (Count VIII). The Second

---

[2] For the sake of argument, even if Plaintiff *had* lived on campus and *was actually* evicted from an on-campus apartment, those facts would not support personal jurisdiction in Maryland. A Missouri university's eviction of a student from an apartment in Missouri cannot fairly be deemed an "activit[y] directed at" Maryland. *Jones v. Mutual of Omaha Ins. Co.*, 639 F. Supp. 3d 537, 549 (D. Md. 2022).

3

Amended Complaint replaces the final four claims (Counts IX–XII) with new claims. Defendants address each of these new claims below.

### A.     Conspiracy to Interfere with Civil Rights (Count IX)

Plaintiff asserts a claim for conspiracy to interfere with civil rights under 42 U.S.C. § 1985. Section 1985 contains three district subsections, each of which contains multiple clauses, which all set out different causes of action. Plaintiff does not specify what type of Section 1985 conspiracy claim she is attempting to allege. In any event, "to prove a section 1985 conspiracy, a claimant must show an agreement or a meeting of the minds by defendants to violate the claimant's constitutional rights." *Borkowski v. Baltimore Cnty., Md.*, 492 F. Supp. 3d 454, 483 (D. Md. 2020). This is a "relatively stringent standard," and the Fourth Circuit "has rarely, if ever, found that a plaintiff has set forth sufficient facts to establish a section 1985 conspiracy." *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995). A court must dismiss a Section 1985 claim "whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." *Id.*

Plaintiff has not alleged a civil rights conspiracy. Plaintiff's conspiracy allegations are boilerplate and would not permit the Court to draw the inference that Defendants had an agreement to violate Plaintiff's constitutional rights. (*See* Second Am. Compl. ¶¶ 6, 47, 72, 115-16, 151-52, 155, 174.) And even if Plaintiff had managed to plead facts establishing what would otherwise constitute a conspiracy, her claim would still fail under the intracorporate conspiracy doctrine. *See Ziglar v. Abbasi*, 582 U.S. 120, 153, (2017) ("an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy"); *Roberson v. Bowie State Univ.*, 899 F. Supp. 235, 238 (D. Md. 1995) ("[A] university cannot conspire with its own employees in violation of § 1985(3)."); *Brown v. Mayor & City Council of*

*Baltimore City*, No. GLR-23-155, 2024 WL 2212911, at *10 (D. Md. May 16, 2024). Thus, Plaintiff fails to state a claim under Section 1985.

### B.     Title IX (Count X)

Plaintiff's Title IX allegations are perfunctory, though she appears to plead both a Title IX discrimination claim and a Title IX retaliation claim. Plaintiff alleges that WashU "had actual knowledge of Plaintiff's receipt of a rape contract from a fellow classmate at Defendant, and request for rituals involving semen and blood from a classmate and acted with deliberate indifference to the harassment and discrimination." (Second Am. Compl. ¶ 176.) Plaintiff further alleges that WashU retaliated against her by "label[ing her] a threat to the University community, suspend[ing her] without cause, and stripp[ing her] of her scholarship." (*Id.*)

In order to state a discrimination claim under Title IX, Plaintiff must plausibly allege that "(1) she was a student at an educational institution receiving federal funds, (2) she was subjected to harassment [or discrimination] based on her sex, (3) the harassment [or discrimination] was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity, and (4) there is a basis for imputing liability to the educational institution." *Jennings v. Univ. of N. Carolina*, 482 F.3d 686, 695 (4th Cir. 2007) (en banc). A court may impute liability to an educational institution when an official who has authority to address the alleged discrimination and to institute corrective measures has actual knowledge of discrimination in the institution's programs and fails adequately to respond. *Id.* at 700; *see Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). A failure to adequately respond "must amount to deliberate indifference to discrimination." *Gebser*, 524 U.S. at 290. Deliberate indifference is a high standard that requires more than a showing of mere negligence. *Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 271 (4th Cir. 2021).

Plaintiff's own materials rebut any plausible inference of deliberate indifference to the conduct described in the Second Amended Complaint. Plaintiff provides letters documenting the procedural and investigative history of the cross-Title IX complaints that Plaintiff and another student made against one another. (Second Am. Compl. at 44-47.) Though Plaintiff characterizes the letters as showing WashU's "refus[al] to investigate," the letters themselves demonstrate extensive investigation. For example, in the letter to Plaintiff noting that her complaint against the other student in question was being dismissed, which Plaintiff attaches as Exhibit B to the Second Amended Complaint, the Title IX official explained that she had reviewed "the documentation [Plaintiff] submitted with [her] complaint, as well as [her] interview conducted by our investigator and the interview of an additional witness." (*Id.* at p. 46.) The letter further stated:

> Regarding the potential charges of physical abuse and sexual assault, you alleged one instance of unwanted physical contact, the respondent placing his hands on your waist/hips following a party at his apartment. Based on the information and documentation we have, this contact did not rise to the level of either physical abuse or sexual assault. You also cite a text sent by the Respondent containing a proposed promise of physical affection and sexual activity. The information and documentation provided to us do not demonstrate any threats or other attempts to have you agree to or abide by this promise. This does not rise to the level of a threat of physical abuse.

