# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ALLISON BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 8:24-cv-03198-TDC |
| | ) | |
| WASHINGTON UNIVERSITY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S BRIEF IN SUPPORT OF THEIR REPLY AND OPPOSITION TO DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, FAILURE TO STATE A CLAIM**

## **TABLE OF CONTENTS**

**INTRODUCTION**.................................................................................................................... 1

**ARGUMENT** ......................................................................................................................... 2

**I. MARYLAND HAS PERSONAL JURISDICTION OVER ALL DEFENDANTS** ............ 2

**II. PLAINTIFF HAS PROPERLY PLED CLAIMS AGAINST ALL DEFENDANTS**.........6

**Count IX - Conspiracy to Interfere with Civil Rights** ................................................................6

**Count X - Title IX**  …......................................................................................................... 6

**Count XI - Fifth and Fourteenth Amendments to United States Constitution**  ..................... 7

**Count XII - Section 1983**…....................................................................................... 8

**Count VI - Negligence** ........................................................................................................ 10

**Count I - Title VII** ................................................................................................................. 10

**INTRODUCTION**

During the April 25, 2025 Case Management Conference, the Court accepted Plaintiff's Second Amended Complaint (ECF No. 48) as the operative Complaint and held that Defendants' previously filed motion to dismiss (ECF No. 33) and the related briefing would be construed as a motion to dismiss the Second Amended Complaint. (See Order, ECF No. 55.) Plaintiff respectfully requests that the Court consider the facts and arguments presented in Plaintiff's new operative complaint (ECF No. 48), Plaintiff's Reply in Opposition to Defendants' Motion to Dismiss (ECF No. 39), and the following supplemental briefing. In this supplemental brief, Plaintiff first addresses Defendants' personal jurisdiction arguments. After explaining why the Complaint, Defendants' actions, and the facts offered in Plaintiff's briefs establish personal jurisdiction over all Defendants, Plaintiff then explains why the operative complaint (ECF No. 48) should not be dismissed.

All of Defendants' claims rely on a myopic distortion of Plaintiff's facts. Defendants have not produced any justification for their indelible harm of Plaintiff. Defendants should have never: suspended Plaintiff, a Maryland citizen, from law school; interfered with Plaintiff's internships to be performed in Maryland, had Defendants Walsh and Davis interfere with her post-graduate employment in the state of New York by labeling her a threat to Defendants campus; and transmitted untrue and harmful information about Plaintiff constituting a threat that impacted her future and admission to the bar in Maryland and Pennsylvania; and unilaterally revoking her scholarship rendering her destitute and receiving food supplemental assistance in the state of Maryland. (ECF No. 48,  75-76,  150-160) Defendant University and their agents have acted in a robust conspiracy to deprive Plaintiff of her rights - the most substantive and

1

ongoing of which occurred and continue to occur in the state of Maryland. (Exhibit 15, Am. Comp.  89-96, 105-125, 146-147, ECF Document 1-6; Exhibit D.)

**Yet,** throughout all of Defendants filings, Defendants have cherry picked facts to manufacture a false, haphazard theory about the past 3 years. **Defendants cannot credibly deny that they have**: 1) been in constant communication with Plaintiff in the state of Maryland after they threatened her with arrest in the state of Missouri, 2) receiving hundreds of pages of documents regarding the hearing that Defendants orchestrated to take place in Maryland over several days from November 2022 to May 2023, 3) unilaterally revoking Plaintiff's scholarship *after* she had already permanently relocated to Maryland 4) communicating to Plaintiff and her mother in the State of Maryland for almost 3 years with over 50 emails 5) employing Maryland residents (including Plaintiff and dozens of others, see ECF No. 45), and 6) receiving billions of dollars in funding from Maryland organizations and institutions (Am. Comp.  ECF No. 48, see also ECF No. 45.) Further, **Defendants strongly encouraged Plaintiff to leave Missouri in November 2022**, and complete her degree from Defendant University elsewhere. (Am. Comp. 20) Further, every single billing document (over 50 pages of documents) produced by Defendant was addressed, mailed, and received by Plaintiff in Maryland. (ECF No. 48) Regardless of Defendants' plethora of attempts to ignore or rewrite Plaintiff's factual allegations of this action, Defendants are subject to personal jurisdiction in Maryland due to the Defendants' actions as described throughout Plaintiff's filings.

