Exhibit 100

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

ALLISON BROWN,

       Plaintiff,

v.                                  Civil Action No. 8:24-cv-03198-TDC


WASHINGTON UNIVERSITY, et al.,

Defendants.


## SECOND AFFIDAVIT OF PATRICIA BROWN

The undersigned declares and states as follows:

1, My name is Patricia Brown. I am Plaintiff's mother.  I am over twenty-one years of age and a Maryland resident.  I was in Maryland as a Maryland resident during all of my interactions with Defendants. I have personal knowledge of the following statements made below in support of Plaintiff's Reply to Defendant's Supplemental Brief in Support of Their Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative Failure to State a Claim, and I am fully competent to provide testimony about the same.


1.  I spoke to the WASHU Title IX Office in Fall 2021 regarding a sexual harassment claim against Plaintiff and requested that the investigation be conducted expeditiously and a decision be made, either way, so that Plaintiff could focus on her studies.  In that same conversation, I asked if Plaintiff had any duty to report to any other entity the "rape contract" given to her by her Richard O as evidence of intent to commit a felony, or whether it was sufficient that she had given a copy to the WASHU Title IX Office due to the investigation.  I was thinking about the duty of a university student to report any witnessed, received, or perceived threats or violence to the appropriate university authorities, and was wondering if my daughter had a similar duty to report that Richard O was using a contract to rape, or obtain non-consensual sex.  The WASHU Title IX Office replied that Plaintiff did not have any additional reporting duties of the rape contract to other authorities and that her submission to the WASHU Title IX Office was adequate.

11

2. I have not seen any evidence that WASHU acknowledged that Richard O gave Plaintiff a rape contract or investigated whether the rape contract was a violation of the WASHU Student Conduct Code.  I believe that if Plaintiff was white, WASHU would have treated the rape contract differently.  I do not believe that Plaintiff's Richard O has received any disciplinary action against him by WASHU for his solicitation of "rape contracts" from Plaintiff or any other student.

3. Shortly after Plaintiff's suspension, Plaintiff told me that she was upset that Defendant Wild told her that if she attended a viewing of the Black Panther at an off-campus St. Louis theater with her friends as Vice-President of the Black Law Students Association at Washington University, she would be held in violation of the suspension and arrested.

4. Plaintiff told me that she had organized the event, and that she felt it was unfair for her not to be able to attend the off-campus movie, at a privately owned movie theater.

5. I encouraged Plaintiff to not attend the viewing because while she may not have yet done anything actionable at WASHU, if she violated the terms of the suspension letter, WASHU may arrest her and file a grievance against her for violating the terms of the suspension letter.

6. I also heard a recording of Defendant Wild talking to my daughter about her suspension. I remember his tone as being demeaning and belittling, and thinking that he was treating Plaintiff worse than I would treat a rabid dog.  I remember him smugly adding that Plaintiff may be able to come on campus for "mental health services."   I remember that I felt that he was enjoying the fact that Plaintiff was suspended, and took pleasure in treating Plaintiff like a rabid dog.

7. I encouraged Plaintiff to contact Mark Kamimura-Jimenez to report Defendants actions of racial and sexual discrimination after doing a Google search on how to report discriminatory actions at WASHU.

8. Plaintiff told me that she reported Defendants actions of racial and sexual discrimination to Defendant Kamimura-Jimenez.

9. After Plaintiff's suspension, I could not sleep for three weeks.  Plaintiff expressed to me suicidal ideations. I was terrified that so many Defendants would orchestrate

12

such an elaborate scheme to try to destroy Plaintiff and label her as a threat to the WASHU community in retaliation for complaining of race and sex discrimination.

10. Plaintiff moved to Maryland and has not returned to Missouri since at the very latest December 2022.

11. When I found out that WASHU would not allow the tape of Defendant Davis' November 4 class to be admitted into evidence at the Student Conduct Board hearing, my anxiety heightened. I felt that this tape would have completely exonerated Plaintiff from any wrongdoing and quickly dispose of any charges against Plaintiff, and could not understand how WASHU thought that denying admission of the tape was fair.

12. I paid $15000 on my credit card to the Lento Law Firm to represent Plaintiff in the hearing. I was concerned that the WASHU Student Conduct Board hearing was nothing more than a kangaroo court that would simply rubber stamp Defendant Walsh's request that Plaintiff be severely disciplined by WASHU.

13. I think about the racial and sexual discrimination committed by Defendants, the Defendants' unwillingness to recognize any wrongdoing against Plaintiff, and Plaintiff's struggles as a result of Defendants actions every single day.

14. I am concerned for Plaintiff's safety if she has to litigate her claims before the federal district court in St. Louis, Missouri in light of the irrational and discriminatory actions WASHU has taken against Plaintiff.

15. My mother broke her hip on June 3, 2025 and died on June 19, 2025. While I can no longer talk to my mother, I hope that I can continue to provide this Court with evidence regarding the discriminatory actions taken against Plaintiff by Defendants. Please do not extinguish Plaintiff's rights by prematurely dismissing her claims for lack of personal jurisdiction or failure to state a claim. I wholeheartedly believe that after discovery, there will be more than ample evidence that Plaintiff's claims are valid and that this Court has personal jurisdiction over the same.

16. I certify, not merely that I believe that my attached signature is valid, but that as to my personal knowledge in every particular fact or allegation, it is original and does not depend on information or hearsay.

13

17. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the facts therein and Exhibits attached are true and correct.

Executed on June 20, 2025

Patricia Brown