(*Id.* at pp. 46-47.)

These materials conclusively refute Plaintiff's contention that WashU acted with deliberate indifference to Plaintiff's complaints. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) ("In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint."); *Goines v. Valley Comm. Servs. Bd.*, 822 F.3d 159, 164-65 (4th Cir. 2016) (recognizing the "general rule that the exhibit prevails in the event of a conflict between an attached exhibit and the allegations of a complaint"). Plaintiff complained; WashU

investigated. No pleaded facts support Plaintiff's assertion of deliberate indifference on WashU's part and the assertion is not plausible in light of the materials Plaintiff submitted with her Second Amended Complaint. The Title IX discrimination claim should be dismissed. *See Doe v. Sacks*, 714 F. Supp. 3d 402, 412 (S.D.N.Y. 2024) ("While Plaintiff may certainly wish that NYU had gone to greater lengths to identify and discipline the [alleged harassment], the University's response was not, in fact, 'clearly unreasonable,'" as required to state a Title IX discrimination claim).

Plaintiff likewise fails plausibly to allege a Title IX retaliation claim. To state such a claim, Plaintiff must plausibly allege that she "engaged in protected activity under Title IX," and that, "as a result" of her protected activity, she "suffered an adverse action attributable to the defendant educational institution." *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 694 (4th Cir. 2018). Here, Plaintiff cannot plausibly allege causation. In conclusory fashion, she asserts that she was "retaliated against . . . for engaging in protected activity and complaining to Defendants." (Second Am. Compl. ¶ 176.) But no pleaded facts support this allegation; instead, the exhibits Plaintiff submitted refute it. (*See, e.g.*, *id.* at p. 50 (explaining the numerous non-retaliatory reasons for Plaintiff's suspension).) Thus, Plaintiff also fails to state a Title IX retaliation claim.

### C. Fifth and Fourteenth Amendments to the United States Constitution (Count XI)

Plaintiff previously asserted a stand-alone Fourteenth Amendment claim. In their opening brief, Defendants explained why that claim was subject to dismissal. (*See* Def.s' Mem. Supp. Mot. Dismiss at 26-27.) Plaintiff now adds a Fifth Amendment claim to this count, but this addition does not save the claim from dismissal. To recover under the Fifth Amendment, Plaintiff "must allege federal government action." *Menk v. MITRE Corp.*, 713 F. Supp. 3d 113, 159 (D. Md. 2024) (collecting cases). But Plaintiff cannot do so. She claims that Defendants are "private actors that

7

receive federal funding." (Second Am. Compl. ¶ 183.) "However, it is clear as a matter of law that, without more, a school's receipt of public funds does not make its decisions acts of the State." *Key v. Robertson*, 626 F. Supp. 2d 566, 579 (E.D. Va. 2009); *see also Menk*, 713 F. Supp. 3d at 161 (explaining that the standard for determining whether a defendant is a state actor or a federal actor is the same). Thus, Plaintiff fails to state claims under the Fifth and Fourteenth Amendments.

### D.    Section 1983 (Count XII)[3]

Finally, Plaintiff asserts a claim under 42 U.S.C. § 1983. Plaintiff alleges that her Fifth and Fourteenth Amendment rights were violated when "Defendants' police force was given instruction, per Plaintiff's suspension letter and the map of their patrol premises, to arrest Plaintiff in retaliation for complaining of racial and sexual discrimination." (Second Am. Compl. ¶ 180.) The materials appended to the Second Amended Complaint demonstrate that this inflammatory allegation is false. In her suspension letter, Plaintiff is told that, due to her suspension, she is "no longer permitted on campus," and that, if she were nevertheless to come to campus, she would be "subject to arrest by Washington University Police." (*Id.* at p. 49.) This statement conclusively refutes Plaintiff's allegation and simply reflects Missouri's law of trespass. Mo. Rev. Stat. § 569.140 (defining trespass in the first degree). Moreover, as explained previously, the Fifth and Fourteenth Amendment claims fail as a matter of law for several other reasons. (Def.s' Reply Supp. Mot. Dismiss at 12-13, ECF No. 46.) Plaintiff's Section 1983 claim should be dismissed.

## CONCLUSION

The Court should dismiss the Second Amended Complaint for lack of personal jurisdiction or, in the alternative, failure to state a claim.

---

[3] In the Second Amended Complaint, Count XII appears before Count XI.

Respectfully submitted,

**LEWIS RICE LLC**

Dated: June 2, 2025

By: /s/ Winthrop B. Reed III
Winthrop B. Reed III, *pro hac vice* (Mo. Bar #42840)
Lindsey M. Bruno, *pro hac vice* (Mo. Bar #73055)
600 Washington Avenue, Suite 2500
St. Louis, Missouri 63101
Telephone: (314) 444-7617
Facsimile: (314) 612-7617
wreed@lewisrice.com
lbruno@lewisrice.com

**SAUL EWING LLP**

By: /s/ Alicia M.S. Pitts
Alicia M.S. Pitts, Bar #31460
1001 Fleet Street, 9th Floor
Baltimore, MD 21202
Telephone: (410) 332-8693
Alicia.Pitts@saul.com

*Attorneys for Defendants*