## ARGUMENT

### I. MARYLAND HAS PERSONAL JURISDICTION OVER ALL DEFENDANTS.

Plaintiff is pro-se, and has not been admitted to the bar in any jurisdiction. In reviewing a motion to dismiss based upon the complaint of a pro se plaintiff, however, the court construes the

pleadings liberally. *Yomi v. DeJoy*, No. BPG-21-2709, 2023 U.S. Dist. LEXIS 34916 (D. Md. Mar. 1, 2023) *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018). The court's obligation "[is] to liberally construe pro se pleadings is even greater if the pro se plaintiff raises civil rights issues." Id. (citing *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 722 (4th Cir. 2010). Accordingly, Plaintiff respectfully requests that her complaint not be dismissed, and she requests discovery regarding communications between the Defendant and the Plaintiff if any additional facts are needed in order to establish personal jurisdiction over Defendants.

The tortious conduct at issue relates and "aris[e]s out of or relate[ ] to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984). Plaintiff submitted her application to Defendant Law School from the state of Maryland in February 2021, and informed Dr. Joy Johnson of Defendants' Admissions Office in the state of Maryland via zoom in March 2021 that she had every intention of remaining a Maryland resident after graduation if admitted to Defendant University. (ECF No. 48) Accordingly, Plaintiff has initiated suit in Maryland, where Plaintiff is domiciled, was domiciled before attending law school, domiciled while finishing her degree at Georgetown, and where she informed Dr. Joy Johnson in Defendants' Admissions Office where she would reside after graduation. (Page 10, ECF No. 39)

Defendants defamed Plaintiff in their Motion to Dismiss (ECF 33-1) by saying that she misquoted the case of *Lewis v. Willough at Naples*, 311 F. Supp. 3d 731 (D. Md. 2018). On the contrary, Plaintiff did not misquote this case. In this decision, *Lewis v. Willough at Naples* cited two cases which contain the quoted language: *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) and *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) All three cases state the following language: "A court may, consistent with

3

due process, exercise personal jurisdiction over an out-of-state defendant based on electronic contacts with the forum state if the defendant (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *ALS Scan*, 293 F.3d at 714. Defendants, through their plethora or interactions described in Plaintiff's pleadings, have more than satisfied this standard to have personal jurisdiction exercised over them.

Additionally, in *Christian Science Board of Directors of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209 (4th Cir. 2001), the United States Court of Appeals for the Fourth Circuit found personal jurisdiction in North Carolina over an Arizona resident whose contacts with North Carolina consisted of sending website content from Arizona to a webmaster in North Carolina, where the actual trademark infringement consisted of the posting of offending material by that other individual from a computer in North Carolina. *Id.* at 213, 216-17. These contacts are much more tenuous than the contacts in the case at hand. In the same way, this court should, consistent with the Fourth Circuit Court of Appeals, find personal jurisdiction over Defendants who acted in concert to defraud, harm, and disenfranchise Plaintiff in the state of Maryland after she complained of race and sex discrimination in connection with her education and employment. (ECF 39 and ECF 48) The hundreds of pages of documents for the hearing, objections, discussion of the instructions for placing things on google drive and dropbox were done and submitted from Maryland; every interaction, and the material bulk of the harm contained in the pleadings after November 2022 to present happened in the state of Maryland.

There were copious and voluminous records exchanges between parties regarding the contractual obligations and substantive rights of a Black female student not wanting to be

4

removed from her community or the classroom in her filings. (ECF No. 48) And yet, Defendant misstates the facts - **the most harm that occurred to Plaintiff was and has been while she was and is domiciled and living in the state of Maryland.** (ECF No. 48) Defendants (especially Defendants Walsh and Hudson, who refused to have the hearing on campus in Missouri because '"zoom was more convenient")  went to extreme lengths to push Plaintiff out of the state of Missouri. (ECF No. 48, Exhibit 4) The suspension letter from Defendant Wild (and cc'd to Defendant Gore), dated November 10th 2022, denying Plaintiff's initial appeal of her suspension less than a week after Plaintiff's suspension on November 4th, 2022, was mailed to Plaintiff in Maryland on Defendant University letterhead to Plaintiff's Maryland address and to Plaintiff, who received the correspondence in the state of Maryland. (ECF No. 48)

Defendants attempt to distill Plaintiff's and her mother's copious correspondence with Defendants in Maryland which took dozens of hours, to "a class being heard" is inappropriate. (ECF No. 56) Defendants even instructed Plaintiff's mother to stop emailing the Student Conduct Board regarding how Defendants were racially and sexually discriminating against her daughter, Plaintiff. The idea that they could not foresee legal consequences in Maryland is ludicrous, given that they have been corresponding with Plaintiff and her mother from Maryland since November 2022. The Defendants' actions in Maryland, including the hearing, are the basis of where Plaintiff's harm occurred, and thus, "the genesis of [the] dispute." *CFA Institute v. Institute of Chartered Fin. Analysts of India*, 551 F.3d 285, 295 (4th Cir. 2009).

### Regarding Defendant's Irrelevant Cases

Regarding *Hardnett v. Duquesne* (cited in Defendant's ECF 56) - Hardnett attended a rock concert and sued Duquesne - he was not residing in Maryland while attending Defendant

5

University. He was not threatened by arrest and he was not asked by the University to leave, and finish his degree at a different University. This case is not applicable to Plaintiff's allegations.

*Lefebvre* (cited in Defendant's ECF 56) is irrelevant Illinois case law regarding a white undergraduate student alleging only breach of contract claims because Defendant University refused to issue Levebre's degree after he was credibly accused, found guilty, and expelled by Defendant University for sexual assault. Defendants' citation of this case is not only inappropriate as it is Illinois law, but it is also offensive. None of Lefebvre's facts are analogous to Plaintiff's case. Unlike Lefebvre, Plaintiff was not, and has not, to this day, been found guilty violating ANY of Defendant University's policies, codes, or any law of the United States. Plaintiff should have never been suspended and threatened with arrest for complaining of race and sex discrimination.

Lastly, Defendant's citation of *Jones v. Mutual of Omaha Ins. Co.*, 639 F. Supp. 3d 537 (D. Md. 2022) does not address university student evictions, but relates to whether insurance marketing gives rise to personal jurisdiction of a non-resident defendant. This case is irrelevant.

**PLAINTIFF HAS PROPERLY PLED CLAIMS AGAINST ALL DEFENDANTS**

**Conspiracy to Interfere with Civil Rights (Count IX)**

While Defendants argue that Plaintiff's allegation regarding Section 1985 is boilerplate, Plaintiff's arguments regarding a meeting of the minds of intent to engage in a robust conspiracy have been laid out extensively and certainly should survive a motion to dismiss (Pages 16 and 17 of ECF No. 39). Plaintiff would be happy to expound upon and provide case law to explain how Defendants violated Section 1985 in an additional filing so as not to exceed the 10 page limit.

**Title IX**

Defendants never performed an investigation of Plaintiff's sex discrimination claims in retaliation for her complaints of race discrimination. Defendant Hudson admitted to this in his determination letter provided to the court in written form during the Student Conduct Board hearing. (ECF 48) While the Defendant may have addressed one instance of unwanted physical contact and a text sent by Richard O in their letter to Plaintiff stating that an investigation was unwarranted, Defendants buried the rape contract, and never addressed "Plaintiff's receipt of a rape contract from a fellow classmate at Defendant [University], and request for rituals involving semen and blood."(ECF 48) Furthermore, Defendant Darrell Hudson revised his findings in the hearing to explicitly state that while Richard O's complaint against Plaintiff was investigated and there was a finding of no violation, Plaintiff's complaint against Richard O's was not investigated because there was insufficient evidence to investigate. If Plaintiff's complaint truly was investigated, why did Defendant Darrell Hudson amend his findings to explicitly state that Plaintiff's complaint was not investigated? Considering these facts in the very best light for Defendant, there is an issue of material fact as to whether there is a Title IX Claim. Issues of material fact should not be decided on a motion to dismiss, but should be decided after discovery. Thus, Plaintiff respectfully requests that the Court allow discovery so that Plaintiff may prove the Title IX allegations in its Complaint.

### Fifth and Fourteenth Amendments to United States Constitution

While there is a higher bar for finding state action by a private educational institution than a public institution against students, that does not mean that a private education institution can never be held liable for state action. Defendant admits that it applied Missouri's law of trespass in the 1st degree against the Plaintiff (penalty of up to 6 months in jail and $500 fine)

7

and that Plaintiff was no longer allowed on campus. (ECF 56) Plaintiff's only action was complaining about racial and sexual discrimination at Defendant.

If a private university receives significant state funding, its actions regarding discrimination may be considered state action. Further, Defendant looked to the state to enforce its suspension against Plaintiff. If Plaintiff breached the terms of her suspension, she would be held by the state. *Shelley v. Kraemer*, 334 US 1 (1948) (state action occurs whenever a state gives effect to, or fails to provide a remedy against a private restriction of a 14th Amendment right). Marsh v Alabama, 326 US 501 (1946) ( company owned town residents had same rights as municipality residents and company could not infringe residents 1st and 14th Amendment rights). Defendants have not answered Plaintiffs' complaint, and there has been no discovery. Since determinations of state action are highly fact dependent and specific, Plaintiff respectfully requests that the Court give Plaintiff the opportunity to prove its claims against Defendants for violating her 5th and 14th Amendment rights, by allowing these claims to survive Defendants motion to dismiss. *Bell v. Maryland*, 378 US 226 (1964) (complicated and fact intensive decision regarding whether racial discrimination in the provision of public accommodations by a privately owned restaurant violated the Equal Protection and Due Process Clauses of the 14th Amendment, and whether conviction of 12 African American students for criminal trespass would be upheld or dismissed.) Bell's case was not decided before the Complaint was even answered.

**Count XII - Section 1983**

Defendant has admitted that they threatened Plaintiff with charging her with Missouri's law of trespass in the 1st degree against the Plaintiff (Class B misdemeanor with a penalty of up to 6 months in jail and $500 fine) if she were to be on campus. Defendant conveniently omitted

the fact that Defendant Rob Wild told Plaintiff that if she attended an off campus, privately owned AMC theater viewing of the Black Panther with her friends as Vice President of the Black Graduate Student Association, she would also be violating her suspension letter. (ECF No. 48, Exhibit 100) Thus, the suspension extended beyond the campus borders, or University owned property. Plaintiff, who planned the event, had to watch her classmates attend the premiere of the Black Panther knowing that Plaintiff could not attend because she was deemed a threat to the Defendant University community because she complained of racial and sexual discrimination. PLAINTIFF DID NOT VIOLATE ANY LAW OR UNIVERSITY CODE. Yet, Plaintiff's mere attendance at an off campus, non university property owned movie was labeled as a "threat" to Defendants' multi-billion dollar University community and subjected Plaintiff to serving up to 6 months in jail and a fine up to $500. There are no assurances that Defendants would not apply Missouri's law of trespass in the 1st degree against Plaintiff if Plaintiff were forced to litigate her claims against Defendants in Missouri Federal District Court, a mere 7 miles from Defendant Washington University. What if Plaintiff encountered any of the Defendants in St Louis and they falsely claimed Plaintiff threatened them?  Defendants have made false accusations against Plaintiff in the past and there is *nothing* stopping them from doing it again. Thus, Plaintiff respectfully requests that this Court retain jurisdiction and that the Plaintiff be allowed to remain safely in Maryland while litigating her claims against Defendants.

    Discovery has not commenced. Thus, it is inappropriate for Defendants to ask this court to dismiss Plaintiff's complaint for lack of personal jurisdiction or failure to state a claim upon which relief can be granted. Plaintiff requests discovery to resolve any jurisdictional or merit contentions based on the properly pleaded and plausible set of facts contained in her Complaint. The most troubling aspects of Plaintiff's complaint are not addressed by Defendants. Plaintiff has

9

alleged that a tenured professor feigned that Plaintiff disrupted her class in order to manufacture a facially legitimate reason to expel Plaintiff from Defendant University in retaliation for complaining of race and sex discrimination. Defendant has not addressed this in any of their pleadings. The silence is deafening.

### Negligence

Every single Defendant had an opportunity to look at the tape recording of Defendant Davis acting outrageously (and admitted to such in a recorded zoom meeting on December 11th, 2022) in class and clear Plaintiff of wrongdoing, but they chose not to. Even in Maryland, a contributory negligence jurisdiction, mandates that a Plaintiff can recover under a negligence theory if the Defendant had the last clear chance to prevent the harm, which they did. *Nationwide Mut. Ins. Co. v. Anderson*, 160 Md.App. 348 (2004). Defendants had numerous opportunities to stop harming and defaming Plaintiff to numerous third parties but instead chose to continuously gaslight Plaintiff instead and deny any wrongdoing.

### Title VII

The Supreme Court held that to survive a motion to dismiss, a Title VII plaintiff does not have to plead facts that constitute a prima facie case under *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Plaintiff has submitted the filed charge and a right to sue letter from the EEOC and attached it to this pleading. (Exhibit 99) This should cure Defendant's argument that Plaintiff's claims requiring an EEOC letter should be dismissed. Respectfully submitted,

Dated: June 20, 2025         *[signature]*         Plaintiff, Allison Brown